IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

JAN 2 4 2022

Nathan Ochsner, Clerk of Court

CURTIS ALLEN GAMBILL, et al.,       §

     Plaintiffs,       §

                  §

versus       §       CIVIL ACTION H-21-1076

BRYAN COLLIER, et al.,       §

     Defendants.       §

                  §

## PLAINTIFF CURTIS GAMBILL'S
## MORE DEFINITE STATEMENT

COMES NOW, Curtis Allen Gambill, plaintiff pro se, who presents the following More Definite Statement to this honorable Court.

### I.       INTRODUCTION

1.  Curtis Allen Gambill is a plaintiff in Civil Action H-21-1076.

2.  Plaintiff is serving a criminal sentence in TDCJ and is eligible for parole in 2026.

3.  Plaintiff is seeking declaratory and injunctive relief under 42 U.S.C. § 1983, alleging current and longstanding abuses in violation of his rights to be free from cruel and unusual punishments, afforded due process, and provided equal protections under the law, as protected by the Fifth, the Eighth, and the Fourteenth Amendments to the United States Constitution.

4.  Plaintiff alleges that all named defendants have acted under color of state law at all times relevant to this complaint, and are thereby all sued in their official capacity for the acts and omissions described fully below.

### II.       STATEMENT OF FACTS

5.  In 2003, the TDCJ instituted a new administrative directive that authorized the use of Security Precaution Designator ("SPD") codes.

(1)

6.  The procedures, definitions, and criteria necessary for placement and/or removal of the various SPD codes are governed solely by TDCJ's Administrative Directive 04.11 ("A.D.04.11")  (See copy of A.D.04.11, Attachment #1)

7.  The A.D. 04.11 is a statutory directive receiving its authority from the Texas Government Code §§ 494.002(a) and 498.002. The directive uses mandatory language in establishing specific substantive predicates to limit official discretion. This directive provides plaintiff a legitimate expectation of a specific result once certain criteria is met, namely that SPD "shall be removed".

8.  The named defendants and their predecessors have failed in their duties regarding this policy and their negligent disregard for the plaintiff's due process rights has created a de facto policy of indefinite punishment directed at him.

III.                    DENIAL OF DUE PROCESS

9.  Upon SPD implementation, TDCJ officials retroactively applied an "ES" SPD code on the plaintiff in mid-2003.

10.  Plaintiff Gambill was provided no due process. Plaintiff was given no advanced notice of the new SPD policy, was never informed that an SPD code had been placed upon him, received no hearing, was afforded no opportunity to present evidence, or dispute the SPD's placement. Plaintiff was provided no formal nor informal justification for the SPD that was placed upon him.

11.  Several years later, when plaintiff sought to enroll in the GRAD program, he was told he was ineligible to participate due to his SPD codes. To that point, he was unaware of them and didn't know what they were.

12.  Plaintiff was told by an officer that they would be on him for ten years. Plaintiff wrote classification and found out he had an "ES" and a "HS" SPD code, as a result of an incident that occurred January 28th, 2002, while at a county jail facility. He was returned to TDCJ in February 2002. There was no such thing as SPD codes. He received no disciplinary. He was not indicted, nor convicted of any crime.

(2)

**13.** Upon finding out about his SPD codes, Plaintiff obtained the Administrative Directive 04.11 from the Law Library, and instantly found out that Classification officials back in 2003, had erroneously placed the "HS" SPD code upon him. He should have never had such a code placed upon him.

**14.** This led to a two year fight to remove this erroneously placed SPD code. Writing to classification, showing them the policy, filing step one and step two grievances, and having a loved one initiate an Ombudsman Investigation.

**15.** Despite relying on verbatim TDCJ policy, he was denied at every level. This can all be verified via old grievances and Ombudsman emails.

**16.** Not giving up, my loved one, phoned and obtained a face to face visit with then Deputy Director of TDCJ, Ed Owens. Upon meeting Mr. Owens and showing him the A.D. 04.11, the grievances, and Ombudsman emails, Mr. Owens contacted unit classification and had them remove the erroneously placed "HS" SPD code from his record. Without that outside help, plaintiff would still have an erroneous SPD code, which is very detrimental to his rehabilitation.

**17.** Plaintiff was told that his retroactively placed "ES" SPD code would remain until January 28, 2012, at which point he would have ten years and it would be removed from his record.

**18.** Plaintiff Gambill had been in Ad-Seg confinement from February 2002 upto his first SPD review hearing in January 28, 2012. SCC had informed him that the only way they could release him is if his SPD code was removed from his record after ten years. Without removal of SPD, he would remain in Ad-Seg.

**19.** In January 2012, Plaintiff was given his SPD removal hearing, and was unanimously approved for SPD removal by the three person committee headed by Major Teria Butcher and UCC Chief Bonnie Cawley. (See copy of I-60 to and from Chief Bonnie Cawley. Attachment #2)

**20.** Plantiff would find out several months later, that a secret committee in Huntsville (SPDRC committee) had overturned unit's recommendation and remained

(3)

the SPD code. Plaintiff was never given notice of this hearing, never allowed to present statements, and was never informed of the outcome or given any sort of formal or informal justification for their decision.

21. In 2013, after being several months late for his annual hearing, plaintiff filed a grievance. He was told the head warden, Bell, would over see his committee this year.

22. When plaintiff attended this hearing, Warden Bell told him that he has been a model inmate, but that "Huntsville warned all the wardens that if they removed SPD codes, they would be responsible for any future events with those offenders." Plaintiff asked him about the policy. Warden Bell told plaintiff that he understood it was messed up, but plaintiff would probably have to do 15 or 20 years before someone signed off on it. Warden Bell then denied plaintiff, stating, "I have to consider my family and my career."

23. Plaintiff filed Step one and Step two grievances denouncing the shame hearings, and the overt policy violations.

24. Each denial kept plaintiff another year in Ad-Seg, because although he was enrolled in the GRAD program, he could not attend until SPD code was removed. Thus, subjecting plaintiff to indefinite AD-Seg confinement.

25. In 2014, Plaintiff was reviewed and approved for SPD removal "due to long-term clear disciplinary history and length of time since event". This committee was chaired by Major Lamb. Once again, the secret SPDRC committee overturned unit's removal recommendation without notice or justification for their decision. Plaintiff filed Step one and Step two grievances. Both were denied.

26. In May of 2015, Warden Bell denied plaintiff's SPD removal telling plaintiff, "even if I were to approve you, Huntsville would override it again." Plaintiff filed Step One grievance #2015141709. Unlike other grievances, this one landed in Assistant Warden B. Reeves hands. After seeing what plaintiff was going through, he contacted the warden on Ellis unit where the GRAD program was

located and secured plaintiff's acceptance into the long-sought program.

27. Plaintiff Gambill had been disciplinary free for over 12 years, and had served 13½ years in Ad-Seg confinement, 9 of which were due solely to his SPD code's hold. Once at the nine month GRAD program, plaintiff excelled.

28. Upon successful completion of the Grad program, all graduates were promoted to G-2 custody level (minimum), by order of Executive Director Brad Livingston,(who authored the original SPD policy in 2003) via STG Program Supervisor IV, Eva Shiver. (See Attachment #3)

29. Plaintiff was transferred to Wynne unit in March 2016, and was immediately demoted to G-4 punitive custody housing. Plaintiff was told that old SPD code was retained, and that Senior Warden Kelly Strong "never downgrades SPD codes".

30. In may 2016, Warden B. Smith told plaintiff Gambill during his SPD review hearing that he had no authority to remove SPD, and that his boss, Warden Strong, "doesn't approve them", therefore he would delay his decision until he talked to her. Plaintiff Gambill was kept in limbo for months, eventually submitting grievances #2016169972 and #2016179514 requesting a formal decision. Neither grievance provided a formal answer to the previous hearing.

31. Ultimately, a TDCJ Ombudsman investigation initiated by plaintiff's family revealed that defendants Stevens had failed to provide plaintiff with UCC decision, and had further failed to forward details and/or dates of those hearings to SCC/SPDRC pursuant to the A.D. 04.11. Plaintiff was ordered a new hearing eight months after the fact. (See TDCJ Ombudsman Inquiry No:02-9121-06, Attachment #4)

32. In January 2017, after securing the new hearing, defendant Stevens welcomed plaintiff Gambill to the UCC by stating, "This is the guy who went over our heads to Huntsville." Defendant immediately voted to deny plaintiff and has continued to deny him at every UCC hearing she's been involved with since.

33. In January 2018, defendant Stevens entered the UCC waiting room and asked if anyone was there for an SPD review. Plaintiff Gambill and another inmate raised their hands. Defendant Stevens stated, "If ya'll are here for SPD reviews, you

are wasting your time, because I can tell you right now, we aren't approving them." Gambill chose to remain to attend his hearing, the other inmate left.

34. When plaintiff was called for his hearing later that day, defendant Stevens voted to deny plaintiff Gambill before he had fully entered the room.

35. Following the prompt denial, plaintiff asked committee how long this would continue, and what hidden criteria must be met to get approval. At this time, plaintiff had over 15 years without a major disciplinary infraction. Defendant Stevens and Captain Webb replied, "We most likely will never vote to remove an SPD code." Plaintiff submitted grievance 1 & 2 #2018078954 to appeal.

36. In January 2019, plaintiff requested his annual hearing pursuant to Section VI.(A) of the A.D. 04.11. Defendant Hastings and Stevens responded that "The ten years wouldn't end until 2022, and that you'll be reviewed then." The defendants had erroneously recorded UCC dates that were off by ten years. Plaintiff submitted Step 1 & 2 grievances #2019069528 to correct the error, as well as provided copies to defendants verifying the date of incident. (See Attachment #5) This error cost plaintiff four additional months to have UCC date scheduled.

37. In May 2019, plaintiff was denied in absentia. He appealed this denial of due process with Step 1 and Step 2 grievances #2019128498.

38. After being denied in absentia, plaintiff Gambill's family called and faxed defendants Collier, Bryant, Burson, and others on June 4, 2019, requesting assistance having the policy adhered to or given specific justification in writing why plaintiff was being indefinitely punished. No response was provided.

39. Plaintiff Gambill's family next filed a freedom of information request in November 2019 seeking records/reports to plaintiff's closed-door UCC and SPDRC hearing after contacting defendant Bryant's office and not being provided any justification for SPDRC's decisions. Within 24 hours of this request, plaintiff Gambill was called to the security office and informed by Major Giddens that they had been instructed by "higher-ups" to lock plaintiff up for "investigation".

