IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| CURTIS ALLEN GAMBILL, | ) | *United States Courts* *Southern District of Texas* **FILED** |
| JESSE WADE HOLT, | ) | |
| MARK ANTHONY REYNA, | ) | |
| EDDIE RAY FOWLER, JR., | ) | **SEP 1 5 2022** |
| PRESCILLIANO MARTINEZ, | ) | |
| JUAN ANTONIO DELEON, | ) | Nathan Ochsner, Clerk of Court |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-cv-01076 |
| | ) | |
| BRYAN COLLIER, | ) | CIVIL RIGHTS COMPLAINT |
| STEPHEN BRYANT, | ) | (§ 1983) |
| TARA BURSON, | ) | |
| JOHN WERNER, | ) | Trial by Jury Demanded |
| ROCKY N. MOORE | ) | |
| RODGER BOWERS, | ) | |
| ASHLEY L. HASTINGS | ) | |
| VIRGINIA S. STEVENS | ) | |
| Defendants. | ) | |

PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, Curtis A. Gambill, plaintiff pro se, who presents the following Plaintiff's Amended Complaint in Civil Action No. 4:21-cv-01076.

I.        INTRODUCTION

1.    This is a civil rights action filed by plaintiffs Curtis Gambill, Jesse Holt, Mark Reyna, Eddie Fowler, Prescilliano Martinez, and Juan DeLeon.[1]

---

1 Original Plaintiffs Pete Armenta and Joseph Martinez voluntarily dismissed their claims after being transferred from the conditions of confinement at Wynne unit, and having their SPD codes removed by their new unit administrations.

2.    Plaintiffs are seeking declaratory and injunctive relief under 42 U.S.C. § 1983, alleging long-standing, current, and ongoing violations of their rights to be free from cruel and unusual punishment, and to be afforded due process and equal protections under the law, as protected by the Fifth, the Eighth, and the Fourteenth Amendments to the United States Constitution.

II.             JURISDICTION and VENUE

3.    This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 (a)(3).

4.    Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiffs' claims for injunctive relief are authorized by 28 U.S.C. §§ 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

5.    The United States District Court for the Southern District of Texas, Houston Division is the appropriate venue under 28 U.S.C. § 1391 (b)(2); the county of Walker is where the claim is being presented, because it is where the events giving rise to these claims occurred and where all defendants and plaintiffs currently reside and/or are employed.

III.             PARTIES

**Plaintiffs:**

6.    Plaintiff CURTIS ALLEN GAMBILL, TDCJ # 805886, 810 F.M. 2821, Huntsville, Texas  77349.

7.    Plaintiff JESSE WADE HOLT, TDCJ # 1362684, 810 F.M. 2821, Huntsville, Texas  77349.

8.    Plaintiff MARK ANTHONY REYNA, TDCJ # 1213971, 810 F.M. 2821, Huntsville, Texas  77349.

9.    Plaintiff EDDIE RAY FOWLER, JUNIOR, TDCJ # 2231555, 810 F.M. 2821, Huntsville, Texas  77349.

10. Plaintiff PRESCILLIANO MARTINEZ, TDCJ # 2323270, 810 F.M. 2821, Huntsville, Texas 77349.

11. Plaintiff JUAN ANTONIO DELEON, TDCJ # 2060521, 810 F.M. 2821, Huntsville, Texas 77349.

12. All plaintiffs are presently serving criminal sentences in the care and custody of the Texas Department of Criminal Justice, and currently reside at the John M. Wynne unit in Huntsville, Texas.

**Defendants:**

13. Defendant BRYAN COLLIER, ("Director Collier"), P.O. Box 99, Huntsville, Tx. 77342-0099. At all times relevant to this action was/is employed by TDCJ as Executive Director. Director Collier is TDCJ's highest authority and is legally responsible for the overall operation, oversight, and review of TDCJ, and each institution under it's jurisdiction. It is Director Collier's duty to ensure compliance with all TDCJ policies,directives, as well as state and federal law throughout TDCJ.

14. Defendant STEPHEN BRYANT, ("Director Bryant"), 1225 Avenue G, Huntsville, Tx. 77340. At all times relevant to this action was/is employed by TDCJ as Regional Director. Director Bryant oversees all daily operation within the Region One District. Director Bryant is the final authority on classification decisions within Region One, and is also responsible for investigating and resolving offender Step Two grievance concerns. Director Bryant is a key voting member of the Security Precaution Designator Review Committee ("SPDRC").

15. Defendant TARA BURSON, ("Chairwoman Burson"), P.O. Box 99, Huntsville, Texas 77342-0099. At all times relevant to this action was/is employed by TDCJ as Chairperson of Central Classification and Records. Chairwoman Burson's duties are outlined in the TDCJ Classification Plan. She is a member of the SPDRC committee in accordance with the Administrative Directive 04.11 ("AD 04.11").

16.    Defendant JOHN WERNER, ("Deputy Director Werner"), P.O. Box 99, Hunts-ville, Tx. 77342-0099. At all times relevant to this action was/is employed by TDCJ as Deputy Director of Support Operations. Deputy Director Werner is part of the SPDRC committee and is tasked with making the final determination on SPD review decisions if a unanimous decision is not made by other SPDRC members in accordance with the A.D. 04.11 and TDCJ's Classification Plan.

17.    Defendant ROCKY N. MOORE, ("Warden Moore"), 810 F.M. 2821, Huntsville, Texas 77349. At all time relevant to this action was/is employed by TDCJ as the Senior Warden of John M. Wynne unit, and is responsible for the care, safety, and housing of all Wynne unit inmates, and the employment, training, and over-sight of all unit staff. Warden Moore is the final authority over Step One grie-vances and classification decisions. Warden Moore is the initial voter on the SPDRC committee pursuant to the A.D. 04.11.

18.    Defendant RODGER BOWERS, ("Warden Bowers"), 810 F.M. 2821, Huntsville, Texas 77349. Warden Bowers is the current Senior Warden at Wynne unit and has assumed all of Warden Moore's duties and obligations concerning Wynne unit in-mates and staff, classification decisions,grievance concerns, and SPDRC duties.[2]

19.    Defendant ASHLEY L. HASTINGS, ("Ms. Hastings"), 810 F.M. 2821, Hunts-ville, Texas 77349. At all times relevant to this action was/is employed by TDCJ as Program Supervisor I on the Wynne Unit. Ms. Hastings is chief of unit classi-fication and is responsible for training staff pursuant to TDCJ's Classification Plan and other related policies and directives. It is Ms. Hastings duty to main-tain accurate records and schedule timely review hearings. Ms. Hastings is a

---

2 Plaintiffs originally sued Rocky Moore, the former warden of Wynne Unit. Defen-dants have now automatically substituted Rodger Bowers, the current warden of Wynne unit. See Federal Rules of Civil Procedure 25(d).

voting member on unit classification committees ("UCC").

20.    Defendant VIRGINIA S. STEVENS, ("Ms. Stevens"), 810 F.M. 2821, Huntsville, Tx. 77349. At all times relevant to this action was/is employed by TDCJ as Classification Manager II at John Wynne unit. Ms. Stevens is tasked with keeping accurate records, scheduling UCC review hearings, and notifying inmates of their review dates and decisions. Ms. Stevens is a voting member on UCC committees.

