United States District Court
Southern District of Texas
**ENTERED**
March 31, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CURTIS ALLEN GAMBILL, JESSE WADE HOLT, MARK ANTHONY REYNA, EDDIE RAY FOWLER; PRESCILLIANO MARTINEZ, and JUAN ANTONIO DE LEON, <br><br>Plaintiffs, <br><br>v. <br><br>BRYAN COLLIER, STEPHEN BRYANT, TARA BURSON, JOHN WERNER, ASHLEY L. HASTINGS, VIRGINIA S. STEVENS, RODGER BOWERS, and ROCKY N. MOORE, <br><br>Defendants. | § § § § § § § § § § § § § § § § § § | Civil Action No. 4:21-CV-01076 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are inmates in the Texas Department of Criminal Justice ("TDCJ"). On March 30, 2021, they filed suit under 42 U.S.C. § 1983 against Defendants, TDCJ employees and officials, alleging that they have been placed in restrictive custody classifications without due process and in violation of their right to equal protection under the law. They seek injunctive and declaratory relief. Pending before the Court is Defendants' Motion to Dismiss, (Dkt. No. 59). For the following reasons, the Court **DENIES** the Motion.

I.   **BACKGROUND**[1]

In 2003, the TDCJ adopted a policy authorizing the use of Security Precaution Designators ("SPD Code"). (Dkt. No. 1 at 5, ¶ 25). The application of an SPD Code in an inmate's record subjects them to certain supervision, housing, and other restrictions. (Dkt. No. 48 at 19). The TDCJ policy requires an SPD Code to be placed in an inmate's record if that inmate has been sentenced to life without parole, has engaged in an escape, hostage taking, or staff assault resulting in serious injury, or has defeated a restraining device. (*Id.* at 22). The policy includes procedures for an initial review of the SPD Code assignment and an opportunity for annual review. (Dkt. No. 48 at 23); (Dkt. No. 1 at 7, ¶ 40).

Because of their SPD Codes, Plaintiffs are all classified as G-4 inmates. (Dkt. No. 1 at 11, ¶ 58). A G-4 classification entails much greater restriction than is experienced by the typical TDCJ inmate, as G-4 inmates are confined in their cells measuring less than 55 square feet for 22 to 23 hours a day and receive, on average, less than 60 minutes of recreation time per week. (*Id.* at 13, ¶ 60). Plaintiffs allege that their housing units have unlivable conditions, including intolerable temperatures, poor ventilation, water outages, clogged or overflowing toilets, exposure to raw sewage, and more. (*Id.* at 14–15, ¶¶ 74–75). Plaintiffs allege that they are denied access to medical care and are also severely limited in their access to jobs and rehabilitation, educational, vocational, and

---

[1] For purposes of addressing this Motion, the Court accepts all factual allegations in the Complaint as true and views them in the light most favorable to Kennard. *See White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021).

religious programming, which eliminates their prospects for parole release. (*Id.* at 11–15, ¶¶ 60–76). Plaintiffs further allege that they have been subjected to these conditions 20 to 40 times longer than other inmates. (*Id.* at 16, ¶ 78).

Plaintiffs allege that they were provided no advance notice of the policy and were never informed of their SPD Codes. (Dkt. No. 1 at 6, ¶ 31). They allege that they received no hearing and were not given an opportunity to be heard, present evidence, or dispute their SPD Code placement. (*Id.*). Each Plaintiff alleges that they requested a hearing for reconsideration of their SPD Code, but many served between 10 to 15 years of confinement before receiving their first SPD hearing. (*Id.* at 7, ¶ 39).

## II.     LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than labels and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The defendant, as the moving party, bears the burden of proving that no legally cognizable claim for relief exists. *Flores v. Morehead Dotts Rybak, Inc.*, No. 2:21-CV-00265, 2022 WL

4740076, at *2 (S.D. Tex. Sept. 29, 2022) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *White*, 996 F.3d at 306–07. The court must evaluate whether "a complaint contains sufficient factual matter to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

## III.   DISCUSSION

Plaintiffs allege that they were assigned SPD Codes in 2003 without due process, and that their continued SPD status is the result of disparate treatment because of their status as racial or ethnic minorities in violation of their right to equal protection under the law. (Dkt. No. 1 at 16–17). In their Motion to Dismiss, Defendants argue that Plaintiffs

have failed to state claims for Due Process or Equal Protection violations.[2] (Dkt. No. 59 at 6–18). The Court will address each in turn.

### A. DUE PROCESS

The procedural protections of the Due Process Clause are triggered only where there has been a deprivation of life, liberty, or property. *Wilkinson v. Austin,* 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). Here, because neither the Plaintiffs' lives nor property interests are at stake, the threshold question is "whether [they] had a liberty interest that the prison action implicated or infringed." *Richardson v. Joslin,* 501 F.3d 415, 418 (5th Cir. 2007) (internal quotation marks and citations omitted). If they did not, then there is no deprivation, and no process is due. If they did, then the Court must determine whether they have pleaded facts showing they were denied due process regarding the deprivation of that liberty interest.

#### 1. Plaintiffs' Liberty Interests

In *Sandin v. Conner,* the Supreme Court held that the focus of the liberty interest inquiry should be on "the nature of the deprivation[.]" 515 U.S. 472, 481, 115 S.Ct. 2293, 2299, 132 L.Ed.2d 418 (1995). Such interests for inmates will generally be "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. at 2300 (internal citations omitted).

