IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CURTIS ALLEN GAMBILL, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Civil Action No. 4:21-cv-01076 |
| BRYAN COLLIER, et al., | § § | |
| Defendants. | § § | |

## DEFENDANTS MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1)

Defendants Bryan Collier, Stephen Bryant, Tara Burson, John Werner, Rodger Bowers,[1] Ashley Hastings, and Virginia Stevens file this motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure in response to Plaintiffs' Complaint [ECF No. 1] and more definite statements. ECF Nos. 47, 48, 49, 50, 51, 52, 53.

### I.    Statement of Alleged Facts

Plaintiffs Curtis Gambill, Jesse Holt, Mark Reyna, Eddie Fowler, Prescilliano Martinez, and Juan DeLeon are current and former inmates of the Texas Department of Criminal Justice (TDCJ) Wynne Unit. Plaintiffs, represented by counsel, sue several TDCJ officials in their official capacity seeking declaratory and injunctive relief under 42 U.S.C. § 1983. *See* ECF Nos. 1, 47, 48, 49, 50, 51, 52, 53. Plaintiffs allege generally that the Defendants have violated their due process rights by failing to afford them with a hearing before placing a "Security Precaution Designator" (SPD) code, causing

---

[1] Plaintiffs originally sued Rocky Moore, the former warden of the Wynne Unit. Defendants automatically substituted Rodger Bowers, the current warden of the Wynne Unit.

1

them to remain in restrictive housing at the Wynne Unit. *Id.* Plaintiffs also allege that they were not afforded equal protection because other inmates with SPD codes were treated differently. *Id.*

### a. SPD Placement, Review, and Removal

The SPD Codes were implemented in 2003 and are governed by Administrative Directive 04.11 (AD 04.11). ECF No. 1 at 5. The policy dictates that an SPD shall be placed in the record of an inmate sentenced to life without parole or found to have engaged in escape, taking a hostage, staff assault resulting in serious injury, or defeating restraint devices. ECF No. 48 at 22. The SPD placement can be recommended by a sociologist, an intake interviewer, the Unit Classification Committee (UCC), or central administration staff. *Id.* The warden or designee has the authority to place an SPD in an inmate's record, housing area, or on the inmate's cell door at any time he determines a security risk exists. *Id.* If the warden authorizes the SPD, then the SPD shall be reviewed at the next UCC hearing. *Id.* at 23.

Removal of the SPD by the Security Precaution Designator Review Committee (SPDRC)[2] may occur if it meets the criteria outlined in AD 04.11. *See* ECF No. 48 at 24–25. The UCC makes the initial recommendation for SPD removal, which is then forwarded to the SPDRC for review. *Id.* at 25. If it has been more than 10 years since the incident that caused the placement of the SPD (ES, HS, and SA only) and the inmate is no longer considered an immediate security risk, the SPD shall be removed unless extraordinary circumstances exist. *Id.* The AD 04.11 policy provides that an inmate can request a review of the SPD by the Unit Classification Committee (UCC) once every 12 months. *Id.* If an inmate disagrees with the results of the UCC hearing, he may seek relief through grievance procedures. *Id.* at 27.

---

[2] Committee comprised of the Regional Director, Warden, and the Chairman of Classification and Records. ECF No. 48 at 21.

### b. Plaintiffs' Factual Allegations

Plaintiffs allege that after they received the SPD code in 2003, they were placed in restrictive housing with no hearing or way to dispute the SPD placement on their classification file. ECF No. 1 at 6. Because of their SPD codes, Plaintiffs are all classified as "G-4" inmates. ECF No. 1 at 12. According to Plaintiffs, because the Wynne Unit does not have administrative segregation housing, G-4 and G-5 status are housed on its "punitive custody housing blocks." *Id.* Plaintiffs state that conditions in G-4 custody specifically at the Wynne Unit are "significantly more restrictive than those experienced by the typical TDCJ offender" because G-4 classified inmates are housed on the "punitive custody block." *Id.* Plaintiffs specifically complain that of the inmates on the Wynne Unit, less than 1.8% are "restricted to punitive housing due to SPD codes." *Id.*

Plaintiffs allege generally that being G-4 custody causes them to be exposed to an increased number of violent assaults, repeated lock-downs, and chemical agents at the Wynne Unit. ECF No. 1 at 15. They complain globally about the conditions of confinement in restrictive housing at the Wynne Unit, stating that G-4 inmates at one point were not allowed to wear their state-issued jackets beyond their housing areas, they receive inadequate medical treatment, and they were prevented from getting a religious beard approval. ECF No. 1 at 16, 17, 20.

