**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CURTIS ALLEN GAMBILL, JESSE WADE HOLT, MARK ANTHONY REYNA, EDDIE RAY FOWLER, PRESCILLIANO MARTINEZ, JUAN ANTONIO DELEON, RAYMOND WINGFIELD, BRITNEY GULLEY, JERROD SPENCER, and RICKY SMITH, on behalf of themselves and all others similarly situated, | § § § § § § § § § § § | Civil Case No. 4:21-CV-01076 |
| Plaintiffs, | § § | **CLASS ACTION** |
| VS. | § § | |
| BRYAN COLLIER, *et al.,* | § § | |
| Defendants. | § § § § § | |

---

**PLAINTIFFS' FIRST AMENDED MOTION TO CERTIFY A CLASS AND APPOINT CLASS COUNSEL**

---

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... 2

TABLE OF AUTHORITIES ................................................................................................... 3

I.  INTRODUCTION ............................................................................................................ 5

II.  BACKGROUND .............................................................................................................. 6

    A.    Defendants' SPD Policy Inflicts Atypical and Significant Hardships Without
Constitutionally Adequate Process. ........................................................................ 6

    1.    TDCJ assigns SPDs without meaningful process. .................................. 6

    2.    G4 or higher custody inflicts atypical and significant hardships on Plaintiffs and
the putative class. ................................................................................... 9

    B.    Procedural Background............................................................................................ 11

III.  SUMMARY OF THE ARGUMENT ................................................................................. 12

IV.  ARGUMENT .................................................................................................................... 13

    A.    The Proposed Class Satisfies Rule 23(a)'s Four Requirements............................. 13

    1.    The Proposed Class Is Sufficiently Numerous to Render Joinder Impracticable. 13

    2.    The Proposed Class's Claims Raise Common Issues of Fact and Law................ 15

    3.    The Named Plaintiffs' Claims Are Typical of the Proposed Class. ..................... 16

    4.    The Named Plaintiffs and Their Counsel Are Adequate Representatives............ 17

    B.    Certification for Prospective Relief Under Rule 23(b)(2) Is Appropriate. ........... 20

V.  CONCLUSION ................................................................................................................. 21

CERTIFICATE OF CONFERENCE........................................................................................ 23

CERTIFICATE OF SERVICE ................................................................................................. 23

CERTIFICATE OF WORD COUNT........................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998)....................................................21

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).............................................................19, 20

*Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727 (5th Cir. 2023) ............................................16

*Berger v. Compaq Comput. Corp.*, 257 F.3d 475 (5th Cir. 2001) .................................................19

*Bradley v. Harrelson*, 151 F.R.D. 422 (M.D. Ala. 1993) .............................................................14

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185 (5th Cir. 2010).........21

*Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005) .....................................................19

*Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478 (1978)...............................................13

*Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470 (5th Cir. 1982).......................................19

*James v. City of Dallas, Tex.*, 254 F.3d 551 (5th Cir. 2001) ........................................................16

*Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975)..................................................................13, 14

*M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012) ..................................................16

*M.D. v. Perry*, 294 F.R.D. 7 (S.D. Tex. 2013)..............................................................................15

*Miller v. Mackey Int'l., Inc.*, 452 F.2d 424 (5th Cir. 1971) .........................................................13

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ..................................14, 16

*Pederson v. La. State Univ.*, 213 F.3d 858 (5th Cir. 2000)...........................................................14

*Perez-Benites v. Candy Brand*, 267 F.R.D. 242 (W.D. Ark. 2010)...............................................15

*Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408 (5th Cir. 2017)................................................17

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...........................................................15, 20

*Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030 (5th Cir. 1981) ...........................13, 14

**Other Authorities**

*Newberg on Class Actions* § 3:1 (3d ed.) .......................................................................... 14

*Newberg on Class Actions* § 3:12 (6th ed.) ...................................................................... 14

Peter Scharff Smith, *The Effects of Solitary Confinement on Prison Inmates: A Brief History and Review of the Literature*, 34 Crime & Just. 441, 476 (2006) .................................... 11

**Rules**

Fed. R. Civ. P. 23(a) .............................................................................................. passim

Fed. R. Civ. P. 23(b)(2) ................................................................................. 12, 13, 20

Fed. R. Civ. P. 23(g) ........................................................................................... 18, 20

Fed. R. Civ. P. 25 ........................................................................................................ 5

Plaintiffs Curtis Gambill, Jesse Wade Holt, Mark Anthony Reyna, Eddie Ray Fowler Jr., Prescilliano Martinez, Juan Antonio DeLeon, Raymond Wingfield, Britney Gulley, Jerrod Spencer, and Ricky Smith (collectively "Named Plaintiffs" or "Plaintiffs") respectfully request the Court certify the proposed class under Federal Rule of Civil Procedure 23(b)(2) and appoint their counsel as class counsel under Rule 23(g). Plaintiffs request the Court certify the following class:

**Proposed Class:** All individuals incarcerated by the Texas Department of Criminal Justice with Security Precaution Designators ES, HS, or SA for whom 10 or more years have passed since the incident for which the code was placed.