(6)

40. Defendant Moore had plaintiff in lock-up 3 days. Plaintiff was never questioned or given a reason for his confinement. After the third day, Sgt. Schmidt released plaintiff, stating, "you must have pissed someone important off". Plaintiff Gambill asked his family to cease their efforts to redress the SPD issues for fear of further retaliation from defendants Moore and Bryant.

41. In July 2020, after 14 months between reviews, plaintiff was again approved for removal of his old SPD. Major Boyd (now Warden) chaired this UCC, and stated he had never seen anyone with an SPD as old as plaintiffs and was stunned to see someone with plaintiff's long term good conduct living on punitive custody.

42. This positive recommendation was arbitrarily overturned by the SPDRC, made up of defendants Bryant, Burson, Werner, and Moore. No notice of this secret hearing was provided, no opportunity to be heard, and no justification for SPDRC decision was provided. When Plaintiff asked Asst. Warden P. Coleman about his UCC recommendation, Mr. Coleman said, Director Bryant told him he had denied the unit's decision, and that as "long as he is Director of Region One, he isn't approving any SPD codes." Plaintiff appealed via Step 1 & 2 grievances #2020162989.

43. In July 2021, plaintiff wrote defendant Hastings to schedule his annual SPD review. Receiving no response, plaintiff had his family contact the unit. They were told that plaintiff had been reviewed in absentia 3 weeks earlier and denied SPD downgrade. Plaintiff was never informed of secret hearing by defendants Hastings, Steven, Burson, or Moore, nor given justification for their decision. Plaintiff wrote a personal letter to defendant Moore (See Attachment #6) and filed Step 1 and Step 2 grievances to address these abuses of official discretion.

44. Plaintiff Gambill has fully documented this long journey and has repeatedly brought these concerns to each of the defendants via I-60 forms, letters, Ombudsman's Inquiries, grievances, and family e-mail exchanges. Plaintiff has relied on verbatim state law policy to gain compliance with the A.D. 04.11 removal guidelines. Defendants have denied all efforts to remedy these wrongs, causing plaintiff endless punishment, restrictions, and emotional suffering.

(7)

**45.** Defendants Collier, Bryant, and Moore have provide plaintiff no adequate post-deprivation remedy. Defendant Moore is the final authority over all unit grievances and classification decisions. Defendant Bryant is the final authority over Step two grievances and all Region One classification decisions. Both are also central voting members of the SPDRC, and have the power and authority to effect the deprivations complained of here and have the authority to deny both steps of the grievance process plaintiff files challenging them. Plaintiff is left with no legitimate remedy to seek relief.

## "Atypical and Significant Hardships"

**46.** Defendant's indefinite application of SPD codes represents a dramatic departure from plaintiff's sentence and goes far beyond policy-maker's intent.

**47.** TDCJ is structured, and required by state law to provide a pathway to advancement, training, work, and rehabilitation. Nearly every single TDCJ inmate is classified as G1, G2, or G3, which is minimum custody. These offenders have access to all educational, vocational, rehabilitational, religious, and extensive job training and apprenticeship programs. These inmates have out-of-cell access of 18-19 hours daily, and receive regular recreation opportunities.

**48.** Plaintiff, due solely to his out-dated SPD code, is restricted to punitive custody housing. Plaintiff has been punished for 20 years for a single incident. Plaintiff has not had a major disciplinary infraction in nearly 19 years. Plaintiff is restricted to his cell 22-24 hours a day, and for nearly 2 years, has had less than 60 minutes of recreation per week. Plaintiff is restricted from all jobs except the field force, from nearly all educational, rehabilitational, vocational, and religious programming. Housing on G-4 represents a major change in the typical conditions of confinement compared to the ordinary incidents of prison life within TDCJ. Plaintiff has been treated far harsher than typical.

**49.** On John Wynne unit, there are approximately 2,650 inmates. None have been punitively confined as long as plaintiff Gambill. None have had an SPD code

as long as plaintiff Gambill.

50. All other punitively confined inmates on G-4 have been found guilty of major rule violations and afforded due process before G-4 placement. Plaintiff has been major case free since before SPD implementation in mid-2003.

51. Prior to SPD policy, no inmate who displayed good conduct remained on G4 custody longer than 12 months. All TDCJ inmates, no matter custody, are given promotional and class review hearings every six months, including Ad-Seg inmates. Plaintiff served over 10 years of punitive confinement before receiving SPD review, which is 2,000% longer than all other non-SPD inmates. Plaintiff is subjected to secret SPDRC committees and indefinite terms of punitive confinement. The Tex. Govt. Code § 498.005 & § 498.002 mandate that TDCJ "shall reclassify the inmate as circumstances warrant. Each inmate must be classified according to the inmate's conduct, obedience, and industry." Defendants Collier, Bryant, Burson, Moore, and Hastings have abused their discretion and failed to adhere state law and policy.

52. Plaintiff has I.T.P. needs tied to his parole consideration. He has requested access to many programs for years, and has been denied due to his SPD.

53. Being indefinitely confined to G4 will cause the plaintiff negative parole assessments, by increasing his "Total Risk Factor" score 2-3 points.

54. Defendant's use of indefinite SPD punishment restricts plaintiff from seeking enrollment in all vocational courses, OJT programs, AA/NA, Kairos, Voyager, Bridges to Life, Overcomers, Discipleship programs, apprenticeships, ecomm purchases, additional access to phone calls, and hardship transfers.

IV.        CRUEL AND UNUSUAL PUNISHMENT

55. Plaintiff is housed indefinitely on a dangerous disciplinary status among offenders known to have displayed recent major misconduct. Plaintiff is double-celled, 22-24 hours a day, under pandemic conditions, with violent, mentally unstable, and chronically ill offenders, placing plaintiff in constant state of anxiety and stress.

(9)

56. Defendant Moore, Collier, and Bryant are fully aware of the increased number of violent events on G-4 custody, and know that lengthy placement on G4 housing places the plaintiff's life in danger continuously.

57. In plaintiff's 25 years of incarceration, the current conditions on A-1 block, G-4 medium custody on John M. Wynne unit are the worst he has experienced. Plaintiff has been previously attacked physically, threatened with harm, has witnessed militant officers brutally beat restrained inmates. Plaintiff has witnessed countless fights, several stabbings, riots, use of forces, and other violent acts. Plaintiff has been subjected to chemical agents deployed by officers trying to subdue other inmates. Defendants Collier, Bryant, and Moore have instituted countless disciplinary lock-downs in efforts to regain control of this G4.

58. Due to defendant's indefinite application of old SPD code, plaintiff is subjected to these lockdowns. Plaintiff is exposed to noxious smoke from the fires that aggravated inmates set, and the fumes from rampant drug use that has become normalized, which has caused plaintiff severe headaches and loss of appetite. (See Attachment #7, Affadavit of David Huizar)

59. Plaintiff is subjected to endless power outages lasting upto several days leaving him without the use of his fan during temperatures reaching upto 115° F.

60. During February 2021, Plaintiff endured record low temperatures down to -7° F. Wynne unit had no power, no heat, and no water for days. Due to all the broken windows, it was physically painful for plaintiff. Inmates, along with plaintiff had requested G4 windows to be fixed all winter, but Defendant Bryant and Moore ignore those request.

61. Combined with the freezing weather, defendant Bryant and Moore arbitrarily ordered a ban for all G-4 inmates from wearing state issued jackets outside of their living area. Plaintiff grieved this with many others. (See Atachment #8, Grievance 1 & 2 2021072012) This order caused plaintiff unnecessary suffering.

62. Due to the stigma involved with punitive housing areas, Defendants Collier,

Bryant, and Moore have allowed the general conditions of G4 housing to remain in a constant state of disrepair. Windows are broken out, screens are missing, roaches are everywhere, and pipes, sinks, and toilets are routinely clogged and/or broken, leading to near daily floods. For years, plaintiff has been subjected to regular full-cell floods of raw sewage, that the plaintiff and his cellmates have to push out by hand. Plaintiff is never provided cleaning supplies to disinfect his cell after such events, seriously endangering his health.

63. Plaintiff has been afforded less than 60 minutes of recreation per week over the last two years. In 2016-2017, on this G4, plaintiff was locked-down for disciplinary sanctions for seven months, receiving no recreation at all. At this writing, plaintiff has received no physical recreation in over a month.

64. Plaintiff is at an elevated risk of serious harm due to the severe staffing shortages on Wynne unit, which also leads to over-worked or inexperienced staff. Plaintiff faces heightened scrutiny by militarized staff, who associate him with his punitive housing assignment. This leads to harassment, confrontation, targeted cell and strip searches, and the type of discriminatory review results that defendants Bryant, Burson, Werner, Moore, Hastings, and Stevens have displayed toward plaintiff and others for years.

65. Plaintiff was exposed to COVID-19 in April 2020 by staff. Plaintiff was given no medical attention while sick. G4 inmates on Wynne unit were locked down 3 straight months, provided no medical treatment, and no recreation, eating sack meals so meager they made national news. Dozens of inmates died from Covid and their lack of treatment, emphasizing plaintiff's serious health risk and mental state. While sick with Covid, Sgt. Shinette, shut G4 block's power off when men were asking for medicl attention. She responded by telling us,"I don't care if all of you die over here." Plaintiff was left in the dark until her shift ended. Plaintiff wrote to Warden Moore to report this, as well as State Rep. James White.

66. Due solely to the defendant's indefinite application of SPD, plaintiff

(11)

Gambill has endured the totality of these conditions longer than any other in-
mate on Wynne unit, if not the entire TDCJ. Plaintiff has 20 years of punitive
confinement despite 19 years of exemplary conduct. It is unheard of within TDCJ.
Plaintiff has received no policy based justification as to why he is being singled
out for this disparate treatment, despite requesting it for years. He does not
know what he must do, what criteria he must meet, or how long he must endure be-
fore he is given relief.