21.    Each named defendant has acted under color of state law at all times relevant to this complaint. Each defendant is hereby sued in their official capacity for the acts and omissions described fully below.

**IV.**                              **EXHAUSTION OF REMEDIES**

22.    Plaintiff has timely exhausted all available remedies prior to filing this complaint.

**V.**                              **PREVIOUS LAWSUITS**

23.    Prior to submitting Plaintiffs' Original Complaint in Civil Action No. 4:21-cv-01076, Plaintiffs had never before filed any civil suit, nor has there been previous litigation regarding the series of issues described within this complaint.

**VI.**                              **STATEMENT OF FACTS**

24.    In 2003, the Texas Department of Criminal Justice ("TDCJ") instituted a new administrative directive that authorized the use of Security Precaution Designator ("SPD") codes.

25.    The procedures, definitions, and criteria necessary for placement and/or removal of the various SPD codes are governed solely by TDCJ's Administrative Directive 04.11 ("A.D. 04.11").

26.    The A.D. 04.11 is a statutory directive deriving its authority from the Texas Government Code §§ 494.002 (a) and 498.002. This directive uses explicitly mandatory language in establishing specific substantive predicates to limit

(5)

official discretion. This directive provides plaintiffs a legitimate expectation of a specific result once that certain criteria is met, namely that the SPD code will be removed upon meeting the designated criteria and requisite time limits.

27.   The defendants and their predecessors have failed in their duties regarding this policy. From inception, it has been arbitrarily carried out at the operational levels within TDCJ. Defendants' negligent disregard for the plaintiffs' due process rights have created a de facto policy of indefinite punishment unique to TDCJ, and has cultivated an environment where additional abuses are promoted and/or overlooked.

28.   All conditions precedent have occurred or have been performed. The series of acts described henceforth are common to all plaintiffs and arise out of the defendants' arbitrary and indefinite application of these ultra punitive SPD codes, denial of basic due process, and the cruel and unusual conditions of confinement plaintiffs have been subjected to, without which, plaintiffs would have avoided such grievous psychological and physical injuries.

### VII.              DENIAL OF DUE PROCESS

29.   Upon SPD implementation, TDCJ officials retroactively applied this policy. Offenders who received an SPD code at this time were stripped of their jobs, removed from educational, vocational, and rehabilitational programs, then transferred to punitive custody housing assignments that had been previously reserved solely for those recently found guilty of major rule infractions.

30.   Plaintiffs were provided no due process. Plaintiffs were given no advanced notice of new SPD policy, never informed that an SPD code had been placed upon them, and they received no hearings where they could present statements and/or dispute the SPD code's placement. Plaintiffs were provided no formal or informal justification for the SPD placed upon them.

31.   This calculated system-wide denial of due process encouraged a pattern of failure to enforce and/or adhere to policy definitions and guidelines

(6)

by defendants and other TDCJ officials that led directly to erroneous, retaliatory, and/or indefinite placement of SPD codes upon plaintiffs and others.

32.   Attachment C of the A.D. 04.11 provides clarified interpretations of each code's necessary criteria for placement and/or removal, and Section I (B) states, "UCC and central administration staff shall strictly adhere to the definitions provided in this directive..." Defendants have willfully ignored this mandate and Plaintiffs DeLeon, Prescilliano Martinez, Holt, and Gambill, among others, have/had erroneously placed SPD codes as a result of defendant's reckless negligence. See ECF No.48 at 2-3, No.49 at 2-3, No. 51 at 2, No. 52 at 2-3.

33.   Plaintiff Holt was charged with attempted escape, but was erroneously given an escape SPD by TDCJ officials instead of the proper attempted escape SPD. Plaintiff DeLeon and Martinez were given staff assault SPD codes for incidents that never met the criteria for such codes. The result of these erroneously placed SPD codes upon these plaintiffs has been decades of sustained punitive confinement conditions without hearings or due process to correct the errors.

34.   Plaintiff DeLeon was assaulted by an officer in January 2011. To cover the misconduct, plaintiff DeLeon was charged with staff assault by the assaultive officer. After an investigation where fellow officers testified that the charging officer was the aggressor, and was intoxicated on-duty during the assault, the officer was fired, and charges were dropped against plaintiff DeLeon. Plaintiff DeLeon was released in 2012, and upon return to TDCJ in 2016, he was placed in lock-up. He received no hearing, but later learned from others, that he had been given an SPD code for the staff assault he had been cleared of in 2011. He has remained in punitive confinement to the present day due to this erroneous/retaliatory code.

35.   The haphazard and arbitrary application of these SPD codes by unit staff has led to other erroneously placed SPD codes for other inmates, as well.

Charlie Leon Rhodes, TDCJ# 2032190, (Attachment A), Lamar Harris, TDCJ# 2021655, (Attachment B), Marcus Raines, TDCJ# 2338357, (Attachment C), and Bennie Ray Johnson, TDCJ# 2362267 are a few known to the Plaintiffs to have suffered from erroneously placed SPD codes by the named Defendants.

36.     Plaintiffs received no pre or post-deprivation hearings connected to their SPD placements. Plaintiffs, upon becoming aware that SPD codes had been placed upon them, in most cases months/years after the fact, made efforts to contact unit administration and classification staff. All efforts to have defendants rectify these wrongs have been denied. Plaintiffs grievances disputing the placement of erroneous SPD codes were told the grievable time period had expired and had their grievances dismissed unprocessed.

37.     Plaintiffs were advised by defendants Hastings, Stevens, Burson, Moore, and other TDCJ officials that their SPD codes would be removed only pursuant to section IV of the A.D. 04.11. This section provides the criteria that upon the inmate meeting, requires a particular result, namely that a hearing be provided, and ultimately, that "SPD code shall be removed..." Former TDCJ Executive Director deemed the latter criteria in Section IV(C) as "the ten year rule."

38.     Plaintiffs have repeatedly requested review hearings pursuant to section IV(A),(B),(C) of the A.D. 04.11 upon meeting necessary criteria, and defendants Burson, Hastings, Stevens, and Moore have denied their requests in violation of this policy and their due process rights. Plaintiffs are told they must "do ten years" before they are reviewed.

39.     Plaintiffs Gambill, Holt, Reyna, Fowler, Martinez, and DeLeon each served between 10 and 15 years of punitive confinement before ever receiving their first SPD review hearings, despite exceeding all necessary criteria and submitting numerous requests to Defendants Hastings and Stevens for these reviews. Former Plaintiff Pete Armenta's SPD incident was over 20 years old and pre-dated SPD policy. He received his very first SPD review hearing on 6-20-2020 after 20

years of punitive confinement without any meaningful periodic review for SPD removal. Plaintiff Armenta had no disciplinary infraction during those 20 years.

40.   Section IV(A) of the A.D. 04.11 states clearly that if an offender seeks to have an SPD removed, they can request a review by UCC once every 12 months. Defendants Burson, Moore, Hastings, Stevens, and Bryant have deliberately failed to provide these hearings to plaintiffs despite repeated requests for them. Defendants Hastings and Stevens have not only denied plaintiffs their review hearings, they have improperly recorded SPD review hearing dates and/or line class promotion dates, which has deprived plaintiffs of their scheduled reviews by months/years, which has cost plaintiffs months and/or years of good time and work time credits effecting their release/parole dates as a result.