---

[2] Defendants also argue that Plaintiffs are not entitled to the specific injunctive relief requested in their Complaint. (Dkt. No. 59 at 18–21). The relief, if any, that Plaintiffs obtain will be determined when, and if, they ultimately prevail on the merits of their claims. As such, Defendants' request to dismiss Plaintiffs claim for injunctive relief is premature.

In *Wilkinson*, the Supreme Court addressed a class action by inmates assigned to Ohio's highest security prison, known as a "Supermax" facility. *Wilkinson*, 545 U.S. at 213, 125 S.Ct. at 2388. The Supreme Court described the conditions at this facility as preventing almost all human contact, including conversation between cells among prisoners. *Id.* at 223–24, 125 S.Ct. at 2394. Prisoners were confined to their cells for 23 hours a day, and their one hour out of their cells was spent in an indoor exercise room. *Id.* at 210–11, 125 S.Ct. at 2387. Visitation was rare and always conducted through a glass partition. *Id.* at 214, 125 S.Ct. at 2389. The light in the cells was on 24 hours a day. *Id.* at 224, 125 S.Ct. at 2394. A prisoner's assignment to the facility was reviewed after 30 days, and then only annually, and the assignment could continue for the duration of the prisoner's sentence. *Id.* at 224, 125 S.Ct. at 2394–95. The Court found that, "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id.* at 224, 125 S.Ct. at 2395.

Plaintiffs allege conditions and hardships similar to those alleged in *Wilkinson*. Plaintiffs allege that they are confined to their 55 square foot cells for 22 to 23 hours per day and, for the year pre-dating the Complaint, received an average of less than 60 minutes of recreation time per week. (Dkt. No. 1 at 11–13, ¶¶ 60, 69). They allege that they are denied access to educational and rehabilitation programs, which makes them less likely to be granted parole. (*Id.*, ¶¶ 60–66). They further allege that a prisoner can remain under such conditions for years at a time. (*Id.* at 16, ¶ 78). Accepting these allegations as true for purposes of this Motion, *see White*, 996 F.3d at 306–07, Plaintiffs

6

identify atypical and significant hardships associated with their SPD Codes and allege facts giving rise to a liberty interest in avoiding such classification.

### 2. Plaintiffs' Right to Due Process

The Supreme Court identified several factors to consider in evaluating how much process is due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Wilkinson*, 545 U.S. at 224–25, 125 S. Ct. at 2395 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)). The Supreme Court in *Wilkinson* found that, while lawfully confined prisoners have a liberty interest in avoiding uniquely harsh conditions, "the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Id.* at 225, 125 S.Ct. at 2395 (citations omitted). The Supreme Court then noted that the Ohio policy at issue required advance notice to the prisoner and a fair opportunity for rebuttal. *Id.* at 225–26, 125 S.Ct. at 2396. The Supreme Court found the third factor, the State's interest in prison management, to be paramount. *Id.* at 227, 125 S.Ct. 2396–97.

Here, Plaintiffs allege that SPD Codes were imposed in some cases with no advance notice and no meaningful opportunity to oppose the designation. (Dkt. No. 1 at 6, ¶31). Defendants argue that TDCJ has procedures in place to guarantee due process, including notice and periodic review of SPD Code status, but Plaintiffs specifically allege

that some or all of them did not receive notice or an opportunity to be heard.  (*Id.* at 6–10, ¶¶ 31–54).  Under the Rule 12(b)(6) standard, Plaintiffs have pleaded facts stating a claim that they were denied due process.  As such, Defendant's motion to dismiss must be denied as to Plaintiffs' due process claim.

### B. EQUAL PROTECTION

Plaintiffs allege that they have been denied equal protection because they have been subjected to their SPD Codes based on their ethnicity, and that they have been treated differently than similarly situated prisoners.  (Dkt. No. 1 at 16–17, ¶¶ 80–82).  In order to prevail on their equal protection claim, Plaintiffs "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987)).

Here, Plaintiffs allege that Hispanics or Latinos have been given SPD Codes for infractions when White inmates have not for the very same infractions.  (Dkt. No. 1 at 16–17, ¶¶ 80–82).  While they cite no specific examples of similarly situated White inmates who were treated differently, they quote a TDCJ official as telling Plaintiff Reyna that he received an adverse decision on a request to have his SPD Code removed "[b]ecause we've got enough of you Mexicans in general population to deal with already."  *Id.* at 17, ¶ 81.

It may be that upon the presentation of evidence, Defendants will be able to show that race, ethnicity, or national origin were not factors in some or all of the Plaintiffs receiving SPD Codes.  But at this stage, Plaintiffs have pleaded facts giving rise to an

inference that race, ethnicity, or national origin played a role in Plaintiffs receiving and retaining SPD Codes. Ethnicity is a suspect classification under the Equal Protection Clause. *See, e.g.*, *Miller v. Johnson*, 515 U.S. 900, 904, 115 S.Ct. 2475, 2482, 132 L.Ed.2d 762 (1995). On a motion to dismiss, where all well-pleaded facts must be taken as true, Plaintiffs' allegations are enough to state an equal protection claim.

## IV.  CONCLUSION

Considering the foregoing analysis, the Court **DENIES** Defendants' Motion to Dismiss, (Dkt. No. 59).

It is SO ORDERED.

Signed on March 31, 2023.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**