### c. Causes of Action

Plaintiffs sue Bryan Collier, the Executive Director of TDCJ, Stephen Bryant, the Regional Director of Region I, Tara Burson, the Chairperson of Central Classification and Records, Rodger Bowers, the Senior Warden of the Wynne Unit, Ashley Hastings, the Chief of Unit Classification, and Virginia Stevens, the Classification Manager at the Wynne Unit. ECF No. 1 at 3–4. According to Plaintiffs, Defendants Hastings and Stevens serve on the UCC, and the SPDRC is made up of Defendants Bryant, Burson, Werner, and Bowers. *Id.* This motion presumes Defendants are sued

solely in their official capacities because Defendants are sued for injunctive and declaratory relief for their actions in their official governmental roles.[3]

Plaintiffs claim that Defendants Collier, Bryant, Burson, Werner, Bowers, Hastings, and Stevens denied them due process for failing to provide Plaintiffs notice of the SPD policy and its placement on them, notice of the hearings, and meaningful reviews with the opportunity to be heard. ECF No. 1 at 20. Plaintiffs claim that Collier, Bryant, Burson, Werner, and Bowers instituted an unconstitutional policy because it results in a violation of their due process rights. *Id.* at 21. Plaintiffs bring a deliberate indifference claim against Collier, Bryant, and Bowers for their long-term placement in restrictive housing and the cruel and unusual conditions of their confinement. *Id.* Finally, Plaintiffs bring an equal protection claim against Collier, Bryant, Burson, Werner, Bowers, Hastings, and Stevens because the SPD codes disproportionally effect minority inmates and because other G-4 inmates receive meaningful review hearings every 3 to 6 months. *Id.* at 17–19.

**d. Requested Relief**

Plaintiffs are only seeking declaratory and injunctive relief. ECF No. 1 at 1. Plaintiffs seek a declaratory judgment stating that Defendants violated their due process, equal protection, and Eighth Amendment rights and that the SPD policy is unconstitutional. ECF No. 1 at 22–23. Plaintiffs seek injunctive relief against Collier, Bryant, Burson, Werner, and Bowers to remove SPD codes, change their housing classification, change the SPD policy, provide Plaintiffs with immediate review hearings, and disband the SPDRC Committee. *Id.* at 23. Plaintiffs also seek injunctive relief against Collier, Bryant, and Bowers to provide religious beard approval; against all Defendants to immediately review and return any lost good time credits; and against Collier, Bryant, and Bowers to take preventative

---

[3] The doctrine of *Ex parte Young* is an exception to the general prohibition of the Eleventh Amendment, which allows suits for prospective injunctive or declaratory relief against state officials in their official capacity. *See Verizon Md. Inc. v. PSC,* 535 U.S. 635, 645 (2002) (holding that the *Ex parte Young* exception applied to the Eleventh Amendment bar for claims for injunctive relief against defendants in their official capacities); *Ex parte Young,* 209 U.S. 123 (1908).

measures to curb violence in their housing area, repair broken windows and other broken items in the housing areas at the Wynne Unit, provide access to recreation and adequate medical care at Wynne Unit, and rescind ban on wearing state issued jackets for G-4 inmates at the Wynne Unit. *Id.* at 23–24.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal of a complaint for lack of subject matter jurisdiction. If a court lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3). In determining whether subject matter jurisdiction exists, a court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In determining whether jurisdiction exists, the district court is not limited to allegations in the complaint. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). Rather, the district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* The attachment of evidence to a motion challenging jurisdiction does not warrant converting that motion into one for summary judgment—in fact, courts are barred from doing so. *See Green v. Forney Eng'g Co.*, 589 F.2d 243, 246 (5th Cir. 1979) ("[M]otions to dismiss for lack of subject matter jurisdiction

cannot be converted into a motion for summary judgments."). Where evidence is introduced to challenge the jurisdictional facts, the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