## I.    INTRODUCTION

This is a putative constitutional civil rights class action under 42 U.S.C. § 1983. In relevant part, Plaintiffs, including those newly added, allege that Texas Department of Criminal Justice ("TDCJ") officials involved in classification decisions confine them and nearly 500 others in inhumane conditions on the basis of Security Precaution Designators ("SPDs" or "codes") without due process of law. Dkt. 106-1 ¶¶ 164–75.[1] Although these SPDs alter virtually every aspect of Plaintiffs' lives in TDCJ, Defendants afforded Plaintiffs neither notice nor hearings prior to placing SPDs and did not allow them to contest the codes for 10 years. And even though TDCJ's policy provides a presumption that SPDs are removed 10 years after the incident that caused the placement of a code, the only process Defendants provide after a decade of restrictive housing are rare and perfunctory "reviews" with pre-determined results.

---

[1] Through their contemporaneously filed First Amended Complaint, Plaintiffs sued Defendants Bryan Collier, Daniel Dickerson, Carol Monroe, Maricia Jackson, Elbert Holmes, Lonnie Townsend, Jerry Sanchez, Bobby Lumpkin, Timothy Fitzpatrick, Melissa Bennett, and Eric Guerrero (collectively "Defendants"). Dkt. 106-1 ¶¶ 21–34; Fed. R. Civ. P. 25(d). Plaintiffs also voluntarily dismissed some Defendants who were only relevant to claims Plaintiffs dismissed without prejudice. Dkt. 106 at 5.

Now, with the assistance of appointed counsel, Named Plaintiffs renew their request for the Court to certify a class of similarly situated individuals. *Cf.* Dkt. 32 at 4. Named Plaintiffs satisfy every Rule 23(a) requirement, and certification is proper for prospective declaratory and injunctive relief under Rule 23(b)(2). Named Plaintiffs respectfully request the Court grant this Motion, certify the proposed class, and appoint the undersigned as class counsel.

## II.    BACKGROUND

### A.  Defendants' SPD Policy Inflicts Atypical and Significant Hardships Without Constitutionally Adequate Process.

In 2003, TDCJ instituted a new administrative directive authorizing the use of SPDs. The procedures, definitions, and criteria for placement and removal of SPDs are governed solely by TDCJ's Administrative Directive 04.11 ("AD 04.11" or the "Policy"). Ex. 1 (AD 04.11). Under the Policy, the Escape Precaution Designator ("ES"), Hostage Precaution Designator ("HS"), and Staff Assault Precaution Designator ("SA") codes consign people to a decade of highly restrictive confinement. Defendants impose ES, HS, and SA codes without notice or any process to contest or remove them. As a result, hundreds of people with these SPDs endure dangerous and inhumane conditions indefinitely.

### 1.  TDCJ assigns SPDs without meaningful process.

An SPD is a "code documented in an offender's record that identifies the offender as a special management risk." Ex. 1 at 3.  This lawsuit only challenges three types of codes: ES, HS, and SA. ES denotes "a history of escape from secure adult correctional facilities." *Id.* at 2. HS refers to "a history of taking any individual hostage." *Id.* SA refers to "a history of serious staff assault." *Id.* at 3. The minimum custody level for someone with these codes is G4. *Id.* at 2, 4. As explained below, *infra* section II.A.ii., G4 is a form of punitive housing imposing significant hardships and severely restricting one's activities in TDCJ.

Crucially, TDCJ presumptively removes ES, HS, and SA codes 10 years after the incident for which the code was placed unless the individual poses an immediate security risk or "extraordinary circumstances exist." *Id.* at 8. TDCJ provides minimal guidance for what constitutes extraordinary circumstances, explaining the term vaguely as "any significant justification . . . for example, a staff assault resulted in death, the offender was involved in multiple escapes, or the offender injured hostages." *Id.* at 2.

One would expect that "extraordinary circumstances" are uncommon. In practice, however, it is common for people to remain stuck with SPDs for well over a decade under the guise of "extraordinary circumstances." As of March 2024, **1484** individuals have ES, SA, or HS SPDs, or some combination thereof. Ex. 2 (Decl. of Randall Hiroshige) ¶ 4. Of those 1484 people, at least **486** have retained those codes for more than 10 years. Ex. 3 (Decl. of Brittany Robertson) ¶ 4. With nearly one third of individuals having 10-plus-year-old codes, the circumstances by which TDCJ retains these codes are far from "extraordinary."