67. The stress of these conditions on plaintiff Gambill is extraordinary,
and being exposed to the dangerous environment, punished indefinitely, has nega-
tively impacted his physical, mental, and pyschological health irrepairably. The
absence of physical recreation has led to weight gain, and the targeted punish-
ment has lead to a state of depression and sense of hopelessness that adds to
plaintiff's deterioration. Plaintiff has lost faith in TDCJ officials to fulfill
their duties, or provide relief from current of future harm. Defendant's words
and actions over the years show they have no intention of ever removing plain-
tiff's out-dated SPD code, or ending plaintiff's unconstitutional punishment.

### V.                    DENIAL OF EQUAL PROTECTIONS

68. Plaintiff Gambill is similarly situated to all other G-4 offenders he
is housed with in TDCJ. Defendants have afforded all other non-SPD inmates on G4
basic due process before assigning them to punitive housing. Defendants have de-
nied plaintiff this and have used indefinite application of his SPD code in a
targeted manner without any rational basis for the discriminatory treatment.

69. In 2003, upon SPD implementation, TDCJ retroactively applied an SPD code
upon plaintiff without notice or hearing. In March 2020, Defendant Collier im-
plemented a new class of SPD codes. Front page notice was posted in TDCJ's prison
newspaper, "The Echo" describing these new SPD codes and the necessary criteria
for each one's placement.

70. TDCJ stated that the new SPD codes would not be retroactively applied,

and that only after an inmate is charged and found guilty of the specific rule violation within TDCJ would an SPD code be placed upon the offender's record.

71. Defendant Collier has held plaintiff Gambill to a completely different standard. Plaintiff's dissimilar treatment has led directly to decades of punishment. Plaintiff Gambill would have never received an SPD code at all if it had not been retroactively applied to him. Likewise, plaintiff's incident occurred outside of TDCJ custody, and under the standards that require a conviction of a rule violation, plaintiff Gambill would not have qualified for SPD placement. Plaintiff Gambill wrote a formal letter requesting this same treatment from defendant Collier, but was never responded to.

72. Defendants Collier, Bryant, Burson, Werner, Moore, and Hastings provided all these SPD offenders advance notice of these SPD codes, provided these SPD offenders due process via disciplinary hearings, appeal processes, opportunity to speak on their own behalf and present evidence, and were given justification for their SPD placement. More importantly, these SPD offenders are not indefinitely restricted to punitive housing. Once they have served their 6-12 months without any more major disciplinary, they will be promoted to minimum custody and allowed access to all programs. Defendants have treated plaintiff far differently with no rational justification for the dissimilar treatment.

73. Defendants Bryant, Burson, Moore, Hastings, and Stevens provide all other G-4 inmates timely and meaningful review hearings every 3 to 6 months. G-4 inmates serve fixed terms of no longer than 12 months if they remain disciplinary free. Plaintiff served over 10 years before given a review, and even when approved, Defendants Bryant, Burson, Werner, and Moore on the SPDRC, have arbitrarily overturned his favorable unit decisions, despite plaintiff's long term exemplary conduct. There is no legitimate penological justification for this.

74. When other G-4 inmates are approved by UCC on the unit, they are relocated to their upgraded housing locations the same day. When plaintiff is ap-

by UCC, he is left in limbo for weeks/months, before learning SPDRC has overturned his SPD removal without notice of hearing, or any explanation for their actions.

75. Defendants have coordinated to indefinitely confine plaintiff to punitive housing by means of SPD extensions, without which, plaintiff would be in G2, and afforded access to all unit programs that typical inmates are provided. The TDCJ Classification Plan directs defendants to present a pathway to progress for all offenders. All similarly situated G4 inmates can remove themselves from these harsh conditions by complying with the rules for 6-12 months. The plaintiff has been denied this same pathway to progress by defendants indefinite application of these out-dated punitive Codes, profoundly impacting his rehabilitation goals.

76. In other TDCJ regions, offenders with similar and/or worse incidents have had their SPD removed prior to, or at completion of ten years. In fact, plaintiff Gambill's co-party received the same SPD code for the exact same event in 2002. That co-party's SPD code was removed over nine years ago in a different region within TDCJ, by classification personnel, wardens, and directors within that region who follow policy guidelines. Plaintiff has been held to a different standard and it has no penological justification for the dissimilar treatment.

77. Plaintiff has written to Defendant Moore, Hastings, and Stevens multiple times to receive religious beard approval, and they have all arbitrarily denied him the court ordered right, stating it was denied due to my old SPD code. These defendants grant all other inmates religious beard approval. Defendants have no penological justification for this discriminatory treatment.

78. Defendants have been notified of these concerns and constitutional rights violations for years and have deliberately failed to remedy the disparate treatment. Plaintiff has been held to a different standard, and being targeted for long term harsh punitive treatment. These prolonged actions cause plantiff manifest harm, and have no penological justification whatsoever.

VII.                    <u>CAUSE OF ACTION</u>

(14)

79. Defendants Collier, Burson, Werner, Moore, Hastings, Bryant, and Stevens actions in arbitrarily and impermissibly abusing their discretion by acting deliberately to impose atypical and significant hardships upon plaintiff Gambill, not in accordance with law or regulation, has denied plaintiff his vested liberty interest right to be free from restraint, and has denied plaintiff Gambill due process of law in violation of the 5th and 14th Amendments of the United States Constitution.

80. Defendants Collier, Bryant, Burson, Werner, Moore, Hastings, and Stevens' actions in failing to provide notice of hearings, notice of SPD placements, failure to provide timely, meaningful, and impartial hearings, failure to provide plaintiff an opportunity to be heard, and failure to provide justification for denials, violates plaintiff Gambill's rights under the Due Process Clause of the 14th Amendment of the United States Constitution.

81. Defendants Collier, Bryant, Burson, Werner, and Moore's actions in arbitrarily instituting, and sustaining deliberately, a de facto policy of waton punishment under the guise of indefinite SPD extensions, acting outside of all statutory authority and abusing their discretion, violates plaintiff Gambill's rights under the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment of the United States Constitution.

82. Defendants Collier, Bryant, and Moore's action in failing to act on their knowledge of substantial risk of serious physical, and psychological abuse of plaintiff constitutes deliberate indifference violating plaintiff's rights under the Eighth Amendment to the United States Constitution.

83. Defendants Collier, Bryant, and Moore's actions in failing to provide safe, functioning housing conditions, in failing to provide plaintiff protection from temperatures extremes, and failing to provide adequate recreation and medical treatment violates plaintiff's rights under the Eighth Amendment of the United States Constitution.

(15)

84. Defendants Collier, Bryant, Burson, Werner, Moore, Hastings, and Stevens' disparate actions in failing to provide plaintiff Gambill equal treatment they provide all other similar situated individuals, by denying plaintiff similar housing upgrade, timely and meaningful reviews with impartial factfinders, similar due process safegaurds, promotional ooporunities, access to needed ITP programs, religious beard approval, and other dissimilar treatment that has resulted in plaintiff suffering grievous loss by being singled out arbitrarily for unjustifiably harsh treatment, but for said treatment by defendants, plaintiff would see his life, parole prospects, custody level, and access to all programs improve immediately. The qualitatively different treatement plaintiff has received from defendants constitutes a pattern of discrimination against plaintiff and denies Plaintiff Gambill Equal Protection under the law in violation of the Fourteenth Amendment of the United States Constitution.

## VII.                    PRAYER FOR RELIEF

WHEREFORE, plaintiff Gambill respectfully prays that this Honorable Court process his claims against defendants, so that he is able to seek the relief requested in the plaintiff's original complaint, and/or provide mediation to resolve these claims prior to trial, or grant any other relief this Court may deem proper.

Trial by jury is hereby demanded on all claims alleged herein, and the parties are hereby given fair notice of claims, purusant to Fed.Civ.P.38 (a)-(c).

Respectfully submitted this 16th day of JANuary , 2022.

*Curtis Gambill*
Curtis Gambill TDCJ# 805886
810 F.M. 2821
Huntsville, Texas  77349

(16)

## VIII.              PLAINTIFF'S DECLARATION

Pursuant to 20 U.S.C. § 1746, I, Curtis Gambill, hereby declare under the penalty of perjury under the laws of the United States of America, that I have read the forgoing, and that all facts presented in this complaint and attachment thereto are true and correct to the best of my belief and knowledge.


Signed this _16th_ day of _January_ , 2022.


*Curtis Gambill*
Curtis Gambill   TDCJ# 805886
810 F.M. 2821    (Wynne Unit)
Huntsville, Tx.  77349

## LIST OF ATTACHMENTS

1. TDCJ's Administrative Directive 04.11 "Security Precaution Designators."

2. Copy of I-60 request from plaintiff's first SPD (ten year) review 2012.

3. Promotion after completing the GRAD program 2016.

4. Ombudsman Inquiry No; 02-9121-06

5. Step 1 and Step 2 grievances #2019069528  (2019)

6. Personal letter to defendant Moore (original carbon copy)

7. Affadavit of David Huizar (plaintiff's cellmate in 2021)

8. Step 1 and Step 2 Grievances #2021072012 (winter of 2021)

January 6, 2015 (rev. 5)

Texas Department of Criminal Justice:

Administrative Directive 04.11

**Subject:**       Security Precaution Designators

**Authority:**    Texas Government Code §494.002 (a); §498.002

Reference: American Correctional Association Standards 4-4301; 4-4303

**Applicability:**  Texas Department of Criminal Justice (TDCJ) and Private Facility Contract
Monitoring/Oversight Division (PFCMOD)

**Policy:**        The TDCJ shall assign each offender to a custody designation that provides
appropriate, adequate supervision and housing commensurate with the needs and
requirements of the offender during the entire period of incarceration. Custody
designations shall be made on the basis of the offender's entire record. Certain
behaviors warrant special consideration; therefore, serious behavioral infractions shall
be identified and communicated with staff to ensure offenders receive appropriate
levels of supervision.

**Definitions:**   The following definitions are provided for the purpose of this directive, and are not
intended to be applicable to other policies and procedures.

**Additional Information Report** – is a report created by the sociologist at an intake
facility, or an intake interviewer at a substance abuse felony punishment facility
(SAFPF), during an offender's intake processing. This report contains non-verified
information of possible security concerns, such as homosexuality, gang membership,
enemies, or escapes, as reported by the offender.

**Escape** – is the intentional commission of an overt act that results in the unauthorized
departure from any part of a secure adult correctional facility, work assignment, or
extended limits of the facility, including during a transport or an escorted emergency
absence, climbing a perimeter fence, or departing without authorization from a
community work project.