41.   Defendants Hastings and Stevens issued erroneous dates that were off by ten years to Plaintiffs Gambill and Holt in 2019. Plaintiff Gambill submitted Step 1 and Step 2 grievances #2019069528 to correct the blantant error. Plaintiff Holt has over 30 months without any review hearings. See ECF No. 49 at 15-16.

42.   When Plaintiffs have finally completed the extraordinary 10 year criteria to be provided a review hearing, the reviews are cursory and meaningless. UCC members have shown bias and open hostility towards plaintiffs. Each plaintiff has been told by UCC members and named Defendants that they will never vote to remove SPD codes from inmates, regardless of what any policy states. In 2016, after a prompt denial by UCC members, plaintiff Reyna was told, "No matter how long you do, we'll never forget this." In 2017, Plaintiff Reyna was told by then-Senior Warden of Wynne unit, Kelly Strong, "As long as I'm here, you will not ever get an SPD removal." When Plaintiff Reyna asked about the ten year rule in the A.D. 04.11 policy, Warden Strong replied that, "I am the policy".

43.   Defendants Hastings, Stevens, and Burson have failed to provide plaintiffs with UCC/SPDRC decisions, notice of hearings, and have failed to forward the details and/or dates of these sham hearings to SCC pursuant to the A.D. 04.

(9)

11. In May 2016, Warden B. Smith told plaintiff Gambill during a meaningless re-
view hearing that he had no authority to remove an SPD, and that Warden Strong
"Doesn't like them", so he would not provide a decision until further notice.
Plaintiff Gambill submitted grievances #2016169972 and #2016179514 requesting
a formal decision after being kept in limbo for months. Neither grievance pro-
vided a formal UCC decision/response.

44. Ultimately, a TDCJ Ombudsman investigation initiated by plaintiff Gam-
bill's family revealed that Gambill had been secretly denied, but Defendant Ste-
vens had failed to forward the UCC decision to the SPDRC. Plaintiff Gambill was
ordered a new UCC hearing after 8 months of outside efforts. (ECF No. 48 at 35,
TDCJ Ombudsman Office Inquiry No:02-9121-06).

45. Upon finally securing the new hearing in January 2017, defendant Ste-
vens welcomed plaintiff Gambill into the UCC hearing by stating, "This is the
guy who went over our heads to Huntsville." Defendant Stevens immediately voted
to deny plaintiff Gambill, and continued to deny him at every hearing she was
present for upto 2020.

46. Not long after, then-Major Giddens told plaintiff Gambill, Lamar Har-
ris, TDCJ # 2021655, and Raul Trevino, TDCJ # 1657774, that the reason they deny
those with SPD codes during UCC hearings is because, "Warden Strong doesn't like
for us to approve them," stating further that, "I know it sounds wrong, but we
deny them to protect ourselves from future problems." Plaintiff Gambill submitted
Grievance Step 1 and Step 2 #2017081445 to address these willful violations of
due process by senior administration officials on Wynne unit.

47. In January 2018, defendant Stevens entered the UCC waiting room and
asked if anyone was waiting for an annual SPD review. Plaintiff Gambill and one
other inmate raised their hands. Defendant Stevens stated, "If ya'll are here
for SPD reviews, You're wasting your time, because I can tell you right now,
we're not approving them." The other inmate left while Plaintiff Gambill chose
to wait and attend his hearing.

**48.** When called for his hearing, Defendant Stevens loudly voted to deny
Plaintiff Gambill before he had fully entered the UCC committee room. After the
sham hearing's cursory denial, Plaintiff Gambill asked the committee how long he
would have to do, and what hidden criteria must be met to finally be approved.
Plaintiff Gambill had 18 years without any major disciplinary infractions at
that point. Defendant Stevens and then-Captain Webb stated, "We will most likely
never vote to remove an SPD code from an offender." Plaintiff Gambill appealed
via Step 1 and 2 grievances #2018078954.

**49.** In May 2019, Plaintiff Gambill was denied in absentia. He appealed
with Step 1 and 2 grievances. Plaintiff Gambill's family faxed defendants Collier,
Bryant, and Burson. They received no adequate responses. In November 2019, Plain-
tiff Gambill's family filed a freedom of information request seeking the records/
reports to plaintiff Gambill's closed-door hearing. Within days of this request,
plaintiff Gambill was innocently called to the security offices by Sgt. McCarthy.
Upon arrival, Major Giddens and Sgt. McCarthy informed Gambill that they had been
instructed by "higher-ups" to lock him up for "investigation".

**50.** Plaintiff Gambill spent 3 days in solitary confinement without his
property. He was never questioned or provided a reason for his confinement. On
the fourth day, then-Sgt. Schmidt came to suddenly release plaintiff Gambill,
saying, "You must have pissed someone really important off". Plaintiff Gambill
asked his family to cease their outside efforts to redress the SPD issues for
fear of further retaliation from Defendants Moore and Bryant.

**51.** When plaintiffs have gained approvals from favorable UCC committees to
have their old and/or erroneous SPD codes removed pursuant to the A.D.04.11,
those recommendations have been sent to the SPDRC and SCC for final approval.
The SPDRC committee in Region One includes defendants Moore, Bryant, Burson, and
Werner. Plaintiffs Gambill, Fowler, Holt, Reyna, Martinez, and DeLeon have all
been approved to have their SPD codes removed by various UCC committees only to

have SPDRC defendants arbitrarily overturn these unit recommendations repeatedly
without any legitimate reasons to do so, and completely without any policy autho-
rization to do so. The A.D. 04.11 in Section IV(E) states, "If the UCC votes to
remove the SPD during annual review, the process described in Section IV(C) 1-3
of this directive shall be followed." Section IV(C) 1-3 provides SPDRC no autho-
rization to be involved in this process, nor gives them any authority to overturn
UCC removal recommendations.

**52.** In March 2021, after receiving a cursory denial, Plaintiff Fowler was
told by Wynne unit assistant Warden, P. Coleman, that Director Bryant had told
him that "as long as he was the Director, his SPD would never come off." During
the same month, Plaintiff DeLeon was reviewed after completing ten years without
a SPD hearing. Warden Coleman approved DeLeon to have his old erroneous code re-
moved. Weeks went by without any changes, and plaintiff DeLeon spoke to Warden
Coleman in the hallway to inquire about his status. Warden Coleman told plain-
tiff DeLeon that he had contacted Director Bryant on his behalf personally, and
was told "not to be approving them, because as long as he was in Huntsville, he
wasn't removing any SPD codes." As a result of Defendant Bryant's arbitrary
denials and the lack of notice, DeLeon's Step 1 grievance was returned unpro-
cessed stating his grievable time period had expired. (ECF No. 51 at 4 and 51-1,
51-2)

**53.** SPDRC and UCC committees have abused their discretion and have acted
outside of their statutory authority. The A.D. 04.11 grants UCC/SPDRC defendants
no authority to indefinitely restrict plaintiffs to punitive confinement using
the guise of SPD codes. The SPDRC has violated plaintiffs due process rights on
every level. The SPDRC has provided plaintiffs no notice of their hearings, has
afforded plaintiffs no opportunity to be heard or present statements, and has
never provided any explanations or justification for their decisions to continue
plaintiffs' indefinite punishment, despite plaintiffs many requests for answers.