### III.  Arguments and Authority

**A.  Plaintiffs lack standing because their requests for injunctive relief are moot.**

The judicial power of federal courts is limited to only those "Cases" and "Controversies" referred to in Article III of the United States Constitution, and "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see Armstrong v. Turner Industries, Inc.*, 141 F.3d 554, 562 (5th Cir. 1998). The party invoking federal jurisdiction bears the burden of establishing three constitutionally mandated elements: (1) the plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical[;]'" (2) there must be a causal connection between the injury and the conduct complained of — the injury has to be "fairly…trace(able) to the challenged action of the defendant, and not…th(e) result (of) the independent action of some third party not before the court[;]" and (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.*, 504 U.S. at 560–61. It is also clear that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects." *Id.* at 564 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) and *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

Mootness is a threshold jurisdictional inquiry. *La. Envtl. Action Network v. U.S. Envtl. Prot. Agency*, 382 F.3d 575, 580 (5th Cir. 2005). "In general, a claim becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *La. Env't*, 382 F.3d at 581 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). "The mootness

doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). "An action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome." *Id.* at 867. Therefore, "[m]ootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013). Even if Defendants fail to raise the issue of mootness, the Court can nonetheless address it sua sponte. *See Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) ("a federal court is obligated to raise the mootness issue, sua sponte, if the facts suggest mootness notwithstanding the silence of the parties with respect to the issue"); *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990) ("a mootness issue quite clearly can be raised sua sponte if not addressed by the parties"). In this case, multiple claims are now moot due to the discharge of the Plaintiffs, the removal of the Plaintiffs' SPD codes, and the change in the Plaintiffs' housing.

1. **Plaintiff DeLeon has discharged his sentence.**

Plaintiff DeLeon discharged his sentence on November 14, 2022, almost two years ago. Ex. A. As such, Plaintiff DeLeon is no longer in the custody of the TDCJ and all the relief he seeks is moot. *Granville v. Thaler*, No. H-07-0849, 2012 U.S. Dist. LEXIS 123596, at *5 (S.D. Tex. 2012) ("Because plaintiff is no longer in custody, and nothing in the record raises an issue of continuing harm or a real and immediate threat of repeated injury, his requests for injunctive relief regarding prison policies and practices have become moot.") (citing *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988)). Plaintiff DeLeon's claims should be dismissed in their entirety.

2. **Plaintiffs Holt, Martinez, and Reyna have had their SPD codes removed.**

Since the inception of this lawsuit, Plaintiffs Holt, Martinez, and Reyna have had their SPD code removed. Holt's SPD code was removed on February 5, 2024, Martinez's SPD code was removed

7

on June 15, 2023, and Reyna's SPD code was removed on March 27, 2024. Ex. A. All the relief sought by these Plaintiffs is premised on their SPD codes. Because they no longer have SPD codes and are seeking no other relief, the claims of Plaintiffs Holt, Reyna, and Martinez should be dismissed in their entirety.

### 3. Plaintiffs' equal protection claims are moot.

Plaintiffs generally alleged that they were treated differently in that Hispanics or Latinos have been given SPD codes for infractions when White inmates have not for the very same infractions. ECF No. 1 at 16–17. Defendants originally moved for dismissal of this claim, which was denied by the Court based on an alleged racial comment about "Mexicans" made to Reyna by a TDCJ official. *See* ECF No. 70 at 8–9. As Reyna, Martinez, and DeLeon's claims should be dismissed as moot for the reasons stated above, so should the equal protection claims of all Plaintiffs as the only remaining Plaintiffs are not claiming equal protection violations based on their race, color, or national origin, and thus do not state a suspect classification under the Equal Protection Clause. "Disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997); *See* ECF No. 59 at 14–18 (Defendants' original motion to dismiss the equal protection claim with authorities). As such, Plaintiff Reyna, Martinez, and DeLeon's equal protection claims should be dismissed as moot and any remaining equal protection claims should also be dismissed.