On its face, TDCJ's policy gives cover for Defendants to subject putative class members to indefinite retention of SPDs, providing no meaningful procedural protections despite the gross deprivation of liberty it inflicts. When TDCJ places an SPD on someone, they receive no notice or opportunity to contest the allegations. *See, e.g.*, Ex. 12 (Decl. of Britney Gulley) ¶ 2; Ex. 11 (Decl. of Raymond Wingfield) ¶ 4. Plaintiffs were not notified of being assigned SPDs, and many did not learn of their codes for years. Dkt. 48 at ¶ 11; Dkt. 51 at ¶ 12. This is particularly problematic because TDCJ often assigns codes for incidents that do not meet its own definitions. For instance, Plaintiff DeLeon received an SA code when he was punched by a drunk TDCJ officer who was subsequently fired. Dkt. 51 at ¶ 9. DeLeon's disciplinary charges for staff assault were dropped.

Dkt. 51 at ¶ 10–11. However, the SA code (and its attendant consequences) remained on his record for more than 10 years.

After a code's placement, there is no opportunity to be heard, present evidence, or seek removal before the 10-year mark. *See, e.g.*, Ex. 11 (Wingfield Decl.) ¶ 10; Ex. 12 (Gulley Decl.) ¶ 11. While the Policy contemplates earlier removal in some cases, these exceptions have proven unavailable in practice. *See* Dkt. 47 at ¶ 10–11.

At what should be the code's expiration—10 years after the incident resulting in the SPD—the process is equally lacking. Plaintiffs have had to repeatedly advocate just to receive review hearings before a Unit Classification Committee ("UCC"), filing grievances and even relying on their families to petition TDCJ for review. Ex. 11 (Wingfield Decl.) ¶ 17; Ex. 10 (Decl. of Ricky Smith) ¶ 7; Ex. 13 (Decl. of Jerrod Spencer) ¶ 10. Still, Plaintiffs often did not receive hearings or Defendants denied them in absentia. Dkt. 48 at ¶¶ 37, 43; Ex. 10 (Smith Decl.) ¶ 7; Ex. 11 (Wingfield Decl.) ¶ 15; *see, e.g.*, Ex. 9 (Reyna UCC Exclusion).

When a review actually occurs, the UCC frequently recommends retaining a code without explaining how the underlying incident constitutes "extraordinary circumstances." Ex. 8 (Holt & Reyna UCC) at 2–18. Even when the UCC decides to remove an SPD, UCC decisions are routinely overturned by the Security Precaution Designator Review Committee ("SPDRC") without notice. *Id.* at 11 (Reyna), 14 (Holt); Ex. 20 (Emails re Reyna) at 1–3; Ex. 15 (Decl. of Curtis Gambill) ¶ 2; Dkt. 52 at ¶ 23. The SPDRC consists of the regional director, warden, and chairperson of Classification and Records. Ex. 1 at 3. The SPDRC overrules UCC decisions without more than the most cursory of justifications, even though their authority to do so under TDCJ's policy is questionable. *Compare* Ex. 20 at 1–3 *with* Ex. 1 § IV.C.1; Ex. 15 (Gambill Decl.) ¶ 2.

For example, when Plaintiff DeLeon inquired about why his code remained after the UCC recommended removal, Warden Coleman told him that Former Regional Director Bryant reversed the UCC, stating "as long as he was in Huntsville, he wasn't removing any SPD codes." Dkt. 51 at ¶ 23. Similarly, when Plaintiff Reyna asked Warden Strong about the 10-year policy, Warden Strong responded, "I am the policy." Dkt. 47 at ¶ 18.

Now, after the filing of this lawsuit, three of the eleven Plaintiffs have had their SPDs removed, seemingly on a whim. Plaintiffs Holt, Reyna, and Martinez had their codes removed only after filing this lawsuit and, in some cases, only after this Court denied Defendants' Motion to Dismiss. *See* Ex. 16 (Decl. of Jesse Holt) ¶¶ 2–4; Ex. 18 (Decl. of Prescilliano Martinez) ¶¶ 2–3. Plaintiff DeLeon was released from TDCJ custody, but his code remains on his file. Ex. 19 (Dec. of Juan Antonio DeLeon) ¶ 2. Because of the arbitrariness of the policy, Reyna and Holt worry their codes could be reinstated at any time and for any reason. *See* Ex. 1 (AD 04.11) § I (authorizing designation without notice). DeLeon's SPD seemingly remains on his file, and he will return to restrictive housing if he were ever sent back to TDCJ. Ex. 19 (DeLeon Decl.) ¶ 2.