**Escape Attempt (EA)** – is a code used to document attempted escapes. This code
shall not: (1) be placed on the Security Precaution Designator (SPD) card
(Attachment A); (2) require committee action; or (3) affect the computer
recommended custody. This code shall be used for offenders who have attempted an
escape from a secure adult correctional facility when the attempted escape does not
meet the definition of the Escape Precaution Designator.

**Escape Precaution Designator (ES)** – is a code documented in the record of an
offender who has a history of escape from a secure adult correctional facility. This
code shall be used for incidents that occurred no more than 10 years from the date of
review unless extraordinary circumstances are documented. These offenders shall not
be assigned to a custody designation less restrictive than G4/J4.

**Escape Precaution Designator More Than 10 Years Old (EZ)** – is a code used to
document escapes from a secure adult facility when the escape occurred more than 10
years from the date of review and there were no extraordinary circumstances
documented. This code shall not be placed on the SPD card and shall not affect the

A.D. 04.11 (rev. 5)

computer recommended custody; however, committee action may be required if the code is changed from ES to EZ.

**Escape Precaution Designator Removed (NE)** – is the removal code used to document an ES code was removed by the SPD Review Committee in accordance with Section IV of this directive. These offenders shall not be assigned to a custody designation less restrictive than G3/J2.

**Extraordinary Circumstances** – is any significant justification unit staff uses to remove the SPD before it has been on the offender's record for 10 years, that does not specifically fit into criteria established by Section IV. (A) of this directive. Extraordinary circumstances may also justify keeping the code on the offender's record longer than 10 years if, for example, a staff assault resulted in death, the offender was involved in multiple escapes, or the offender injured hostages.

**Hostage Precaution Designator (HS)** – is a code documented in the record of an offender who has a history of taking any individual hostage. A hostage situation has occurred if any individual has been held captive by an offender who threatens to kill or harm that individual if one or more demands are not met. This code shall be used for those incidents that occurred no more than 10 years from the date of review unless extraordinary circumstances are documented. These offenders shall not be assigned to a custody designation less restrictive than G4/J4.

**Hostage Precaution Designator More Than 10 Years Old (HZ)** – is a code used to document an offender's history of involvement in hostage situations that occurred more than 10 years from the date of review. This code shall apply to those offenders who took a hostage, but the incident was more than 10 years from the date of review and there were no extraordinary circumstances documented. This code shall not be placed on the SPD card and shall not affect the computer recommended custody; however, committee action may be required if the code is changed from HS to HZ.

**Hostage Precaution Designator Removed (NS)** – is the removal code used to document an HS code was removed by the SPD Review Committee in accordance with Section IV of this directive. These offenders shall not be assigned to a custody designation less restrictive than G3/J2.

**Life Without Parole (LWOP)** – is a code used to document offenders serving time for a sentence of life without the possibility of parole. This is a permanent code and these offenders shall not be assigned to a custody designation less restrictive than G3.

**Other Escapes (EX)** - is a code used to document escapes that do not fit the criteria of ES or EA. This category incudes those escapes that are not from a secure adult correctional facility, but are from a juvenile facility or halfway house, failure to return from an unsupervised work release program. This code shall not be placed on the SPD card and shall not affect the computer recommended custody.

**Secure Adult Correctional Facility (ACF)** – is a secure TDCJ Correctional Institution Division (CID) unit, privately operated facility, pre-parole facility, intermediate sanction facility, federal facility, other state's department of corrections facility, county jail, city police substation that incarcerates adult offenders.

**Security Precaution Designator (SPD)** – is a code documented in an offender's record that identifies the offender as a special management risk. This designator shall be used for offenders who have a history of escape (ES), taking hostages (HS),

2

A.D. 04.11 (rev. 5)

assaulting staff (SA), defeating restraint devices (SR), or sentenced to life without parole (LWOP).

**Security Precaution Designator Review Committee (SPDRC)** – is the committee comprised of the regional director, warden, and the chairman of Classification and Records. For privately operated facilities, the regional director of the geographical region where the facility is located shall be the voting authority. The committee shall be the authority for removal of the SPD when the offender meets the criteria outlines in Section IV, (A) of this directive, or for retaining the SPD past the designated period. Decisions that are not unanimous shall be referred to the appropriate CID deputy director or PFCMOD deputy director.

**Security Restraint Precaution Designator (SR)** - is a code documented in the record of an offender who has a history of defeating restraint devices, such as intentionally slipping out of hand restraints or leg irons, or defeating a secure cell by physically leaving or showing the ability to leave a cell. This is a permanent code that shall not affect the computer recommended custody.

**Staff Assault More Than 10 Years Old (SZ)** – is a code used to document staff assaults more than 10 years from the date of review. This code shall apply to those offenders who have committed a staff assault involving serious injury, but the incident was more than 10 years from the date of review and there were no extraordinary circumstances documented. This code shall not be placed on the SPD card and shall not affect the computer recommended custody; however, committee action may be required if the code is changed from SA to SZ.

**Staff Assault Precaution Designator (SA)** - is a code documented in the record of an offender who has a history of serious staff assault. A serious staff assault occurred if an offender intentionally strikes a staff member resulting in serious injury, as determined by unit medical staff. Serious injury requires treatment beyond first aid, such as sutures, a fracture, or hospitalization. If the unit classification committee (UCC) determines that an offender's behavior was such that serious bodily injury was imminent to staff had it not been for an intervening factor, for example the offender tried to stab a correctional officer, but the correctional officer's thrust vest prevented serious bodily injury, the UCC may recommend the placement of an SA code. This code is only to be used in extraordinary circumstances where the intent and probable outcome of the assault are clear. In addition, if an offender has committed three or more staff assaults in a 12 month period where injuries occurred but only required first aid, the UCC may also recommend the placement of an SA code. The code shall be used for those incidents that occurred less than 10 years from the date of review unless extraordinary circumstances are documented. These offenders shall not be assigned to a custody designation less restrictive than G4/J4.

**Staff Assault Precaution Designator Removed (NA)** – is the removal code used to document that an SA code was removed by the SPDRC in accordance with Section IV od=f this directive. These offenders shall not be assigned to a custody designation less restrictive than G3/J2.

**Staff Member** – is an employee of the TDCJ, county or city jail, Texas Juvenile Justice Department, any other state department of corrections, or Federal Bureau of Prisons employee, an employee working under contract with the TDCJ, or an approved volunteer.

A.D. 04.11 (rev. 5)

**Unit Classification Coordinator** – is the staff member responsible for reviewing unit recommendations for placement of SPDs and updating the mainframe UC00 07 screen and all appropriate classification and record documents.

**Procedures:**    **I. Placement of Security Precaution Designators**

A.  SPDs shall be placed in the record of each offender sentences to life without parole or found to have engaged in any of the four activities: escape, taking a hostage, staff assault resulting in serious injury, or defeating restraint devices. Refer to sample Security Precaution Designator card (Attachment A). SPDs may be recommended for placement by a sociologist, an intake interviewer at a SAFPF, the UCC, or central administration staff.

1.  Sociologists shall have the authority to recommend the placement of an SPD by completing an Additional Information Report regarding the incident for which placement of the SPD is recommended.

    a)  At intake facilities, during sociological interviews (see Attachment B), the sociologist shall review the offender's previous incarceration history to determine whether the offender has engaged in any of the four activities or is sentenced to life without parole. When such an offender has been identified, the sociologist shall complete an Additional Information Report.

    b)  The sociologist shall then notify the warden, chief of unit classification at the intake facility, and the appropriate unit classification coordinator in Huntsville via email of the recommendation for placement of the SPD. The email shall include details of the incident to enable the unit classification coordinator to complete a thorough review regarding the possible placement of the SPD. The offender shall not be transferred to another unit until the SPD is processed.

    c)  The unit classification coordinator shall notify the offender's unit of SPD placement or denial within three working days and update the UC00 07 screen, if appropriate. Once notification is received from the unit classification coordinator that an SPD has been placed, the chief of unit classification or designee shall ensure the offender is appropriately classified, attach the SPD card inside the travel card, and document all appropriate records.

2.  During classification reviews (see Attachment B), the UCC shall review an offender's records to determine whether the offender has engaged in any of the four activities. If it is determined that an offender has engaged in any such activity, the UCC shall submit an email to the appropriate unit classification coordinator requesting placement of an SPD on the offender's record. The unit classification coordinator shall respond within three working days to the requesting UCC. The unit classification coordinator shall inform the offender's unit of SPD placement or denial and update the UC00 07 screen, if appropriate. Once notification is received from the unit classification coordinator that an SPD has been placed on an offender's record, the chief of unit classification or designee shall ensure the offender is appropriately

4

A.D. 04.11 (rev. 5)

classified, attach the SPD card inside the travel card, and document all appropriate records.

3. Central administration staff who discovers information within an offender's record that may require an SPD shall deliver the information to the appropriate unit classification coordinator for a review regarding the placement of the SPD on the offender's record. The unit classification coordinator shall proceed as outlined in Section 1.A.1.c.

B. The sociologist, UCC, and central administration staff shall strictly adhere to the definitions provided in this directive (see examples in Attachment C) to determine if placement of an SPD in an offender's record is necessary. SPDs are intended to identify only the most serious of infractions.

The sociologist, UCC, and central administration staff shall determine whether an offender meets the criteria for placement of an SP, whether extraordinary circumstances exist, and if the offender meets the criteria for the assignment of any other SPD codes. The recommendation of the sociologist, UCC, and central administration staff for placement of one of these codes shall be based on the circumstances surrounding the activity and the length of elapsed time since the incident occurred. Activities that occurred more than ten years before the date of review are not automatically excluded from recommendation for placement of an SPD. These codes are for informational purposes only and shall be reflected on the UC00 07 screen. Sociology and unit classification staff have the authority and responsibility to add the EX or EA codes to the UC00 07 screen. The EZ, HZ, and SZ codes shall be added to the UC00 07 screen by a unit classification coordinator, if approved by the central administration staff.

C. Combinations of SPDs for the same incident are used only in extraordinary situations where the offender caused a security incident through multiple acts. For example, if the offender defeated hand restraints and attacked a correctional officer causing serious injury.

When an offender is found to have separate incidents that warrant the placement of an SPD, the incidents shall be documented separately on the UC00 07 screen. For example, an offender who has three separate escapes from a secure ACF shall have three ES codes indicating the appropriate date for each escape.