(12)

54.   Plaintiffs have repeatedly brought these concerns to each of the defendants via I-60 requests, personal letters, Ombudsman Inquiries, and grievances. Plaintiffs have relied upon verbatim TDCJ policy to request compliance in order to have erroneous and/or out-dated SPD codes removed pursuant to the A.D. 04.11 and be provided constitutionally adequate due process. Defendants have denied all plaintiffs' efforts and have failed to remedy the ongoing and continuous violations. In response to inquiry or grievance, defendants have failed to adequately justify their actions, providing only vague or ambiguous replies found nowhere in statute or policy.

55.   Defendants have provided plaintiffs no adequate post-deprivation remedy. Unit Grievance Investigators delay and/or fail to investigate or process plaintiffs' legitimate concerns. Defendants have a direct conflict of interest in regard to their other duties. Defendant Moore/Bowers is the final authority over all unit grievances and classification decisions. Defendant Bryant is the final authority over Step Two grievances and all Region One classification decisions. Both defendants are central voting members of the SPDRC and have the power and authority to effect the deprivations complained of here by plaintiffs. Defendants Moore and Bryant have the authority to deny both steps of the grievances plaintiffs file challenging the very deprivations they are responsible for. The Plaintiffs are left with no legitimate remedy to seek relief.

### "Atypical and Significant Hardships"

56.   Defendant's failure to provide due process protections and adhere to state law policy has caused plaintiffs irreparable and grievous harm. The indefinite application of SPD codes by defendants represents a dramatic departure from the plaintiff's sentence and goes far beyond the original scope of policymaker's intent. Defendants' actions and statements show clearly that they have little intention of ever removing plaintiffs' out-dated SPD codes, or ever ending their punishments, guaranteeing plaintiffs with ongoing and continuous injury.

**57.**  TDCJ is required by state law to provide work, treatment opportunities, encouragement, and training to those convicted and sentenced to prison. Their stated classification goals include providing offenders with opportunity for personal improvement, and incentive to make positive institutional adjustments. (See TDCJ Classification Plan, page #1).

**58.**  TDCJ is structured so that all offenders begin their sentences in minimum custody, or have a pathway to advance to minimum custody, in order to take full advantage of educational, rehabilitational, and job opportunities. Upon arrival to TDCJ, nearly every offender is classified as G1, G2, or G3. These are general population minimum custody classifications, and make up approximately 85% of TDCJ's total offender housing. These offenders are afforded full access to all educational, vocational, rehabilitational, and religious programming, and are provided extensive job training and apprenticeship program opportunities. These inmates have daily out-of-cell access of 18-19 hours for various activities.

**59.**  Plaintiffs, due entirely to their SPD codes, are restricted to punitive custody housing no lower than G-4 status, regardless of behavioral adjustments. While Plaintiffs Gambill, Fowler, Reyna, and Martinez served 14, 10, 5, and 2 years in ad-seg confinement respectively due to their SPD codes, Plaintiffs are currently housed on G4 or G5 status at Wynne Unit. Wynne unit has no administrative segregation housing. G-5 and G-4 status are its punitive custody housing. G-4 and G-5 housing represents a major change in the typical conditions of confinement compared to the ordinary incidents of prison life within TDCJ, and prior to the implementation of the SPD policy in 2003, was imposed only upon the finding that an inmate has been guilty of recent major misconduct.

**60.**  Conditions on G-4 custody are significantly more restrictive than those experienced by the typical TDCJ offender. Plaintiffs on G-4 status are locked in cells 22-24 hours per day, and for the last 2-3 years, have received less than 60 minutes of recreation per week on average. G-4 plaintiffs are restricted from

(14)

all jobs, educational, and vocational programs, and nearly all rehabilitational and religious programming. G-4 is essentially a mini-segregation within a maximum security unit reserved for major rule violators.

61.  On the John M. Wynne unit, there are approximately 2,650 inmates. About 85% of those inmates are housed on G1,G2, or G3 housing. Less than 1.8% of Wynne unit inmates are restricted to punitive housing due to SPD codes. Plaintiffs, who have served over 10 years of punitive confinement due to their SPD codes represent an extraordinary 0.26% of the Wynne unit population. No other individuals, or class of inmates has been subjected to perpetual punishment, or endlessly blocked from advancement within TDCJ like SPD plaintiffs have been by defendants.

62.  All other punitively confined inmates have been found guilty of major rule violations and afforded due processbefore their punitive placement. Plaintiffs were afforded no due process and in most instances, were never charged with any misconduct. Plaintiff Martinez, Holt, Fowler, and Gambill's SPD codes resulted from incidents that occurred outside of TDCJ custody.

63.  Prior to SPD policy, no TDCJ inmate who displayed good conduct would stay on either G-5 or G-4 custody status for longer than 12 months. All TDCJ offenders no matter their custody are given promotional and class review hearings every 6 months, including Ad-Seg inmates. Plaintiffs are forced by defendants to serve a conscience shocking 10 year minimum to receive a meaningful review hearing, which is 2,000% longer than every other TDCJ inmate. No other TDCJ inmates are subjected to similar indefinite terms of punitive confinement.

64.  TDCJ develops an Individualized Treatment Plan (ITP) for each offender upon arrival prioritizing program-based needs to comply with state law. Most of these programs are mandatory and offenders are required to participate to be considered for release on parole as defined by Texas Government Code § 508.152. Non-attendance can result in disciplinary action, loss of good-time, or negative parole consideration. (Page #10 of TDCJ Offender Orientation Handbook).

**(15)**

**65.**  The Texas Board of Pardons and Paroles relies heavily on a risk assessment matrix program that calculates "Total Risk Score". The higher an inmate's score, the more negatively it impacts an offender's chances for parole release. (Low Risk 0-5, Moderate 6-8, High 9-11, Highest 12+). The Parole Board's risk assessment tool penalizes inmates who have not completed educational or vocational programs, and factors an inmate's current custody level. The tool penalizes G4, G5, and Ad-Seg alike with the highest score possible. Plaintiffs, by being restricted to punitive custody and denied access to needed programs by the defendant's indefinite extension of SPD codes, receive four extra points, which moves their scores up two full risk levels, virtually guaranteeing negative votes.

**66.**  Defendants use of indefinite SPD punishment negatively impacts plaintiff's ability to complete essential ITP programs which seriously damages their prospects for parole release. All plaintiffs are parole eligible, but combined with defendants failure to provide timely/meaningful review hearings and lack of due process safeguards, plaintiffs have suffered lost and miscalculated good/work time credits and have had the nature of their sentences substantially transformed and/or extended resulting in irreparable harm.

**67.**  Innumerable officers and inmates routinely comment on the atypical nature of G4 conditions on Wynne unit, and regularly express amazement at the plaintiff's indefinite punitive confinement there. Defendant Moore himself, told plaintiffs Reyna, Gambill, and former plaintiff Joseph Martinez that he had, "Never saw men so well-behaved treated so poorly." (See ECF 48 at 42-44, & Attach. B & C here).