### 4. Plaintiffs Gambill and Fowler are no longer housed at the Wynne Unit.

Much of the injunctive relief sought by Plaintiffs Gambill and Fowler is premised upon their housing at the Wynne Unit. Plaintiffs' allegations are specific to the Wynne Unit's housing scheme; according to Plaintiffs, because the Wynne Unit does not have an administrative segregation housing block, inmates with SPD codes must be housed in "punitive housing." ECF No. 1 at 12. Plaintiffs complain generally about the conditions of confinement in the "punitive custody" on the Wynne Unit

8

G-4 housing block [ECF No. 1 at 14–17, ¶¶ 68–79], and seek relief specific to the conditions at the Wynne Unit:

```
    E.      Issue injunctive relief ordering defendants Collier, Bryant, and
Moore to:
        1.   Take preventative measures to curb inmate and/or staff violence.
        2.   Repair broken and/or ill-fitting windows, ventilation systems,
and repair pipes, toliets, sinks, drains, and electrical systems.
        3.   Provide access to adequate amounts of meaningful recreation.
        4.   Provide adequate medical treatment and/or prevention.
        5.   Rescind ban on wearing state-issued jackets.
```

Additionally, Plaintiffs Gambill and Fowler make several other unit-specific allegations regarding the Wynne Unit Classification Committee ("UCC"), including the alleged due process violations of the UCC in the form of delayed hearings, delayed notice or no notice of hearings or results, and allegations of "no opportunity to be heard" at the UCC hearings. ECF No. 1, 48, 50.

Plaintiffs Gambill and Fowler are no longer housed at the Wynne Unit. Plaintiff Fowler has not been housed on the Wynne Unit since October 18, 2023. Ex. A. Similarly, Plaintiff Gambill was moved off the Wynne Unit on October 12, 2023. *Id.*

The Fifth Circuit has held that an inmate's transfer to another unit renders his claims for declaratory and injunctive relief moot, unless he can show a reasonable likelihood that he will be transferred back to the facility and again subjected to the allegedly unconstitutional actions. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *see also Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *Cooper v. Sheriff, Lubbock County, Texas*, 929 F.2d 1078, 1084 (5th Cir. 1991). Because Plaintiffs Gambill and Fowler are no longer housed at the Wynne Unit, their claims for relief rising out of their conditions of confinement on the Wynne Unit and their specific due process claims against the Wynne Unit UCC should be dismissed as moot.

### 5. Bowers, Hastings, and Stevens should be dismissed as they do not have the authority to redress Plaintiffs' claims.

A plaintiff does not have standing to pursue injunctive relief when the named defendants do not have the authority to provide the relief sought. *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013). In this case, Plaintiffs sued Rodger Bowers, the Senior Warden of the Wynne Unit, Ashley Hastings, the Chief of Wynne Unit Classification, and Virginia Stevens, the Classification Manager at the Wynne Unit. ECF No. 1 at 3–4. Because there are no Plaintiffs with SPD codes still housed at the Wynne Unit, these Defendants who are specific to the Wynne Unit should be dismissed as they do not have the authority to redress Plaintiffs' remaining claims for relief regarding the removal of their SPD codes, changes to the TDCJ SPD policy, approval of beards, and the disbanding of the SPDRC. *See Okpalobi v. Foster*, 244 F.3d 405, 426–27, 431 (5th Cir. 2001) (concluding that the plaintiffs failed to demonstrate standing to obtain injunctive or declaratory relief because the defendants lacked authority and had "no power to redress the asserted injuries."); see also *Roussel v. Walker*, No. 5:20cv110, 2021 U.S. Dist. LEXIS 44508, at *4 (E.D. Tex. 2021) (finding that plaintiff's claims for injunctive relief against the members of the unit classification committee at the Telford Unit were rendered moot by his transfer off of the Telford Unit and subsequent assignment to the Ellis Unit). As such, Defendants Bowers, Hastings, and Stevens should be dismissed as Plaintiffs lack standing to sue them.

## IV. Conclusion

Plaintiffs DeLeon, Holt, Reyna, and Martinez's claims should be dismissed in their entirety as moot. Plaintiffs Gambill and Fowler's Wynne Unit specific claims of conditions of confinement and violations of due process regarding the Wynne Unit UCC should be dismissed as moot. All equal protection claims should be dismissed as moot or otherwise invalid. Lastly, Defendants Bowers, Hastings, and Stevens should be dismissed as Plaintiffs lack standing to sue them.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

/s/ *Briana M. Webb*
**BRIANA M. WEBB**
Assistant Attorney General
Texas State Bar No. 24077883
Briana.Webb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / Fax No. (512) 370-9814

**Attorneys for Defendants**

# CERTIFICATE OF SERVICE

I, **BRIANA M. WEBB**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above has been served via electronic mail to all counsel of record on April 23, 2024.

/s/ Briana M. Webb
**BRIANA M. WEBB**
Assistant Attorney General