## 2. G4 or higher custody inflicts atypical and significant hardships on Plaintiffs and the putative class.

Because of their codes, Plaintiffs have been incarcerated in severely restrictive, dangerous, and unsanitary conditions of G4 or higher-level custody for years on end. The conditions in G4 are extremely severe compared to those experienced by the vast majority of individuals who live in G1, G2, and G3 housing. *See* Ex. 4 (TDCJ Statistical Report 2022) at 10 (TDCJ confined 89,655 individuals in G1–G3 in 2022, while holding only 7,759 in G4). In G4, Plaintiffs have been restricted to 55-square-foot cells for more than 20 hours per day or longer. Dkt. 47 at ¶ 41; Ex. 13 (Spencer Decl.) ¶¶ 17–18. Due to frequent lockdowns, Plaintiffs often spend days at a time in their cells. Ex. 13 (Spencer Decl.) ¶18; Dkt. 49 at ¶ 27.

G4 housing is the punishment wing for TDCJ where people are housed after recent major disciplinary violations, often assaults or similar misconduct, and only following a hearing or other process. Dkt. 48 at ¶¶ 50, 51, 55; Ex. 21 (Recommended Custody Criteria) at 1. Plaintiffs—who have spent years rehabilitating themselves—must navigate the ever-present danger, even assaults, from individuals constantly passing through on disciplinary charges. Dkt. 49 at ¶ 35; Ex. 13 (Spencer Decl.) ¶ 8. While non-SPD individuals are typically promoted out of G4 based on good conduct within 6–12 months, Ex. 21 at 1, Plaintiffs have remained in G4 for years or decades. Dkt. 47 at ¶ 59; Dkt. 51 at ¶ 48. Compared to the average individual who finds themselves in G4 as short-term punishment, Plaintiffs have spent 20–40 times longer stuck in G4. Dkt. 48 at ¶ 50; Dkt. 52 at ¶ 34.

These disciplinary confinement wings are constantly in disrepair, with broken windows, screens, toilets, sinks, and pipes. Ex. 12 (Gulley Decl.) ¶¶ 5–6; Ex. 13 (Spencer Decl.) ¶ 19. The crumbling infrastructure subjects Plaintiffs to regular power and water outages, flooding, and intolerable temperatures. Dkt. 48 at ¶¶ 59–62; Dkt. 47 at ¶¶ 46, 47. Their cells frequently flood with raw sewage, and Plaintiffs have had to push feces out by hand. Dkt. 48 at ¶ 62.

Plaintiffs also cannot participate in most educational, vocational, and rehabilitative programming because of their SPDs. Ex. 12 (Gulley Decl.) ¶ 7; Dkt. 48 at ¶ 54; Dkt. 47 at ¶ 37. This both negatively impacts their rehabilitation and interferes with their ability to obtain parole. Parole-eligible individuals receive Individual Treatment Plans ("ITPs") outlining programs required to be granted parole. Plaintiffs have been unable to complete their ITPs because their SPDs preclude them from accessing the necessary programs. Dkt. 48 at ¶ 52; Ex. 13 (Spencer Decl.) ¶ 13; Ex. 5 (ITP Requirement) at 2–3. Plaintiffs' G4 or higher placement also increases their risk scores, further decreasing the likelihood of parole. Dkt. 48 at ¶ 53.

These deprivations are compounded for people trapped in administrative segregation ("ad seg") because of their SPDs, where they are permitted at most two hours out of cell per day, and can go decades without any human contact except guards handcuffing them to leave their cells. Ex. 10 (Smith Decl.) ¶ 4; Ex. 11 (Wingfield Decl.) ¶ 6; Ex. 12 (Gulley Decl.) ¶ 4. The physical and psychological harms of solitary confinement are well-documented.[2] Yet Plaintiffs placed in ad seg have languished there for years without any path out until their SPDs are removed. Dkt. 48 at ¶ 24; Ex. 12 (Gulley Decl.) ¶ 15.

Defendants have subjected Plaintiffs to prolonged isolation, danger, and extreme and unsanitary conditions, causing their psychological and physical wellbeing to deteriorate. Dkt. 48 at ¶ 67; Dkt. 47 at ¶ 56. The severity of Plaintiffs' conditions is atypical with respect to the average individual in TDCJ, and the extreme duration of their restriction to G4 or higher housing extends far beyond even the average individual incarcerated in those conditions.

**B. Procedural Background.**

Curtis Gambill, Pete Armenta Jr., Jesse Wade Holt, Mark Anthony Reyna, Eddie Ray Fowler Jr., Prescilliano Martinez, Juan Antonio DeLeon, and Joseph Martinez filed this case *pro se* on March 30, 2021, challenging their 10-plus-year-old SPDs and the conditions on TDCJ's Wynne Unit. Dkt. 1.[3] Shortly thereafter, they sought class certification. Dkt. 6. After Judge Vanessa Gilmore denied their Motions for Class Certification (Dkt. 32) and Appointment of Counsel (Dkt. 34), Judge Lynn Hughes ordered Plaintiffs to file more definite statements, Dkt. 46. Plaintiffs complied, Dkts. 47–53, and Judge Hughes ordered Defendants to respond, Dkt. 55.