D. The warden or designee shall have the authority to place an SPD in an offender's record, housing area, or on the offender's cell door at any time the warden or designee determines a security risk exists. In these cases, the SPD review shall be held at the next UCC hearing.

## II. Special Needs Status

An offender may have a special need, such as medical, geriatric, mental health, or intellectual impairment that requires placement in a special status on a specific unit. The parameters of the treatment associated with the special status would prevail over the offender's custody designation despite the placement of and SPD code on the offender's record. When the special need is no longer applicable, the offender shall be

A.D. 04.11 (rev. 5)

returned to the security parameters associated with the offender's custody designation and SPD.

### III. Documentation of Offender's Unit Records and Notification of Staff

A. The chief of unit classification, a unit classification case manager, or a staff member designated by the warden shall ensure the proper documentations of SPDs.

When approval of an SPD has been granted by a unit classification coordinator, the unit classification office shall be notified and shall be responsible for documenting the SPD in the following records:

1. Offender travel card;
2. SPD card (CL-148); and
3. I-201, Segregation Confinement Record – If the offender is confined to administrative segregation, SPD information shall be forwarded to administrative segregation staff who shall record and highlight the information at the top of the I-201 form. Recording and highlighting designators on the I-201 form provides correctional officers and other staff with the information necessary to manage offenders who require the highest degree of precaution.

B. The warden shall use additional methods to notify staff, including rosters or the standardized cell door markers, to ensure staff is notified and aware of offenders with SPDs.

### IV. Review for Removal of Security Precaution Designators

A. Removal of the SPD by the SPDRC may occur if an offender has an SPD of ES, HS, or SA and fits into one of the following situations:

1. Release Date

   a) The offender is within 18 months of a firm release date designated by a Board of Pardon and Paroles vote, mandatory supervision, or discharge, has an aggravated or non-aggravated sentence with no major disciplinary convictions within the last 12 months, and it has been at least three years since the incident that caused the placement of the SPD. Should circumstances arise that extend the release date beyond the required 18 months, the UCC shall review the offender for possible reinstatement of the SPD.

   b) The chief of unit classification shall review the infopac report IUCR690C-B, Security Precaution Designator – Removed, monthly to determine if there are any offenders on the unit whose SPD was removed due to a firm release date and whose release date has changed, resulting in the need for reinstatement of the SPD.

A.D. 04.11 (rev. 5)

    2. Non-aggravated Sentence

      The offender has a non-aggravated sentence and no major disciplinary convictions for the past three years, and it has been at least five years since the incident that cause the placement of the SPD

    3. Extraordinary Circumstances An offender has an extraordinary set of circumstances for which the UCC deems the request for removal of the SPD appropriate.

B. The UCC shall make the initial recommendation for SPD removal. The removal of an SPD shall only be requested for one of the following reasons listed in Section IV. A. of this directive and shall be forwarded to the SPDRC for review as follows:

    1. The chief of unit classification shall send an email request to the warden, including the offender's name and TDCJ number, date, and date of the incident;
    2. The warden shall respond by indicating concurrence or non-concurrence within five working days via email to the regional director;
    3. The regional director shall respond by indicating concurrence or non-concurrence within five working days via email to the chairman of Classification and Records;
    4. The chairman of Classification and Records shall instruct the unit classification coordinator to notify the unit via email within five working days of the approval or denial for removal of the SPD. If approved for removal, the appropriate CRO documentation shall be made by the unit classification coordinator;
    5. Unit classification staff shall update the appropriate unit records and classify the offender appropriately. The removal code shall be deleted, and the offender shall be reclassified 10 years after the date of the documented incident; and
    6. If the decision is that the SPD shall remain in effect and not be removed, the offender shall be reviewed annually for possible removal of the SPD.

C. If it has been more than 10 years since the incident that caused the placement of the SPD, ES, HS, and SA only, and the offender is no longer considered an immediate security risk, the SPD shall be removed unless extraordinary circumstances exist. The procedures listed below shall be followed.

    1. During routine classification committee meetings and annual reviews, unit classification staff shall determine whether a recommendation for removal is necessary. The offender shall be scheduled for UCC review as a change in custody designation may be appropriate. The warden shall be notified of the UCC recommendation of removal for concurrence. Unit classification staff shall notify the appropriate unit classification coordinator to update the ES, HS, or SA code.
    2. The unit classification coordinator shall appropriately code the incident as being more than 10 years old using the following entries on the UC00 07 screen:
      a) An escape more than 10 years old shall be coded as EZ;
      b) A staff assault more than 10 years old shall be coded as SZ;

A.D. 04.11 (rev. 5)

     c)  A hostage situation more than 10 years old shall be coded HZ.

    3.  *The unit classification coordinator shall notify the chief of unit classification of the updates.*

D.  Extraordinary circumstances may exist under which the UCC would request that the SPDRC retain an offender's SPD. Such circumstances must be fully documented and approved by the SPDRC. If retention of the code is approved by the SPDRC, the offender shall be reviewed annually by the UCC to determine whether the offender is eligible to have the SPD removed. The UCC shall submit a recommendation to the SPDRC to either retain or remove the SPD. SPDRC decisions that are not unanimous shall be referred to the appropriate deputy director.

E.  If the UCC votes to remove the SPD during annual the review, the process described in Section IV.C.1-3 of this directive shall be followed.

F.  If an SPD is erroneously indicated on and offender's record, such as a juvenile escape coded as ES, the chief of unit classification or the sociologist shall send an email to the appropriate unit classification coordinator to remove the SPD. The offender shall be scheduled for UCC if a custody designation change is appropriate.

## V. Operational Procedures

A.  Offenders with one or more of the following SPDs are not eligible for assignment to a custody designation less restrictive than G4/J4.

    1. Escape Precaution Designator (ES);
    2. Hostage Precaution Designator (HS);
    3. Staff Assault Precaution Designator (SA).

B.  Offenders with an SPD of SR or LWOP are identified to alert correctional staff to use certain precautions in the management of these offenders. Once an SR or LWOP code is placed on an offender's record, it shall remain on the record permanently.

C.  Offenders with SPDs shall generally be assigned to the field force and secure jobs inside the perimeter as designated by the warden.

D.  The warden or designee, major, administrative segregation supervisor, and the chief of unit classification shall maintain a list of all offenders assigned to the unit who have SPDs. Security supervisors shall ensure correctional officers are aware of each offender with a recorded SPD who is assigned at the correctional officer's duty post. The following reports enable correctional officers to easily identify offenders with SPDs:

    1.  Infopac report IUCR690C-A;
    2.  Job turnout reports; and
    3.  Housing locator reports.

A.D. 04.11 (rev. 5)

E. When transporting an offender, the correctional officers at the departing unit shall ensure transportation staff are made aware of offenders in their custody who have SPDs by ensuring the SPD card is documented appropriately and securely attached inside the offender's travel card.

F. All offenders, with or without an SPD, shall be managed in accordance with established security procedures according to custody designation.

**VI. Offender Request for Removal of Security Precaution Designator**

A. An offender who seeks to have an SPD removed from the offender's record may do so by requesting a review by the UCC. Offenders may request such a review no more than once every 12 months.

B. If the offender disagrees with the results of the UCC hearing, the offender may seek relief through the offender grievance procedures.

A.D. 04.11 (rev. 5)

**Attachment A**

Please note: Attachment A is not included in this document.

A.D. 04.11 (rev. 5)

**Attachment B**

## CLASSIFICATION REVIEW



A.D. 04.11 (rev. 5)

**Attachment C**

### Interpretation of Security Precaution Designators

**Code examples of situations or criteria for placement of an SPD**

**ES** – Escape from an ACF, including state, federal, city, county and secure pre-parole facilities. If an offender is incarcerated at an ACF and being transported for medical or other reasons when the escape occurs, the incident shall be classified as ES. Escape requires the commission of an overt act, such as cutting a hole in a fence, running from a field squad, or climbing through a window. The offender shall not be assigned to a custody designation less restrictive than G4/J4.

**SA** – Staff injury must have required more than treatment by first aid. This code assignment does not include "Chunking" or injuries occurring when arresting officers have a conflict with the offender. The intent or threat to injure is not enough, staff must sustain a serious injury. The fact that an offender was charged with or convicted of assaulting a correctional officer does not mean the SA code shall be placed. However, if the offender has committed three or more staff assaults in a 12-month period, and the assault caused injuries that were treated with first aid, the UCC may recommend placement of an SA code. The offender shall not be assigned to a custody designation less restrictive than G4/J4.

**HS** – Taking an individual captive with threat to kill or harm that individual if one or more demands are not met. This does not include staff assaults or the use of restraining devices on staff, or securing staff in an area to facilitate an escape or attempted escape. These offenders shall not be assigned to a custody designation less restrictive than G4/J4.

**SR** – Defeating hand restraints or security cell doors. This does not include food slot nor should the SR be automatically placed when an offender is charged with tampering with a locking device. The key word is "Defeating". The offender has defeated a secure cell door when the offender has the ability to or has physically exited the cell.

**LWOP** – The 82nd Legislation passed House Bill 3, which allows a punishment of life without the possibility of parole. This bill enhanced the punishment for anyone convicted of certain sexual offenses. Specifically, a repeated and habitual felon, to life without parole. Offender's sentenced to life without parole are assigned to G3 custody indefinitely.

**THE FOLLOWING CODES ARE NOT CONSIDERED SECURITY PRECAUTION DESIGNATORS, BUT ARE USED FOR INFORMAL PURPOSES:**

**Code examples of situations or criteria for placement of codes**

**EX** – Failure to return from authorized leave, such as a work release program or furlough escape from a juvenile or non-secure halfway house, including when the offender fails to return or walks away, or any other escape that does not meet the criteria for ES. The unit classification coordinator shall be contacted if guidance is needed.

**EA** – A non-overt act including that an escape might be forthcoming, such as planning an escape or having items related to an escape in the cell. Even if the offender was charged with escape, if the act was not overt and only an attempt, it should be coded EA.

**EZ** – Over 10 years since escape from a secure ACF.

**SZ** – Over 10 years since staff assault with serious injury.

12

A.D. 04.11 (rev. 5)

**HZ** – Over 10 years since a hostage situation.

**THE FOLLOWING ARE SECURITY PRECAUTION DESIGNATOR REMOVAL CODES:**

**NE** – The code was removed prior to 10 years from the occurrence of the escape by the SPDRC in accordance with Section IV of this directive. These offenders shall not be assigned to a custody designation less restrictive than G3/J3. **Code shall be removed** 10 years from the documented incident.