### VIII.    CRUEL and UNUSUAL PUNISHMENT

Due to Defendants blanket denial of due process protections and the indefinite application of punitive SPD codes, plaintiffs are forced to live on dangerous disciplinary housing wings among offenders known by defendants to have recently displayed serious assaultive behaviors, which vastly increases plaintiff's risk of harm. Plaintiffs have been physically assaulted and injured as a result of this.

(See ECF No. 47 at 7, 48 at 10, #49 at 6, #50 at 7, #51 at 7, #52 at 6).

69.   Plaintiffs are single and/or double-celled, 22-24 hours per day in cells measuring less than 55 square feet, with less than 1/3 of that walkable space, often with aggressive, disruptive, and/or chronically ill offenders, which places plaintiffs in a heightened state of anxiety and stress.

70.   G-4 on Wynne unit is recognized by staff and inmates to be the most violent, disruptive, and overall worst block on the unit. Defendants Moore, Bowers, Collier, and Bryant are aware of the increased number of violent and sexually deviant incidents that occur on G4 custody, and they recognize that lengthy placement on G4 housing places plaintiff's lives in increased danger of serious harm.

71.   In 2019, Plaintiff Gambill and former Plaintiff Joseph Martinez brought these concerns to defendant Moore on several occasions. Warden Moore acknowledged the elevated dangers SPD plaintiffs faced due to prolonged exposure to G4 con- ditions, and took preventative action in January 2000 addressing these concerns. Warden Moore ordered all SPD classificed inmates on G-4 separated and housed to- gether puruant to Texas Government Code § 501.112. This is commonly done on other units for those with SPD classifications. This provided a measure of relief and protection, but by year's end, new officers and classification staff had undone this, placing plaintiffs back into riskier mixed housing with disciplinary status inmates. All requests to correct this have been unanswered or denied.

72.   Defendants are aware of the heightened dangers plaintiffs face and have been deliberately indifferent to their safety and health concerns. Defendants know that lengthy placement on punitive confinement exposes plaintiffs to re- peated lock-downs, chemical agents, and other severe disciplinary measures. De- fendant Moore and Bowers has sanctioned numerous punitive lock-downs upon G-4 due to elevated levels of misconduct. Defendant Moore/Bowers has had to restore order themselves on multiple occassions with his officers due to fighting, staff

(17)

assaults, fires, and several riots. Plaintiffs are forced to manuever within this dangerous environment year after year indefinitely due to defendants deliberate indifference to their saftey needs.

73.  Plaintiffs are also continuously harmed by the stigma associated with their punitive housing status. Plaintiffs face heightened scrutiny by militarized staff that subjects them to confrontations, bogus write-ups, group punishments, targeted harassment, and routine cell and daily invasive strip and pat searches. Plaintiff Reyna was targeted and harassed for several years receiving bogus write ups and destructive cell searches. Plaintiff Reyna's attorney wrote defendants Collier and Moore to address this on multiple occassions. Shortly after, one of the officers who had been harassing Reyna, Sgt. Schmidt, beat a handcuffed inmate to death during a use of force, resulting in his dismissal.

74.  Severe understaffing and poor training of replacement recruits increase the serious risk of significant harm to plaintiffs by other inmates and staff. The staff shortages within TDCJ are at critical stages and are well documented. TDCJ reported over 8,300 security vacancies for the 24,016 budgeted full-time positions as of January 2021, which is more than a 30% shortfall. Plaintiffs on Wynne unit G4 are placed on multiple day lock-downs, denied recreation for weeks at a time, denied showers, clean clothing/bedding, and denied notice and opportunities to attend their review hearings due to critical shortages of staff. Many times G-4 plaintiffs have no officers on their block, no officers in the picket, and no officers to respond to any emergency situations due to shortages of staff.

75.  Deteriorating conditions led to a ten day hunger strike on G-4, where an investigation by the Office of the Inspector General's agents revealed that Wynne unit officers were targeting G-4 inmates with continuous lock-downs and "case-quotas", writing bogus infractions to keep G-4 inmates on cell restriction to lighten their officer work load. Plaintiffs were among those who received these bogus write-ups and endured repeated fraudulent lock-downs.

(18)

76.   Plaintiffs have been continually exposed to intolerable temperature extremes due to broken windows, missing and/or ill-fitting screens, poor ventilation, and frequent power outages caused by inmates, officers, and the ancient facilities. Due to the stigma surrounding G-4 punitive housing, and the disruptive nature of the inmates housed there, Defendants Collier, Bryant, Moore/Bowers have allowed maintenance men to avoid and/or ignore making repairs on G4. This has left G-4 on Wynne unit in a state of disrepair, which has significantly worsened plaintiffs' physical and pyschological suffering.Plaintiffs have endured temperatures as high as 119°F and have suffered nausea, vomiting, and weakness. Plaintiff's have suffered temperatures as low as -11.°F during the artic freeze, without power, water, or heat for a week. Defendant Moore provided extra blankets to the rest of the unit, but provided no additional blankets to G-4 inmates, nor plaintiffs, as a result of punitive stigma and defendants' deliberate indifference to plaintiffs serious health and safety needs.

77.   G-4 housing on Wynne unit is infested with roaches and ants. The ants are so bad they eat the glue off plaintiffs envelopes. Roaches cover the walls and crawl on plaintiffs in their sleep. G4 and G5 housing routinely fail ACA health & safety audits on Wynne due to the deplorable conditions. Wasps, bats, and raccoons come in and out of the broken windows into the plaintiffs cells and cell fronts, creating further hazards for plaintiffs.

78.   Plaintiffs suffer repeated and ongoing water outages, floods, broken pipes, clogged and/or overflowing toilets and sinks due to the century old prison conditions and the historical indifference shown by defendants to repair the facilities on G4. Plaintiffs routinely suffer full-cell flooding on G-4 housing exposing them to raw sewage and disease. At no time have they been provided any cleaning supplies to disinfect their housing afterwards. These conditions pose real and imminent risk of serious harm to plaintiffs' future health, and defendants are aware of these dangers.

(19)

**79.** Plaintiffs have been subjected to months-long disciplinary lock-downs as a result of disruptive inmate actions. Plaintiffs have been subjected to copious chemical agents deployed to put down fights and other serious incidents, which has damaged their lungs and wrecked their allergies. Plaintiffs are continually subjected to noxious smoke from rampant fires, and the prevalent fumes from drug abusers they are forced to cell with. This has further damaged Plaintiff's lungs, leading to pain when breathing, irritated eyes, common headaches, and worsening allegeries. Plaintiff Reyna has experienced black-outs and seizures as a result of the toxic fumes he is forced to endure by defendants. Plaintiffs are placed in a precarious situation. If they speak to the authorities about their drug-smoking cellmates, they are placed in imminent danger of physical harm for "snitching". If they remain silent, they suffer significant harm to their physical and psychological healths.