---

[2] *See* Peter Scharff Smith, *The Effects of Solitary Confinement on Prison Inmates: A Brief History and Review of the Literature*, 34 Crime & Just. 441, 476 (2006).
[3] Pete Armenta Jr. and Joseph Martinez were later dismissed from the case. Dkts. 44, 45.

Defendants moved to dismiss, Dkt. 59, and this case was reassigned to this Court. Dkt. 66. On March 31, 2023, this Court denied Defendants' Motion to Dismiss. Dkt. 70.

In denying Defendants' Motion to Dismiss, this Court held Plaintiffs had alleged that G4 housing imposed "atypical and significant hardships within the correctional context" based on Plaintiffs' confinement in "55 square foot cells" for the vast majority of each day and lack of "educational and rehabilitation programs" for "years at a time." *Id.* at 6. After confirming Plaintiffs' liberty interest, this Court held Plaintiffs had plausibly alleged Defendants imposed SPDs without notice or opportunity to oppose the codes, thereby stating a due process claim. *Id.* at 7–8. This Court then appointed Beck Redden as counsel. Dkts. 88, 90.

The Order denying Plaintiffs' *pro se* Class Certification Motion recognized Plaintiffs had been "vigorously pursuing this suit," but held, "a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action." Dkt. 32 at 3 (quotation and citation omitted). However, the Order specified that class certification could be "raised again at a later, appropriate procedural juncture." *Id.* at 4.

This is the appropriate procedural juncture. Counsel and Plaintiffs have spent months gathering discovery and determining the best course for this litigation. Plaintiffs stand ready to serve as class representatives, just as when they filed this case, and counsel is equally prepared to serve the class. Plaintiffs filed a Motion for Leave to Amend their Complaint contemporaneously with this Motion to clarify their allegations, add several new Plaintiffs who have been similarly harmed, and present renewed class-based allegations. *See* Dkt. 106-1.

### III.    SUMMARY OF THE ARGUMENT

Plaintiffs ask this Court to certify a class under Federal Rule of Civil Procedure 23(b)(2). Plaintiffs must (1) demonstrate they meet the four Rule 23(a) prerequisites and (2) show Defendants have "acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2). Plaintiffs satisfy each Rule 23(a) requirement, and this case fits squarely within Rule 23(b)(2). Class certification is therefore appropriate, and the Court should grant Plaintiffs' motion, certify the proposed class, and appoint the undersigned as class counsel under Rule 23(g).

## IV.    **ARGUMENT**

### A.    The Proposed Class Satisfies Rule 23(a)'s Four Requirements.

The party seeking class certification must show it meets Rule 23(a)'s four requirements:

> (1)  the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Miller v. Mackey Int'l., Inc.*, 452 F.2d 424, 427 (5th Cir. 1971). "Rule 23(a) must be read liberally in the context of civil rights suits." *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975), *abrogated on other grounds by Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478 (1978).

### 1.    The Proposed Class Is Sufficiently Numerous to Render Joinder Impracticable.

Plaintiffs' proposed class is sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). To meet this requirement, the key question is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (quotation omitted). The other relevant factors include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.*

Courts also consider "judicial economy arising from [the] avoidance of a multiplicity of actions." *Newberg on Class Actions* § 3:12 (6th ed.). "[T]he fact that the class includes unknown, unnamed future members also weighs in favor of certification." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000). "The general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)." *Jones*, 519 F.2d at 1100.

Here, the proposed class satisfies the numerosity requirement. Based on public information from TDCJ, 1484 individuals currently have ES, SA, and HS SPDs. Ex. 2 (Hiroshige Decl.) ¶ 4. Of those, approximately 486 people have had codes for more than 10 years since the date of the underlying incident. Ex. 3 (Robertson Decl.) ¶ 4. A class of nearly 500 surpasses the size of other classes that have satisfied numerosity. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (approving class of 100 to 150 members); *see also id.* (recognizing "any class of more than forty members 'should raise a presumption that joinder is impracticable'" (quoting *Newberg on Class Actions* § 3:1 (3d ed.)).