**NS** – The code was removed prior to 10 years from the occurrence of the hostage situation by the SPDRC in accordance with Section IV of this directive. These offenders shall not be assigned to a custody designation less restrictive than G3/J3. **Code shall be removed** 10 years from the documented incident.

**NA** - The code was removed prior to 10 years from the occurrence of the staff assault by the SPDRC in accordance with Section IV of this directive. These offenders shall not be assigned to a custody designation less restrictive than G3/J3. **Code shall be removed** 10 years from the documented incident.

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE - INSTITUTIONAL DIVISION

## INMATE REQUEST TO OFFICIAL

REASON FOR REQUEST: (Please check one)

**PLEASE ABIDE BY THE FOLLOWING CHANNELS OF COMMUNICATION. THIS WILL SAVE TIME, GET YOUR REQUEST TO THE PROPER PERSON, AND GET AN ANSWER TO YOU MORE QUICKLY.**

1. ☐ *Unit Assignment, Transfer (Chairman of Classification, Administration Building)*

2. ☐ *Restoration of Lost overtime (Unit Warden-if approved, it will be forwarded to the State Disciplinary Committee)*

3. ☐ *Request for Promotion in Class or to Trusty Class (Unit Warden- if approved, will be forwarded to the Director of Classification)*

4. ☐ *Clemency-Pardon, parole, early out-mandatory supervision (Board of Pardons and Paroles, 8610 Shoal Creek Blvd. Austin, Texas 78757)*

5. ☑ *Visiting List (Asst. Director of classification, Administration Building)*

6. ☐ *Parole requirements and related information (Unit Parole Counselor)*

7. ☐ *Inmate Prison Record (Request for copy of record, information on parole eligibility, discharge date, detainers-Unit Administration)*

8. ☐ *Personal Interview with a representative of an outside agency (Treatment Division, Administration Building)*

TO: _Unit Classification Chief Bonnie Cawley_   DATE: _2-02-12_
       (Name and title of official)

ADDRESS: _Eastham Administration_

*Response on Reverse Side*

SUBJECT: State briefly the problem on which you desire assistance.

Yes, I'm writing with regards to An active security precaution designator tag on my door. This is an ES code that is over ten years old. I would like to have it removed and coded as being over ten years old. I have maintained a clear disciplinary history with no major cases in almost 9 years. I will not require any type of custody review because I am indefinitely confined to Ad-seg due to being a confirmed member of a security threat group. If you could let me know some thing on this, I'd appreciate your time and help. Thank you.

Curtis Gambrill

Name: Curtis Gambill     No: 805886     Unit: EA

Living Quarters: M-2-10     Work Assignment: N/A

DISPOSITION: (Inmate will not write in this space)

You were reviewed today and recommended for removal.

I-60 (Rev. 11-90)





# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

Brad Livingston
Executive Director

February 19, 2016

Mr. Stuart Jenkins
Atten: Jennifer Robinson
Texas Department of Criminal Justice/Parole Division
8610 Shoal Creek Boulevard
Austin, Texas 78757

Re:   Curtis Allen Gambill
      TDCJ #805886

Dear Mr. Jenkins:

This letter is to inform you that the above-referenced offender has successfully completed the Gang Renouncement and Disassociation Process (GRAD) at the Ellis Unit.   This process consists of classes dealing with cultural awareness, anger management, cognitive skills training and a work program that allows the offender to work with other offenders in general population.

After successfully completing the GRAD Process, the offender is no longer classified as a member of a security threat group and will be assigned to general population as a minimum-in offender.

This information is provided to update your file concerning this offender.   For any additional information, please contact Eva Shiver, Program Supervisor IV, Security Threat Group Management Office, at (936)437-6610.

Yours very truly,

Eva Shiver

Eva Shiver
Program Supervisor IV -STGMO

cc:  Offender Unit File
     STGMO File
     Offender



# Texas Department of Criminal Justice

**Bryan Collier**
*Executive Director*

---

January 13, 2017

Inquiry No.: 02-9121-06

Shirley Gambill
P. O. Box 373
Terral, Oklahoma 73569

RE:    Curtis Allen Gambill – TDCJ #805886 – Wynne Unit

Dear Ms. Gambill:

This is in response to your letter dated December 31, 2016, addressed to this office, indicating Offender Curtis Gambill has not received a response on his last review for removal of a security precaution designator (SPD). You request to have this code removed so Offender Gambill may be considered for custody upgrade.

An investigation regarding these claims revealed Offender Gambill was reviewed by the Wynne Unit Classification Committee (UCC) on May 18, 2016, for removal of the SPD code. However, the unit failed to forward the matter to the SPD Review Committee (SPDRC) at that time. When this omission was discovered, the UCC met with Offender Gambill and forwarded the matter to the SPDRC for review and disposition. Offender Gambill will be notified when a decision has been made and he may advise you of the outcome.

Thank you for sharing your concerns.

Sincerely,

Jane M. Cockerham
TDCJ Ombudsman Office

JMC/jc

CC:    File

---

*Our mission is to provide public safety, promote positive change in offender behavior, reintegrate offenders into society, and assist victims of crime*

This information is provided to you in accordance with Section 493.016, Texas Government Code, and Agency policy. Confidentiality requirements can restrict some information from being released.

**TDCJ Ombudsman Office · P. O. Box 99, Huntsville, TX 77342 · (936) 437-4927 · Fax (936) 437-4930 · ombudsman@tdcj.texas.gov**



**Texas Department of Criminal Justice**

# STEP 1

## OFFENDER GRIEVANCE FORM

OFFICE USE ONLY

Grievance #: 2019069528

Date Received: JAN 2 5 2019

Date Due: 03/06/2019

Grievance Code: 209

Investigator ID #: I1954

Extension Date: _____

Date Retd to Offender: FEB 0 1 2019

Offender Name: Curtis Gambill    TDCJ # 805886

Unit: Wynne    Housing Assignment: A1-1-19 T

Unit where incident occurred: Wynne Unit

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Ms. Hastings, Classification Chief via I-60's   When? 1-17-19 + 1-21-19

What was their response? I was given an erroneous review date, and SPD start date.

What action was taken? As of this writing, this mistake has not been amended.

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

ON 1-17-19, I wrote an I-60 to classification to inquire about when I would be seen for my next Security Precaution Designator Review date. I did this because it has been exactly one year since my last SPD review hearing, which was held on 1-19-2018 and chaired by Major Giddens. I have not been reviewed since that date. And I have had no cases. On the reply to the I-60, it simply said "5-11-19". This date is erroneous. The Administrative Directive 04.11, which oversees all S.P.D. review guidelines, states that if an S.P.D. code is retained, it will be reviewed annually, once every twelve months. My year is complete and I am due an U.C.C. review to determine the status of this code. On 1-24-19, my mother, Shirley Gambill, contacted classification about this error in scheduling and was told I don't come up until June, AND that my SPD started in "2012", so I wouldn't be eligible for a downgrade until I had "10 years from the date of incident!" This is a Gross error and can be Easily corrected if the physical file was reviewed. This incident that resulted in the placement of my S.P.D. code occurred on January 28th, 2002 at the Montague County Jail. Upon arrival to T.D.C.J., I was placed in AD-seg for this incident. When S.P.D. codes were invented in 2003, one was placed in my file to document this incident. I came up for a review to have this old code removed or downgraded when I completed 10 years in January 2012, And was Approved by U.C.C., it was retained afterwards, though since

---

I-127 Front (Revised 11-2010)    **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**    (OVER)

Appendix F

then my Minor case and Minor case since been on the Wynne Unit 3 years and have been reviewed 3 times. I have not had a single major disciplinary case since 2003, nearly 16 years. I earned my way out of Seg And I exceed every criteria in the A.D. 04.11 to have this code downgraded or removed. If the computer is saying this S.P.D. is from 2012, it's wrong. And jail records, my Ad-Seg paperwork, And all my SPD review paper work will show that date to be erroneous. Please look at the physical file paperwork Everything I have stated is true. I should be reviewed this month. This is a computer error, And it's noone's fault, but it's very important to make it right.

**Action Requested to resolve your Complaint.** Please look At the correct date of incident, fix Any Computer errors, And schedule me for my yearly SPD review, Thank you

**Offender Signature:** _Curtis Gandel_                 **Date:** 1-24-19

**Grievance Response:**

An investigation was conducted. You have been scheduled for Unit Classification Committee (UCC) review. It does not have to be the exact date. No TDCJ policy has been violated. No further action is warranted by this office.

Warden Worthy

**Signature Authority:** _____          **Date:** 1-31-19

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:**          *Resubmit this form when the corrections are made.

- [ ] 1. Grievable time period has expired.
- [ ] 2. Submission in excess of 1 every 7 days. *
- [ ] 3. Originals not submitted. *
- [ ] 4. Inappropriate/Excessive attachments. *
- [ ] 5. No documented attempt at informal resolution. *
- [ ] 6. No requested relief is stated. *
- [ ] 7. Malicious use of vulgar, indecent, or physically threatening language. *
- [ ] 8. The issue presented is not grievable.
- [ ] 9. Redundant, Refer to grievance # _____
- [ ] 10. Illegible/Incomprehensible. *
- [ ] 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

**Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.**

**Medical Signature Authority:** _____

| OFFICE USE ONLY | |
|---|---|
| Initial Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 2nd Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 3rd Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |

**I-127 Back** (Revised 11-2010)

Appendix F



**Texas Department of Criminal Justice**

# STEP 2    OFFENDER
## GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance #: 2019009528

UGI Recd Date: FEB 15 2019

HQ Recd Date: FEB 21 2019

Date Due: 03-27

Grievance Code: 209

Investigator ID#: I1364

Extension Date: APR 16 2019

Offender Name: Curtis Gambill        TDCJ # 805886

Unit: Wynne        Housing Assignment: A1-1-19T

Unit where incident occurred: Wynne Unit

---

*You must attach the completed Step 1 Grievance that has been signed by the Warden for your Step 2 appeal to be accepted. You may not appeal to Step 2 with a Step 1 that has been returned unprocessed.*

**Give reason for appeal (Be Specific).**    *I am dissatisfied with the response at Step 1 because...*    I have still not been
reviewed by Unit Classification Committee, and I am over three weeks overdue. It's not a
matter of an exact date, it's a matter of policy. Policy states that if an SPD code is re-
tained, an inmate will be reviewed once every twelve months. I was reviewed on January 19th,
2018. The year before that, I was reviewed on January 6th, 2017. Each of these was within
policy. This year, I have written and was initially told I was not even eligible for a
review until I got ten years. My ten years on this code expired in january 2012, so that was
a gross error. Then I was told I would be seen in May. That is another gross error. If I have
to wait until may to have a hearing, I will have done 16 months betewen reviews, which is far
more than the policy guideline of every twelve months.