**80.** Defendants Collier, Bryant, and Moore denied plaintiffs medical care. In April, 2020, G-4 offenders were exposed to the covid virus by an officer. G-4 was locked-down on April 2nd. Officers were issued full PPE. Offenders were provided nothing, and instructed not to cover their faces or face disciplinary punishment. Officers were instructed not to speak to inmates about their exposure, and to deny that Covid was present among them. Within one week, nearly all G-4 inmates, including plaintiffs Holt, Reyna, Fowler, DeLeon, and Gambill were suffering from the virus. When told medical staff of their painful bone aches and fevers, they were told it was "allergies", knowing full well it was not. No sick call requests were answered, and plaintiffs were provided no medication to ease their fevers or painful headaches and bone aches. Plaintiffs suffered through their sickness in double cells giving it to, or receiving the virus from their cellmates for weeks.

**81.** On April 12, 2020, with most of all G-4 inmates suffering horribly from Covid, offenders began shouting for medical assistance. Shift Sgt. S. Shinette came to the G-4 entry door and told the men to, "Shut that noise up!" When sick inmates continued to request help, Sgt. Shinette ordered the G-4 block's power to

be cut off, yelling, "I don't care if all of you (expletives) over here die".
Plaintiffs were left in the dark for hours. Plaintiff Gambill wrote Warden Moore
to notify him of this abuse, but received no reply. Plaintiff Gambill wrote Texas
Inmate Families Association, who notified Texas State Representative James White
of the incident. Defendants Collier, Bryant, and Moore knew plantiffs were se-
verely ill and were deliberately indifferent to their medical needs. Over 30 in-
mates and staff died due to Covid from Wynne unit as a result of similar neglect,
further heightening the plaintiffs' expectation of future harm.

82.   Plaintiffs have been subjected to these conditions 20-40 times longer
than all other inmates. Plaintiff Gambill has served over 24 years of punitive
confinement, with over 20 years due solely to an out-dated SPD code. Plaintiff
Holt has served over 18 years, with Reyna, Fowler, and Martinez serving over 15
years of punitive confinement resepctively. Plaintiffs have received no explana-
tion as to what hidden criteria they must meet or when they will meet it. Plain-
tiff Gambill has endured two and a half decades of harsh punitive confinement
ranging from over 17 years of solitary confinement in Supermax and Ad-Seg housing.
Each Plaintiff has served over a dozen years of 20-24 hour lock down in single
or double cell housing due solely to out-dated SPD codes. Plaintiff Gambill and
former Plaintiff Pete Armenta had nearly 20 years without a major infraction.

83.   The totality of conditions combined with the indefinite punishment that
plaintiffs have been subjected to equate to cruel and unusual punishment and has
detrimentally effected plaintiffs' physical, mental, and emotional healths. Plain-
tiffs have been assaulted and injured by inmates and staff, have suffered pain
and trauma from severe illnesses, extreme temperatures, and toxic fumes. This has
resulted in seizures, black-outs, and migraine headaches for Reyna; severe allergic
reactions requiring emergency injections, psoriasis, intense allergies, respiratory
illness for Gambill; Bell's palsy, bald patches from intense stress, high blood
pressure, nervous ticks for Martinez. All plaintiffs have suffered lingering effects

from Covid sickness. Plaintiffs suffer lethargy, shortness of breath, joint pain, depression from the hopelessness of their indefinite punishments, muscle atrophy from the absence of recreation. Combined, these elements and illnesses have led to plaintiff's gradual physical and emotional deterioration. Plaintiffs have lost faith in TDCJ officials to provide them meaningful protection, fulfill their duties, or provide relief from current or future harm and/or injuries.

**IV.**              <u>DENIAL OF EQUAL PROTECTION</u>

**84.** Defendants have shown a pattern of discrimination and bias that disproportionately effects minorities, specifically Hispanic plaintiffs, by abusing the use of SPD codes to indefinitely punish those they decide arbitrarily and capriciously to single out or have animus towards. Minority Plaintiffs Reyna, DeLeon, P. Martinez, and former plaintiffs Pete Armenta and J. Martinez are Mexican-Americans. All current and former Mexican-American plaintiffs are serving non-aggravated sentences. Hispanics make up approximately 30-35% of the Wynne unit's total population, but make up approximately 70-75% of SPD inmates serving indefinite punitive confinements on Wynne unit. Mexican-American plaintiffs have been given SPD codes for incidents that white inmates have also committed without receiving SPD codes for. Mexican-American plaintiffs have also been disproportionately effected by erroneously placed SPD codes compared to white inmates. DeLeon and Martinez both have been unjustly punished for over a decade for such erroneously placed SPD codes. Mexican-American Plaintiffs, are also disproportionately denied and given indefinite SPD extensions, despite exceeding all necessary criteria for removals, by UCC/SPDRC defendants, who are all non-Hispanic. These same defendants have removed SPD codes from white inmates who have had far worse criminal records, more severe SPD incidents, and were serving far greater sentences. Troy Tuley, Jason Wimberly TDCJ# 1067293, Jason Gibson TDCJ# 1581323, and Randall Carter TDCJ# 1553084. These white inmates are serving aggravated sentences, upto capital Life, and have all had severe SPD codes removed upon completing the necessary criteria. Mexican-American plaintiffs are denied this.

85. Mexican-American plaintiff Mark Reyna, after having his UCC recommendation for SPD removal arbitrarily overturned, asked then-Warden McClarin, for the reason for SPDRC's actions, was told, "Because we've got enough of you Mexicans in general population to deal with already." Former Wynne unit SPD inmate, Gregorio Tarin, TDCJ #605976, at his UCC SPD review hearing, after 20 years of punitive confinement, requested an interpreter, due to the fact he spoke little English. Defendant Stevens denied his request stating, "You didn't need an interpreter when you assaulted that officer." In this same 2018 hearing, the UCC asked Tarin if he remembered the officer's name that he assaulted in the 20 year old incident. He couldn't understand the question, and Defendant Stevens and the other UCC members told him that he could go back to G4 another year until he could remember the officer's name." Plaintiff Reyna and former plaintiff Joseph Martinez helped Tarin file a grievance and further wrote several outside organizations, who contacted Texas State Representative, who along with others pressured Central Classification to remove Tarin's ancient SPD code as per policy. There is no rational justification for this discrimination.

86. Plaintiffs are similarly situated to all other G-4 offenders in TDCJ. Defendants afford all other G-4 inmates basic due process before assigning them to punitive housing, regardless of their criminal histories, length of sentences, or other categories. Defendants have denied plaintiffs this basic fundamental right of due process, and have targeted plaintiffs arbitrarily for disparate treatment without any policy or penologically-based justification. Defendants' actions concerning indefinite punishment of the plaintiffs under the guise of SPD extensions is irrational and wholly arbitrary, and defendants numerous statements that they will never remove them regardless of any policy limitations, shows their intent to deprive plaintiffs of their due process right and Eighth Amendment rights, and that they are motivated by personal animus and/or spite.