Beyond sheer numbers, "other relevant factors" demonstrate joinder is impracticable. *See Zeidman*, 651 F.2d at 1038. **First**, joinder is impracticable because of the indeterminate future stream of class members who will suffer the same injury, absent injunctive relief, given that Defendants will continue enforcing the challenged SPD policies and engaging in the challenged practices. *See Pederson*, 213 F.3d at 868 n.11. **Second**, in assessing the impracticability of individual joinder, "courts should take a common-sense approach which takes into account the objectives of judicial economy and access to the legal system." *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993) (internal citation and quotations omitted). The prospective class's indigency, confinement in prison, and lack of access to the courts make traditional joinder

unworkable. *See id.*; *Perez-Benites v. Candy Brand*, 267 F.R.D. 242, 247 (W.D. Ark. 2010) (finding joinder impracticable where "most of the members of the class are indigent persons who do not have the financial means to bring individual litigation"). **Third**, a class action is efficient and presents no serious management difficulties. The class is easily ascertainable from Defendants' own records and is geographically limited to this State. The drain on judicial resources from duplicative litigation, and the potential for multiple or conflicting judgments, also underscore the advantages of a class-action. The proposed class therefore satisfies the numerosity requirement.

### 2. The Proposed Class's Claims Raise Common Issues of Fact and Law.

Plaintiffs' claims raise "questions of law or fact common to the class" and their resolution will generate common answers. Fed. R. Civ. P. 23(a)(2). Commonality requires class members' claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). While commonality may "necessarily overlap[] with [the] merits," *id.* at 352, Plaintiffs need not "prove that they are entitled to relief" at the class certification stage, *M.D. v. Perry*, 294 F.R.D. 7, 44 (S.D. Tex. 2013).

Although Rule 23(a) does not require common questions of law *and* fact, here, both the dispositive factual and legal issues are common to the class. Common questions of fact include:

- Whether a person has notice or opportunity to be heard when given an ES, HS, or SA code;
- Whether TDCJ provides any opportunity to challenge the placement of an SPD in the 10 years after the underlying incident;
- Under what circumstances TDCJ retains 10-plus-year-old ES, HS, or SA SPDs;
- Whether TDCJ provides meaningful procedures surrounding a decision to retain a 10-plus-year old code;
- Whether enduring G4 or higher custody for more than a decade imposes hardships greater than the normal incidents of prison life; and
- Whether the SPDRC overrules, without notice, reasoning, or an opportunity to be heard, UCC decisions to remove an SPD in violation of TDCJ policy.

Common questions of law include:

- Whether confinement in G4 or higher custody for more than 10 years imposes an atypical and significant hardship implicating a liberty interest protected by the Due Process Clause;
- Whether the SPD Policy's presumption of SPD removal after 10 years, absent extraordinary circumstances or immediate security risk, creates a liberty interest in such removal;
- Whether TDCJ's processes for reviewing placement, removal, and retention of ES, HS, or SA codes violate the Due Process Clause; and
- What minimum procedural safeguards are required to maintain an SPD after a person has spent more than a decade in G4 or higher conditions.

As these examples illustrate, the proposed class satisfies commonality because Plaintiffs' claims pose questions of fact and law that will elicit answers common to the class. Fed. R. Civ. P. 23(a)(2).

### 3. The Named Plaintiffs' Claims Are Typical of the Proposed Class.

Plaintiffs have claims typical of individuals subject to Defendants' SPD policies and practices. "[T]he test for typicality is not demanding." *Mullen*, 186 F.3d at 625. Typicality turns on whether Named Plaintiffs' claims "have the same essential characteristics of those of the putative class." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023) (quotation omitted). However, typicality does not "require a complete identity of claims" because "[i]f the claims from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839–41 (5th Cir. 2012) (citations and quotations omitted).

Plaintiffs were injured in the same manner as all others with 10-plus-year-old ES, HS, and SA SPDs. Defendants and their agents placed SPDs on Plaintiffs and proposed class members without notice or opportunity to be heard. *Supra* section II.A.1. Those decisions consigned

Plaintiffs and proposed class members to punitive housing for more than a decade without meaningful reviews or opportunities to be released to lower-level custody. *Id.* Defendants continue holding Plaintiffs and class members indefinitely in these conditions without due process. *Id.* Even Plaintiffs whose SPDs have been removed experienced the same system of deprivation as the class. *Id.* Plaintiffs therefore share the essential facts of their claims with the class.

Plaintiffs also rely on the same legal theories other class members would assert. Both Plaintiffs and proposed class members must establish a liberty interest in their code removal and the inadequacy of TDCJ policies and practices surrounding code placement and retention decisions. As explained above, *supra* section IV.A, Plaintiffs' Due Process claim challenges Defendants' system-wide SPD practices that inflict the same injury on Plaintiffs and individual class members. Plaintiffs therefore satisfy typicality.

### 4.  The Named Plaintiffs and Their Counsel Are Adequate Representatives.

The class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23 (a)(4). "A court considers three factors when adjudging the adequacy of named plaintiffs": (1) the "zeal and competence" of counsel; (2) the willingness and ability of the representatives to "take an active role in and control the litigation and to protect the interests of absentees"; and (3) "the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Angell*, 67 F. 4th 737 (quoting *Slade v. Progressive Sec. Ins. Co*., 856 F.3d 408, 412 (5th Cir. 2017)).  Plaintiffs and their counsel meet this test.