In the Step One response, it says that it was investigated and that I have been
scheduled for UCC, but no date was given, so I am left in the dark. I have written two
additional I-60's, had my mother contact classification, and written a letter to the warden
trying to at least determine WHEN I will be reviewed, and have not gotten a response as of
this writting. With my Step two time limit approaching, I have no resolution to this ongoing
problem. Policy is very clear in the Administrative Directive 04.11, Section 4, that hearings
will be given within every 12 months. Yet, this is not being followed in my case.

While I appreciate them scheduling me for UCC and looking into the matter at Step
One, I would like to know exactly when I will be reviewed. By policy, I am entitled to that.
Thank you in advance for providing my scheduled date of review in your response.

---

**I-128 Front** (Revised 11-2010)        **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**        (OVER)

Appendix G

Offender Signature: _Curtis Gambill_____  Date: _2-13-19_____

**Grievance Response:**

Your Step 2 grievance has been investigated by this office. Your allegations could not be sustained. Records indicate your most recent SPD review was 05-11-18. You may contact Classification with further inquires. Based on the information available at this time, no further action is warranted.

Signature Authority: _M. Blalock (signature)_____  M. BLALOCK    Date: _MAR 2 6 2019____

**Returned because:**    ***Resubmit this form when corrections are made.**

☐ 1. **Grievable time period has expired.**
☐ 2. **Illegible/Incomprehensible.***
☐ 3. **Originals not submitted. ***
☐ 4. **Inappropriate/Excessive attachments.***
☐ 5. **Malicious use of vulgar, indecent, or physically threatening language.***
☐ 6. **Inappropriate.***

CGO Staff Signature: _____

**OFFICE USE ONLY**

**Initial Submission**          CGO Initials: _____
Date UGI Recd:_____
Date CGO Recd:_____
(check one) ____Screened ____Improperly Submitted
Comments: _____
Date Returned to Offender:_____

**2nd Submission**          CGO Initials: _____
Date UGI Recd:_____
Date CGO Recd:_____
(check one) ____Screened ____Improperly Submitted
Comments: _____
Date Returned to Offender: _____

**3rd Submission**          CGO Initials: _____
Date UGI Recd:_____
Date CGO Recd:_____
(check one) ____Screened ____Improperly Submitted
Comments: _____
Date Returned to Offender: _____

I-128 Back (Revised 11-2010)                              Appendix G

Senior Warden Rocky Moore
John M. Wynne Unit
810 F.M. 2821
Huntsville, Tx.  77349

RE: SPD Review/Education Request                           7/28/21

Dear Warden Moore:

Sir, I had written to you last month because I was coming up for my annual SPD re-
view soon. My date was supposed to have been July 23rd, 2021. Last year, I was approved
by UCC, which was chaired by Major Boyd, to have this very out-dated SPD code removed
pursuant to SPD policy. I was informed that you signed off on this recommendation as
well. Unfortunately, Region One Director Bryant has made it clear that it is his policy
not to downgrade SPD codes, and many of us are suffering indefinite punishment as a
result.

Be that as it may, Sir, I am still entitled to due process protections, and I still
have an expectation that all TDCJ officials will abide by their own statutory laws
and Administative Directives. This is not taking place however, in regards to SPD
inmates, their reviews, their downgrades once ALL criteria is met, or their placement
in educational and vocational programs according to established policy criteria.

Though I have tried every respectful means to bring this to your attention, and have
relied solely upon TDCJ policy, it has been my experience that no one is listening and
policy only matters when it pertains to those subjected to it. It is also my experience
that most ranking officials who vote on these SPD matters have never read or gained a
genuine understanding of current SPD policy. And I will tell anyone who listens from the
Governor down, that what is taking place with us is wrong, has no basis in any current
TDCJ policy, and is an arbitrary abuse of discretion, Sir.

Not only have I made these policy abuses known via letter, grievance, Ombudsman inquiry,
and interviews. But, they have only gotten worse, Sir, and punish men who are genuinely
trying to do the right thing continually. It places us in constant danger living under
A-1 conditions for years upon years. It is patently unfair.

When my year was up on July 23rd, I began to write classification to find out when I
would be scheduled for UCC review. I got no response. I began having my family call the
unit. No one in classification answered their calls. Finally, this morning we found out
via a secretary that I was secretly reviewed on July the 2nd and denied. When asked who
ran the committee, the secretary said no one signed the review sheet. It only had the
date, my name, and the following message, "Retain SPD/Remain G4". No reason or justifi-
cation was given, and I was never informed that I had even been reviewed.

The minimum standard for procedural due process handed down by the Supreme Court is
(1) notice of hearing, (2) an opportunity to appear or present written statements on
ones own behalf, (3) an informal hearing by impartial fact-finders, and (4) verbal or
written justification provided explaining the committee's decision. The Court has said
repeatedly that if any one of these steps is omitted, a procedural due process violation
will arise. Sir, they didn't just omit one, they omitted them all in a blatant disregard
for state policy, state law, and constitutional rights.

My question for you, Warden Moore, is do you think what they are doing is right? You
have the authority to correct and amend these things, and I am bringing them to your
attention in a respectful and honorable way. I was approved by your UCC committee to
have this ancient code removed pursuant to the A.D. 04.11, which I exceed in every way
conceivable. You approved that from what I was told. Since that time, I have not had a
single infraction, minor nor major. During the heart of Covid sickness, many ranking
officers came to my cell and ask me to help them clean and pass out meals and help them
perform duties on A-1. I never withheld my assistance. Later I was asked by Captain
Macedo to be a dayroom cleaner, and I performed this duty daily for over four months.

When R.P.D. Deputy Director Toby Powell started G4ipilot Life skills class, I was one of the first men to sign up. I completed this six week ITP program and have been asked to enroll to become a Life Coach, because it is in my heart to help other men become better men.

Since you have been my Warden, Sir, I have done only one thing. Strive to become better. I have helped countless men get off A-1. I have watched countless men be promoted off A-1. There is not a single man over here who has been here longer than me. Many have come back three or four times, only to get promoted to G2 again and again. I have not had a major disciplinary case in 18 years. I have asked repeatedly to be allowed further education. You have approved me twice for vocational classes or college. I meet and exceed all current policy criteria for these things, yet, when I write to education, I am denied, or told I don't have approval, or have to wait until I'm G2. How do you think that makes me feel, Sir? For years, I was told that when I got my 10 years, the SPD code would be removed. Wardens told me this. I have nearly 20 years in disciplinary confinement now. I've watched men give up over here because they do not beleive that the administration is ever gonna follow their own policy. They have lost all faith in the integrity of the system. When it comes to us, policy after policy is disregarded and we are openly discriminated against. When a guy does nearly two decades without a case, and a secret committee denies him without even telling him that he's been seen and denied, what would you think, Sir? Would you think that was fair?

I am coming to you because I do have respect for you. Your ranking title, but also for you personally, Sir. I don't beleive you know the true extent of what we endure, but I want to make it clear to you. There is no one on Wynne unit, staff or inmate, who knows this policy as well as I do. I have lived it, breathed it, and advocated for years to get it fixed. I have suffered under it. I have watched staff openly declare they will never vote to approve us. I have seen senior rank like former Warden Strong say she'll never sign off on us, as well as Director Bryant. The A.D. 04.11 is the sole authority for SPD codes. It is a statutory authority deriving it's power from the Texas Government Codes, meaning it is statutory law, not just a casual TDCJ regulation. And this Directive gives absolutely no authority to UCC or central administrative staff to hold these codes indefinitely. It is why I have never once been given a specific justification rooted in policy as to why I am being denied. It doesn't exist in policy. So, when you get down to brass tacks, it is being done simply to punish men and women for ancient sins. It is retalitory and is perpetuated out of clear bias that has no bearing in legitimate penological interest. You have granted me approval to take Ged and I was in education over five months. I have worked these fields for years, been in chapel, in hallways, and dining halls all over this place for nearly six years. I have conducted myself exemplary in all regards.

I have filed a Grievance over what has occurred, but I am asking you to right a obvious wrong, Sir. I was approved a year ago, to do even better,under harder circumstances,for another full year, only to be secretly denied for no reason at all, denied all forms of due process. That was not right, Sir, and I'm asking for a true UCC hearing conducted fairly, and decided on the merits. And rooted in actual policy. That is all I'm asking.

I would also like to request an interview with you to discuss education and the permission to pursue additional religious programming. Thank you for your time, Sir, and your consideration.

Sincerely,
Curtis Gambill #805886



Curtis A. Gambill #805886
810 F.M. 2821 W.- Wynne Unit
Huntsville, TX.  77349
Plaintiff, pro se

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

CURTIS ALLEN GAMBILL, et al.,          §
(TDCJ-CID #805886)                     §
                                       §
        Plaintiffs,                    §
                                       §
vs.                                    §    CIVIL ACTION H-21-1076
                                       §
BRYAN COLLIER, et al.,                 §    AFFIDAVIT OF DAVID GONZALES HUIZAR
                                       §    (TDCJ-CID #2326452)
        Defendants.                    §

DECLARATION OF DAVID GONZALES HUIZAR
UNDER THE PENALTY OF PERJURY

1.  I, DAVID GONZALES HUIZAR, being of sound mind, do declare the following

facts to the best of my understanding and belief.

2.  I am over the age of eighteen, and have personal knowledge of the events

and matters stated herein;

3.  I am presently serving a two year prison sentence in the custody of TDCJ.

4.  While at the Garza West unit in April 2021, I was diagnosed with prostate

cancer.

5.  After receiving a demotion in custody class due to a major disciplinary

infraction, I was transferred to the John M. Wynne unit on May 12, 2021, and

assigned to Medium Custody housing.