87. In 2003, TDCJ retroactively placed SPD codes upon plaintiffs without

(23)

notice or hearings. In March 2020, Defendant Collier implemented another class of
new SPD codes. Obviously aware that TDCJ's previous actions concerning SPD codes
had denied plaintiffs and others due process rights, Defendant Collier posted
notice on the front pages of the TDCJ prison newspaper, "The Echo", fully ex-
plaining the new SPD codes, and the criteria necessary for their placement. TDCJ
stated that the SPD codes would not be retroactively applied to anyone, and that
only after being charged, provided due process procedures, and subsequently found
guilty of the specific disciplinary infraction would a SPD code be placed upon
the inmate. Furthermore, none of these new SPD codes would indefinitely confine
an inmate to disciplinary housing status. Their behavioral adjustment would de-
termine this, and each of the new SPD coded inmates would receive six month re-
views for status promotions by Defendants Burson, Stevens, and Hastings. Plain-
tiffs have been denied every aspect of these new guidelines, which has resulted
in decades of arbitrary and malicious punishment. Plaintiff Gambill, would have
never received an SPD code had the original policy not been retroactively applied
to him. Plaintiffs Holt, DeLeon, and Martinez would not have received SPD codes
had they been provided a hearing and due process to protect them against erron-
eous SPD application and retentions.

88.  Defendants Burson, Moore/Bowers, Hastings, and Stevens provide all
other G-4 inmates timely and meaningful review hearings every 3 to 6 months.
G-4 inmates have fixed terms of 6-12 months, with defendants routinely promoting
these inmates in as little as 90 days with good behavior. Plaintiffs Gambill,
Holt, Fowler, Reyna, DeLeon, and Martinez have requested these same hearings
and have been denied by all named Defendants. Plaintiffs were forced to serve a
minimum of ten years, then were routinely denied arbitrarily despite displaying
exemplary long-term conduct, without any rational basis for the dissimilar treat-
ment.

89.  When defendants approve all other G-4 inmates, their UCC approvals
are signed off on as a matter of course, and they are relocated to better housing

within the same day. When plaintiffs are approved by UCC, they are left in limbo
for weeks/months, before learning their UCC approvals have been secretly and
arbitrarily overturned without notice of hearing dates, or explanation for
the action by SPDRC. Plaintiffs are the only inmates in TDCJ who are subjected to
these secret hearings, to include Ad-Seg offenders, who receive face-to-face SCC
hearings.

90.   Plaintiffs are indefinitely confined to punitive housing due to defen-
dants arbitrary extension of SPD codes, without which, all plaintiffs would be in
general population G3/G2 and afforded all programs that typical inmates have ac-
cess to due to plaintiff's exemplary long-term conduct records. The Classifica-
tion Plan directs defendants to present a pathway to progress for all offenders.
All similarly situated g-4 inmates can remove themselves from these harsh condi-
tions by complying with the rules. The plaintiffs have been denied this pathway
to progress by defendants indefinite application of punitive SPD codes and their
denial of plaintiffs' basic due process rights, without any legitimate penological
justification to do so.

91.   Plaintiffs' SPD codes are the only SPD codes that defendants are using
for indefinite punishment. All other SPD-classified inmates with codes such as
LWOP (Life without Parole), JLWOP (Jessica's Law Life without Parole), CB (Contra-
band), and SR (Security restraint) have special housing on G-3, which is a more
secure level of minimum custody general population for those inmates with special
security needs. They are afforded full access to jobs and unit programs. Unless
current behavior warrants, no other SPD, or non-SPD inmates are punitively con-
fined the way plaintiffs are. Defendants have no rational basis for punishing
plaintiffs indefinitely when all other SPD classified inmates, to include those
with the worst category of criminal offenses, and Life without parole sentences,
are not.

92.   Defendants have denied plaintiffs Gambill, Holt, and Fowler religious
beard approval due to their out-dated SPD codes, while granting every other SPD

and non-SPD classified inmates permission on Wynne unit. Defendants have no peno-
logical justification for treating plaintiffs discriminatorily.

93.   In other regions within TDCJ, offenders with similar and/or worse in-
cidents have had their SPD codes removed prior to, or at completion of ten years
in accordance with the A.D. 04.11. Troy Tuley, Jerry Bodiford, Jason Wimberly,
Jason Gibson, and many others. Plaintiff Gambill's co-party received the same
SPD code for the same 2002 event, and that co-party's SPD code was removed over
10 years ago. There is no penological justification for the dissimilar treatment.

94.   Defendants have been notified of these concerns for years and have
deliberately, and in certain cases maliciously refused to remedy the violations
of plaintiffs' due process, Eighth Amendment, and Equal Protection rights. Defen-
dants continue, and will continue, as evidenced by their own actions and state-
ments, to violate plaintiffs' rights and hold plaintiffs to a different standard
of their own construct in order to intentionally subject plaintiffs to further
harsh punitive treatment. This disparate treatment has no penological justifica-
tion and these prolonged actions continues to cause plaintiffs irreparable harm.

V.                    CAUSE OF ACTION

95.   The actions of defendants Collier, Bryant, Burson, Werner, Moore/Bowers,
Hastings, and Stevens in arbitrarily and impermissibly abusing their discretion
by acting deliberately to impose atypical and significant hardships upon plain-
tiffs not in accordance with law, regulation, or policy, and unsupported by any
legitimate justification has denied plaintiffs their vested liberty interest
right to be free from restraint and has denied plaintiffs due process of law in
violation of the Fifth and Fourteenth Amendments of the United States Constitution.

96.   The actions of defendants Collier, Bryant, Burson, Werner, Moore/Bowers,
Hastings, and Stevens to provide plaintiffs notice of SPD policy, notice of SPD
placements upon them, notice of UCC/SPDRC hearings, and Failure to provide timely
and meaningful reviews with impartial, non-biased hearing officers, along with
SPDRC defendants Bryant, Burson, Werner, and Moore/Bowers deliberate failure to

(26)

provide an opportunity to be heard, notice of SPDRC hearings, present statements, failure to apply mandated criteria in determining SPD removal, and their failure to provide any justification for their actions/decisions have deliberately and recklessly denied plaintiffs due process of the law in violation of the Fourteenth Amendment of the United States Constitution.

**97.** The actions of defendants Collier, Bryant, Burson, Werner, and Moore/ Bowers in arbitrarily and capriciously instituting an unjust de facto policy of wanton punishment under the guise of indefinite SPD extension against plaintiffs violates their due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

**98.** The actions of defendants Collier, Bryant, and Moore/Bowers in failing to act on their knowledge of substantial risk of serious physical and psychological harm to plaintiffs being indefinitely confined on violent, punitive custody housing status, watonly and unnecessarily inflicting pain and placing plaintiffs' lives in danger violates their right to be free from deliberate indifference to their safety and constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

**99.** The failure of defendants Collier, Bryant, Moore/Bowers to provide plaintiffs safe & sanitary housing, protection from temperature extremes, adequate medical treatment, recreation, and functioning facilities constitutes deliberate indifference to plaintiffs' basic life necessities and is cruel and unusual punishment in violation of the Eighth Amendment of the Unites States Constitution.

**100.** The willful failure of defendants Collier, Bryant, Burson, Werner, Moore/Bowers, Hastings, and Stevens to provide plaintiffs' equal treatment by disparately denying plaintiffs similar housing, timely and meaningful review, similar due process safeguards, promotional opportunities, access to needed ITP programs, wholly arbitrary UCC/SPDRC denials, and other spiteful dissimilar

and/or discriminatory treatment conducted by defendants toward Mexican plaintiffs due to their systemic prejudices against this suspect class of racial minoriiites; and defendants arbitrary denial of plaintiffs religious beard approvals has denied plaintiffs Equal Protection under the law in violation of the Fourteenth Amendment of the United States Constitution.