**First,** Plaintiffs' counsel will zealously prosecute this action to vindicate the rights of the class. Plaintiffs request this Court appoint Beck Redden and Texas Civil Rights Project ("TCRP") as class counsel under Federal Rule of Civil Procedure 23(g). Under Rule 23(g), the Court must consider: (1) "the work counsel has done in identifying or investigating potential claims in the

action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Beck Redden and TCRP satisfy these requirements.

Both Beck Redden and TCRP have demonstrated competence and zeal in complex federal civil rights cases and class actions. Beck Redden is consistently ranked as one of the premier litigation firms in Texas. *See* Ex. 6 (Decl. of Alex Roberts) ¶ 5. It has a history of superior trial and appellate advocacy in Texas and around the country, as evidenced by the victories it has obtained for its clients. *Id.* ¶¶ 5–6. In addition to this case, Beck Redden has a long history of litigating class action lawsuits successfully for its clients. *See id.* ¶ 6.

In support of this lawsuit, Beck Redden attorneys have invested significant time interviewing Plaintiffs and other class members, performing relevant legal research and drafting, and investigating the facts and legal claims raised in this case. *Id.* ¶¶ 3–4, 8. The firm has also begun extensive discovery concerning Defendants' policies and practices regarding SPD codes. *Id.* ¶¶ 7–10. Additionally, Beck Redden has contributed to expenses incurred to date in this matter, and it will continue to do so in the future. *Id.* ¶ 8.

TCRP is similarly equipped for zealous class representation. TCRP is a nonprofit organization that for decades has litigated individual and class-based civil rights actions in Texas state and federal courts. TCRP has extensive experience in federal court class actions. Ex. 7 (Decl. of Dustin Rynders) ¶¶ 7–8. In addition, TCRP has litigated complex constitutional civil rights cases across varied contexts. *Id.* ¶ 9.

TCRP attorneys have spent considerable time and resources investigating TDCJ's restrictive classification practices. *Id.* ¶¶ 10–12. In 2023, TCRP attorneys authored a detailed report

on solitary confinement in TDCJ, gaining deep familiarity of the experiences of individuals in restrictive housing. *Id.* ¶ 10. TCRP also represents an individual who had an ES code in a damages action, adding to TCRP's relevant expertise. *Id.* TCRP staff are well-versed in the law and facts at issue.

**Second,** Plaintiffs are adequate class representatives and will competently and diligently pursue the class's interests. "[C]lass representative[s] must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (quotation and citation omitted). Class representatives "need not be legal scholars and are entitled to rely on [class] counsel." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 132 n.4 (5th Cir. 2005) (quoting *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 483 (5th Cir. 2001). But they must demonstrate "willingness and ability . . . to take an active role in and control the litigation." *Id.* at 130 (quoting *Berger*, 257 F.3d at 479).

The original Plaintiffs demonstrated their commitment to the interests of the class by prosecuting this action *pro se* while detained in deplorable conditions. *See Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982). Even before this Court appointed counsel, Plaintiffs "vigorously pursu[ed] this suit," Dkt. 32, filing a detailed complaint, motion to certify class, more definite statements, and a response to Defendants' Motion to Dismiss. *See, e.g.*, Dkts. 1, 6, 47–53, 62; Ex. 14 (Fowler Decl.) ¶¶ 2–4; Ex. 15 (Gambill Decl.) ¶ 7; Ex. 16 (Holt Decl.) ¶ 5; Ex. 17 (Reyna Decl.) ¶ 2; Ex. 18 (Martinez Decl.) ¶ 7; Ex. 19 (DeLeon Decl.) ¶ 7.

Further, since being appointed counsel, each Plaintiff, including the additional Plaintiffs who have joined in the First Amended Complaint, has: (1) conferred with the undersigned counsel regarding the responsibilities of class representatives; (2) demonstrated familiarity with the claims, Defendants' practices, the constitutional rights they seek to vindicate, the Complaint, and the

concept of a class action; and (3) agreed to fulfil the duties of class representatives with counsel's assistance to vindicate the rights of the class. *See* Ex. 7 (Rynders Decl.) ¶ 13; Ex. 10 (Smith Decl.) ¶¶ 9–11; Ex. 11 (Wingfield Decl.) ¶¶ 19–20; Ex. 12 (Gulley Decl.) ¶¶ 17–18; Ex. 13 (Spencer Decl.) ¶¶ 20–21; Ex. 14 (Fowler Decl.) ¶¶ 2–4; Ex. 15 (Gambill Decl.) ¶¶ 7–9; Ex. 16 (Holt Decl.) ¶¶ 5–7; Ex. 17 (Reyna Decl.) ¶¶ 2–4; Ex. 18 (Martinez Decl.) ¶¶ 7–9; Ex. 19 (DeLeon Decl.) ¶¶ 7–9.