6.  On May 26, 2021, I had surgery to remove my cancerous prostrate.

7.  After surviving several serious medical complications, I was returned

to the John M. Wynne unit June 3, 2021, and assigned cell housing with Curtis

Allen Gambill, whom I continue to be housed with upto this present date.

(1)

8.   In the short time that I have been on Medium Custody at the John M. Wynne unit, I have experienced, and/or witnessed many terrible things.

9.   I have been incarcerated on four separate occassions within TDCJ, beginning in 1983. In total, I have served nearly 25 years on six different units.

10)   I declare without reservation that my experience on Medium Custody A-1 block, at the John Wynne unit has been the worst overall conditions of confinement that I have endured in those 25 years of incarceration.

11)   I have experienced, endured, and/or witnessed all of the following things here, and I have witnessed my cellmate, Curtis Gambill, experience the same things.

12)   I have witnessed militant officers brutally assault inmates routinely.

13)   I have been subjected to chemical agents multiple times. Noxious smoke from fires and rampant drug use have become normalized, and is a daily trial with my serious health conditions.

14)   I have witnessed numerous offenders assaulting other offenders brutally. I have been personally threatened with physical violence by a prior cellmate.

15)   I have been subjected to numerous disciplinary lock-downs due to the disruptive behavior of other A-1 offenders.

16)   I have experienced innumerable power outages, lasting upto 7-8 hours, leaving me and my cellmate without the use of our fans, in summer temperatures reaching heat indexes upto 110° F.

17)   The conditions of the facility on Medium Custody is in a state of disrepair. Windows are broken, screens missing, and sinks and toilets routinely clog and/or break, leading to floods.

18)   My cellmate and I have been subjected to regular floods, which leave our cell contaminated with raw sewage, that we must push out by hand. At no time have we ever been provided any cleaning supplies to decontaminate our living area.

19)   It is my understanding that my cellmate, Curtis Gambill, has been sub-

(2)

jected to these conditions longer than any other inmate on John Wynne unit, despite not having any disciplinary infractions for many years.

20) In my 25 years of incarceration, I have never witnessed another inmate be confined to a disciplinary wing for as long.

21) On July the 6th, around 2:00 AM, an officer came to our cell and banged on the bars. I heard him ask my cellmate, Curtis Gambill, if he had already seen Unit Classification. I heard my cellmate respond that he had not seen them. At that point, the officer handed my cellmate a UCC notification slip to sign. My cellmate asked the officer why the slip was dated for July 2nd, 2021? And I heard the officer tell my cellmate that it was probably a mistake and to go ahead and sign the notification.

22) When my cellmate's date came and went, I witnessed him write multiple inquiries to classification asking them when he would be reviewed. To my knowledge, he received no answer, until his family members contacted unit staff weeks later on July 28th, 2021. He was informed that he had secretly been reviewed and denied on July 2, 2021 without notice or any verbal or written decision.

23) I have never witnessed any other Medium custody inmate be denied promotion who has more than one year without major disciplinary until now.

24) To my knowledge, SPD inmates are the only inmates being treated in this manner. And I have witnessed the tremendous stress and anxiety Mr. Gambill endures.

Further you affiant sayeth not.

I, David Gonzales Huizar, #2326452, have read the following and foregoing, and declare under the penalty of perjury under the laws of the United States that the statements contained herein are true and correct to the best of my belief and knowledge.

Dated this ____ day of September, 2021.

(signature)
David Gonzales Huizar  #2326452

(3)

*Emergency*

## Texas Department of Criminal Justice

# STEP 1   OFFENDER GRIEVANCE FORM

✱ ACCEPT AS ORIGINAL

OFFICE USE ONLY

Grievance #: 2021072012

Date Received: FEB 2 0 2021

Date Due: 4/1/21

Grievance Code: 506/598

Investigator ID #: I2788

Extension Date:

Date Retd to Offender: MAR 15 2021

Offender Name: Curtis Gambill   TDCJ # 805886

Unit: Wynne   Housing Assignment: A1-1-04T

Unit where incident occurred: Wynne

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Sgt. Birchfield   When? 2-17-2021

What was their response? "It was warden and Director's decision, talk to them"

What action was taken? None.

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

The last week we have all experienced record low temperatures. Prior to this, a policy was implemented arbitrary restricting G-4 inmates from wearing our jackets outside our housing wing. Officers have been enforcing this, and we have to freeze while everyone else, including inmates and staff bundle up. A1 has no heat, windows are ill fitting and/or broken. Several have been missing all winter. When temps hit single digits, other blocks received extra blankets, A-1 got issued an extra sheet. I know it's been hard on the whole state, but it's freezing, we have no water, and they have only been giving A1 inmates one to two cups of water a day. When our families have called, they have been told we've gotten extra blankets. That has not been the case on A-1. They don't even want us to wear our jackets. And I'm submitting this step 1 to let the administration know that much of what they tried to do didn't make it to A-1, and it's been severe.

---

I-127 Front (Revised 11-2010)   **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**   (OVER)

Appendix F

**Action Requested to resolve your Complaint.** Fix the windows, rescind the No Jacket policy, and have water passed out. Thank you.

**Offender Signature:** Curtis Dambill                                    **Date:** 2-17-21

**Grievance Response:** _____

This office has investigated your grievance. After a review of statements from staff your request to wear your jacket everywhere was not sustained. Maintenance repaired the windows, but inmates continue to break windows. No violation of TDCJ policy was sustained. No further action is warranted by this office and we will consider this step 1 grievance closed at this time.

Warden Moore

**Signature Authority:** _____                    **Date:** 11 March 2021

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:**       *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days. *
☐ 3. Originals not submitted. *
☐ 4. Inappropriate/Excessive attachments. *
☐ 5. No documented attempt at informal resolution. *
☐ 6. No requested relief is stated. *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant, Refer to grievance #_____
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

**Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.**

**Medical Signature Authority:** _____

I-127 Back (Revised 11-2010)

| OFFICE USE ONLY | |
|---|---|
| Initial Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 2nd Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 3rd Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |

Append:

*Accep for Orginal*



**Texas Department of Criminal Justice**

# STEP 2

### OFFENDER GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance #: 2021072012

UGI Recd Date: MAR 22 2021

HQ Recd Date: APR 05 2021

Date Due: 5-1-21

Grievance Code: 506/598

Investigator ID#: I2448

Extension Date: 6-10

Offender Name: Curtis Gambill          TDCJ # 805886

Unit: Wynne          Housing Assignment: A1-01-04T

Unit where incident occurred: Wynne          A1-Jul-13 2021

---

*You must attach the completed Step 1 Grievance that has been signed by the Warden for your Step 2 appeal to be accepted. You may not appeal to Step 2 with a Step 1 that has been returned unprocessed.*

---

**Give reason for appeal (Be Specific).**     *I am dissatisfied with the response at Step 1 because...*

the windows on A-1 have not been fixed. We have experienced several more days of freezing temperatures. The response at step One acknowledged the conditions, but blames them on disruptive inmates. I have nothing to do with the actions of others, and should not have to suffer extreme temperatures as a result of their actions. Warden Moore and Wynne unit maintenance officers have a duty to repair broken windows and to provid offenders protection from frigid temperatures. Warmth is a basic human need, and the deliberate refusal to repair broken and ill-fitting windows during a harsh winter, is a violation of my 8th Amendment constitutional rights to be free from cruel and unusual punishment.

The jacket restrictions were quietly rescinded, but the response at step One was disingenuous because the restriction was known by all staff and Wynne unit inmates. Signs were posted up and down the hallway, declaring the restrictions from wearing them. Whoever authorized that policy, which was in effect for over 2 months at Wynne unit, including the record low freezes, I'm glad it was eventually rescinded, but it should have never been allowed to begin with. And I'm filing this Step 2 in order to document it and attempt to get the windows fixed on A-1 block. Thank you.

---

I-128 Front (Revised 11-2010)          **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**          (OVER)

Appendix G

Offender Signature: *Curtis Gambill*                Date: *3-21-21*

**Grievance Response:**

Your Step 2 grievance has been investigated by this office.  Assistant Warden Coleman was contacted regarding your complaint.  Inmates are not permitted to wear jackets in the main hall during mass movement for meals in the offender dining hall or while attending medical appointment lay-ins. Inmates will continue to be allwed to wear jackets to recreation, school, dayrooms, and while performing assigned job duties.  Maintenance will repair any broken windows as soon as more glass is delivered. No further action warranted by this office.

Signature Authority: *[signature]*     **J. RILEY**     Date: *6/24/2021*

**Returned because:**    ***Resubmit this form when corrections are made.***

☐ **1. Grievable time period has expired.**

☐ **2. Illegible/Incomprehensible.***

☐ **3. Originals not submitted. ***

☐ **4. Inappropriate/Excessive attachments.***

☐ **5. Malicious use of vulgar, indecent, or physically threatening language.**

☐ **6. Inappropriate.***

**CGO Staff Signature:** _____

| OFFICE USE ONLY | |
|---|---|
| Initial Submission | CGO Initials: _____ |
| Date UGI Recd:_____ | |
| Date CGO Recd:_____ | |
| (check one) ____Screened    ____Improperly Submitted | |
| Comments: _____ | |
| Date Returned to Offender:_____ | |
| 2nd Submission | CGO Initials: _____ |
| Date UGI Recd:_____ | |
| Date CGO Recd:_____ | |
| (check one) ____Screened    ____Improperly Submitted | |
| Comments: _____ | |
| Date Returned to Offender:_____ | |
| 3rd Submission | CGO Initials: _____ |
| Date UGI Recd:_____ | |
| Date CGO Recd:_____ | |
| (check one) ____Screened    ____Improperly Submitted | |
| Comments: _____ | |
| Date Returned to Offender:_____ | |

**I-128 Back** (Revised 11-2010)                                             **Appendix G**

Unit

United States District Court
Southern District of Texas, Houston Division
Clerk of Court, Nathan Ochsner (Civil Action H-21-1076
P.O. Box 61010
Houston, Tx.   72208-1010

Curtis Gambill      805886
810 F.M. 2821 - Wynne Unit
Huntsville, TX. 77349

United States Courts
Southern District of Texas
FILED

JAN 24 2022

Nathan Ochsner, Clerk of Court

Un
Sou
Cle
P.C
Ho

* Legal/Privileged Mail *