**101.** The plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiffs have been and will continue to be irreparably injured by the conduct of the defendants, and their peers, unless this Court grants the declaratory and injunctive relief which plaintiffs seek.

XI. **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully pray that the Court grants the following relief:

A. Issue a declaratory judgment stating that:

**1.** Defendants Collier, Bryant, Burson, Werner, Moore/Bowers, Hastings, and Stevens' actions in arbitrarily denying plaintiffs' liberty interest right to be free from restraint, and sustaining this infringement violates, and continues to violate plaintiffs' rights under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

**2.** Defendant Collier, Bryant, Burson, Werner, Moore/Bowers, Hastings, and Stevens' actions in failing to provide notice of hearings, notice of SPD placements, failure to provide timely, meaningful, and impartial hearings, failure to provide an opportunity to be heard, and failure to provide justification for denials, violates plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**3.** Defendants Collier, Bryant, Burson, Werner, and Moore/Bowers' actions in arbitrarily instituting, and sustaining a de facto policy of wanton punishment, outside of law, policy, or regulatory authorization, under the guise of indefinite SPD extensions violates plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment of the

United States Constitution.

4.    Defendants Collier, Bryant, and Moore/Bowers' actions in failing to act on their knowledge of substantial risk of serious physical and psychological abuse of plaintiffs violates, and continues to violate, plaintiffs' rights under the Eighth Amendment to the United States Constitution.

5.    Defendants Collier, Bryant, and Moore/Bowers' actions in failing to provide safe, sanitary, functioning housing conditions, in failing to provide protection from temperature extremes, and failing to provide adequate recreation and medical treatment violates, and continues to violate, plaintiffs' rights under the Eighth Amendment of the United States Constitution.

6.    Defendants Collier, Bryant, Burson, Werner, Moore/Bowers, Hastings, and Stevens' disparate actions in failing to provide plaintiffs similar treatment, housing, program opportunities, promotional reviews, religious beard approvals that they provide all other similarly situated individuals violates, and continues to violate plaintiffs' rights under the Equal Protections Clause of the Fourteenth Amendment of the United States Constitution.

7.    That TDCJ's SPD policy, as currently practiced on Wynne unit, and within Region One, arbitrarily and capriciously, to be constitutionally inadequate.

B.    Issue injunctive relief ordering defendants Collier, Bryant, Burson, Werner, and Moore/Bowers to:

    1.  Remove SPD codes from all plaintiffs who have:

        (a)  SPD codes arising from incidents that pre-date SPD policy implementation to coincide with Defendant Collier's 2020 mandate that SPD codes would not be retroactively applied.

        (b)  erroneous and/or retaliatory SPD codes placed upon them according to strict adherence to policy definitions.

        (c)  Completed 10 years from the date of incident.

        (d)  been approved by UCC for SPD removal previously.

2.    Remove non-disciplinary status plaintiffs from mixed classification housing assignments with punitive disciplinary status offenders. Provide plaintiffs a pathway to progress based on same conduct standards as all other TDCJ offenders.

3.    Provide plaintiffs meaningful, impartial periodic review hearings every 6-12 months. Remove constitutionally inadequate TDCJ provision forcing SPD plaintiffs to serve 10 years without any review hearings.

C.    Issue injunctive relief ordering defendants Collier, Bryant, and Moore/Bowers to:

1.    Provide religious beard approval to plaintiffs being so denied.

D.    Issue injunctive relief ordering defendants Collier, Bryant, Moore/Bowers to:

1.    Take preventative measures to curb inmate/staff violence on Wynne unit G-4 custody by fully staffing security positions with properly trained staff.

2.    Repair broken and/or ill-fitting windows, ventilation systems, pipes, toliets, sinks, drains and electrical systems on Wynne unit G4 housing.

3.    Provide plaintiffs adequate amounts of meaningful recreation.

4.    Provide plaintiffs adequate medical treatment and/or prevention.

E.    Plaintiffs' costs in this suit.

F.    Grant any additional relief this Court deems just, proper, and equitable.

Trial by jury on all issues triable by jury is hereby demanded on all claims alleged herein, and the parties are given notice, pursuant to Fed.R.Civ.P. 38(a)-(c).

Respectfully submitted this _2nd_ day of _September_, 2022.

_Curtis Gambill_
Curtis Gambill #805886

_Jesse Holt_
Jesse Holt #1362684

_M. Reyna_   1213971
Mark Anthony Reyna #1213971

Eddie Ray Fowler, Jr.#2231555

Prescilliano Martinez # 2323270

Juan Antonio DeLeon # 2060521

John M. Wynne Unit

810 F.M. 2821

Huntsville, Texas  77349

## CERTIFICATE OF SERVICE

I, Curtis A. Gambill, hereby certify that I have caused to be served to the below-named a true and correct copy of the foregoing document via the TDCJ prison mail service and the U.S. Postal Service. Placing this in the mail drop box on this September 2, 2022 with sufficient postage pre-paid.

Briana M. Webb, Asst. Attorney General
Office of Attorney General, Law Enforcement Div.
P.O. Box 12548, Capitol Station
Austin, Texas  78711

Dated this 2nd, day of September, 2022.

Curtis Gambill  #805886
810 F.M. 2821-Wynne Unit
Huntsville, Texas  77349



8)   This erroneously placed SPD code has negatively impacted my rehabili-
tation.

9)   The incident that TDCJ has used to classify me as "ES" occurred in Decem-
ber of 2020, while I was housed in a juvenile halfway house at the age of 17.

10)   According to verbatim TDCJ policy, ES is only for escapes from an adult
correctional facility, which makes it impossible for TDCJ to justifiably classify
me as ES.

11)   It is my understanding that these erroneous and malicious classifications
are fairly normal.

12)   On October 23, 2021, I wrote Wynne Unit Senior Warden Rocky Moore, and
Wynne unit Chief of Classification Ashley Hastings, explaining the facts of the
incident, and verbatim policy definitions, and requesting that the erroneously
placed ES code be removed or amended to a proper designation, signifying that it
was from a juvenile facility.

13)   Assistant Warden Patrick Coleman responded that "ES" would remain.

14)   No investigation was conducted, no calls were made to Brown County, Tx.
authorities inquiring about the facts of the incident.

15)   This erroneously placed SPD for ES has remained, continuing unjustified
punishment to this date.

Further you affiant sayeth not.

I, Marcus Raines, #2326452, have read the following and foregoing, and declare
under the penalty of perjury under the laws of the United States that the state-
ments contained herein are true and correct to the best of my belief and knowledge.

Dated this **11** day of November, 2021.

_Mercer_
(signature)
Marcus Raines     # 2338357

(2)



810 F.M. 2821- Wynne Unit

Huntsville, Tx. 77349

United States Courts
Southern District of Texas
FILED

SEP 15 2022

Nathan Ochsner, Clerk of Court

United States District Court

Southern District of Texas, Houston Division

Clerk of Court, Nathan Ochsner (Civil Accessn H-21-1076)

P.O. Box 61010

Houston, Tx. 77208-1010

Legal Mail / Privileged *