**Third,** there are no known conflicts between Named Plaintiffs and the class they seek to represent, and no Named Plaintiff or members of the class would benefit from the challenged practices continuing.

Accordingly, Named Plaintiffs and the undersigned counsel meet the adequacy requirements of Rule 23(a). In addition, appointment of the undersigned as class counsel is appropriate under Rule 23(g)(2).

## B.    Certification for Prospective Relief Under Rule 23(b)(2) Is Appropriate.

The proposed class here is exactly the type described in Rule 23 (b)(2). To certify a class under Rule 23(b)(2), the moving party must show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) classes seek "an indivisible injunction benefitting all its members at once"; individualized inquiries into "whether class issues predominate" are unnecessary; and "[p]redominance and superiority are self-evident." *Dukes*, 564 U.S. at 362–63. Civil rights class actions seeking injunctive and declaratory relief are "prime examples" of those Rule 23(b)(2) is meant to capture. *Id.* at 361 (quoting *Achem Prods., Inc.*, 521 U.S. at 614).  In *Allison v. Citgo Petroleum Corp.*, the Fifth Circuit explained that when plaintiffs seek "only injunctive and declaratory relief, [a] case [can] readily be certified as a class action under Rule 23(b)(2)." 151

F.3d 402, 411 (5th Cir. 1998). This is because they involve "uniform group remedies," which do not normally require "a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case." *Id.* at 414.

Plaintiffs seek only injunctive and declaratory relief to remedy the SPD policy's deficiencies in ways applicable to the entire class. A declaration and injunction stating Defendants cannot enforce their current SPD classification policy and practices, and requiring Defendants to implement reasonable procedural safeguards universally, would apply equally across the class. *See Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) ("Instead of requiring common issues, 23(b)(2) requires common behavior by the defendant[s] towards the class."). Because Plaintiffs seek only such "uniform group remedies," certification under Rule 23 (b)(2) is appropriate. *Allison*, 151 F.3d at 414.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court:

- Certify the proposed class of "All individuals incarcerated by the Texas Department of Criminal Justice with Security Precaution Designators ES, HS, or SA for whom 10 or more years have passed since the incident for which the code was placed" under Federal Rule of Civil Procedure 23;

- Appoint Beck Redden and Texas Civil Rights Project as class counsel under Rule 23(g).

Dated: May 6, 2024

(Signatures on following page)

Respectfully submitted,

**TEXAS CIVIL RIGHTS PROJECT**

By:  */s/ Travis Fife*
    Travis Fife
    Texas Bar No. 24126956
    Southern District No. 3734502
    travis@texascivilrightsproject.org
    Dustin Rynders
    Texas State Bar No. 24048005
    Southern District No. 685541
    dustin@texascivilrightsproject.org
    Christina Beeler
    Texas State Bar No. 24096124
    Southern District No. 3695627
    christinab@texascivilrightsproject.org
    Randall Hiroshige
    Texas Bar No. 24124299
    Southern District No. 3708688
    randy@texascivilrightsproject.org
    Molly Petchenik
    Texas Bar No. 24134321
    molly@texascivilrightsproject.org
Texas Civil Rights Project
1405 Montopolis
Austin, Texas 78741
Telephone: 512-474-5073

**BECK REDDEN LLP**

By:  */s/ Alex Roberts*
    Alex Roberts
    Federal Bar No: 865757
    State Bar No: 24056216
    aroberts@beckredden.com
    Maryam Ghaffar
    Southern District No: 3710605
    State Bar No: 24120847
    mghaffar@beckredden.com
1221 McKinney St., Suite 4500
Houston, TX 77010
Telephone: (713) 951-3700
Facsimile: (713) 952-3720

**ATTORNEYS FOR PLAINTIFFS**

\*\*\*

## CERTIFICATE OF CONFERENCE

On April 25 and 26, Plaintiffs' counsel Maryam Ghaffar conferred with Defendants' counsel Briana Webb regarding this Motion to Certify a Class and Appoint Class Counsel. Ms. Webb indicated that Defendants are opposed.

/s/ Travis Fife
Travis Fife

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was served in accordance with the Federal Rules of Civil Procedure on the 6 day of May 2024, via CM-ECF to all attorneys of record.

/s/ Travis Fife
Travis Fife

## CERTIFICATE OF WORD COUNT

I hereby certify that this Motion complies with Court Procedure 16(c) and the Court's extension of the word limit to 5,500 words for purposes of this Motion. The total word count, not including those parts exempted under Rule 16(c), is 5,475. I confirmed this word count via Microsoft Word's word count processor.

/s/ Travis Fife
Travis Fife