## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CURTIS ALLEN GAMBILL, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Case No. 4:21-CV-01076 |
| VS. | § | |
| | § | **CLASS ACTION** |
| BRYAN COLLIER, *et al.,* | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

---

### PLAINTIFFS' RESPONSE TO DEFENDANTS' AMENDED MOTION TO DISMISS

---

**TEXAS CIVIL RIGHTS PROJECT**

Dustin Rynders
dustin@texascivilrightsproject.org
Christina Beeler
christinab@texascivilrightsproject.org
Randall Hiroshige
randy@texascivilrightsproject.org
Molly Petchenik
molly@texascivilrightsproject.org
Travis Fife
travis@texascivilrightsproject.org
1405 Montopolis
Austin, Texas 78741
Telephone: 512-474-5073

**BECK REDDEN LLP**

Alex Roberts
aroberts@beckredden.com
Maryam Ghaffar
mghaffar@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile: (713) 952-3720

**ATTORNEYS FOR PLAINTIFFS**

TABLE OF CONTENTS

Table of Contents ............................................................................................................ i

Table of Authorities ...................................................................................................... iii

Introduction .................................................................................................................... 1

Relevant Background ...................................................................................................... 2

Argument and Authorities ............................................................................................. 3

    I.    This Court Has Jurisdiction Over DeLeon, Holt, Martinez, and Reyna's Claims. ...............................................................................................3

        A.    The Relation-Back Doctrine Applies to this Inherently Transitory Class. ............................................................................................... 4

        B.    Defendants' Own Actions Do Not Moot Holt, Martinez, and Reyna's Claims. ................................................................................. 7

            1.    Defendants' Voluntary Cessation Does Not Moot Holt, Martinez, and Reyna's claims. ........................................................... 7

            2.    Defendants' "Picking Off" of Holt, Martinez, and Reyna Does Not Moot Their Class Action Claims. ................................ 10

        C.    Sovereign Immunity Does Not Bar DeLeon, Holt, Martinez, and Reyna's Claims Against Defendants. ........................................ 11

    II.    Plaintiffs Plausibly State Their Due Process Claims. ...........................................12

        A.    Plaintiffs Allege a Deprivation of Their Liberty Interests. ..................... 13

            1.    Plaintiffs Are Incarcerated in Severe Conditions......................... 13

            2.    Plaintiffs' Confinement in Punitive Custody is Lengthy and Indefinite. ........................................................................................ 16

    III.    Plaintiffs Plausibly State a Deprivation of Due Process........................................18

        A.    Plaintiffs Have a Substantial Interest in the Meaningful Review of their SPD Codes. ....................................................................................... 19

            1.    Defendants' Procedures Create a Significant Risk of Erroneous Deprivations of Plaintiffs' Liberty Interest. ............... 19

            2.    Any Government Interest in Decades-Long Punitive Confinement Does Not Outweigh Plaintiffs' Liberty Interest........................................................................................... 23

IV.    Plaintiffs' Claims Are Timely.................................................................25

    A.    Plaintiffs'    Claims    Are    Timely    Because    Defendants'
        Unconstitutional Actions Inflict a Continuing Violation..........................26

    B.    Plaintiffs' Claims for Injunctive Relief Are Timely Even Under
        Defendants' Erroneous Theory of Accrual. ...............................29

V.    Plaintiffs Properly Incorporated Their More Definite Statements By
    Reference. ............................................................................30

VI.    Defendants' Motion to Dismiss Plaintiffs' Claims for Injunctive Relief is
    Premature. ...........................................................................31

Conclusion ...................................................................................31

Certificate of Service ...........................................................................33

Certificate of Word Count ......................................................................33

TABLE OF AUTHORITIES

**Cases**  Page(s)

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ..................................................................................................7

*Amador v. Andrews*,
655 F.3d 89 (2d Cir. 2011) .....................................................................................5

*Bailey v. Fisher*,
647 F. App'x 472 (5th Cir. 2016) ..............................................................13, 14, 17

*Barnes v. Givens*,
746 F. App'x 401 (5th Cir. 2018) ..........................................................................17

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) .................................................................................12

*Braggs v. Dunn*,
257 F. Supp. 3d 1171 (M.D. Ala. 2017) ...............................................................12

*Carmouche v. Hooper*,
77 F.4th 362 (5th Cir. 2023) .....................................................................13, 27, 28

*Carroll v. Fort James Corp.*,
470 F.3d 1171 (5th Cir. 2006) .........................................................................30, 31

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) ................................................................................12

*Cnty. of Riverside v. McLaughlin*,
500 U.S. 44 (1991) ..................................................................................................4

*Comer v. Cisneros*,
37 F.3d 775 (2d Cir. 1994) .....................................................................................5

*Cummings v. Missouri*,
71 U.S. 277 (1866) ..................................................................................................7

*Daubitz v. Dir., TDCJ-CID*,
No. 6:20CV74, 2020 WL 5225678 (E.D. Tex. July 1, 2020),
*report and recommendation adopted sub nom.*
*Daubitz v. Texas*, No. 6:20-CV-74-JDK-KNM, 2020 WL 5203485
(E.D. Tex. Sept. 1, 2020) ......................................................................................15

*Dillard v. Davis*,
  No. 7:19-CV-00081-M-BP, 2022 WL 3045747 (N.D. Tex. June 17, 2022),
  *report and recommendation adopted*, No. 7:19-CV-00081-M-BP, 2022 WL
  3042901 (N.D. Tex. Aug. 2, 2022) .................................................................................17, 21

*FBI v. Fikre*,
  601 U.S. 234 (2024) ...........................................................................................7, 8, 9, 10

*Flynt v. Shimazu*,
  940 F.3d 457 (9th Cir. 2019) .........................................................................................30

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .........................................................................................................7

*Heard v. Sheahan*,
  253 F.3d 316 (7th Cir. 2001) .........................................................................................27

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*,
  850 F.3d 731 (5th Cir. 2017), *as revised* (Mar. 13, 2017) ...........................25, 26, 27

*Hewitt v. Helms*,
  459 U.S. 460 (1983) .................................................................................................19, 20

*K.P. v. LeBlanc*,
  729 F.3d 427 (5th Cir. 2013) .........................................................................................12

*Krebs v. Davis*,
  No. CV H-16-521, 2017 WL 914997 (S.D. Tex. Mar. 8, 2017) ....................................15

*Lee v. Karriker*,
  383 F. App'x 491 (5th Cir. 2010) ..................................................................................28

*Lee v. Karriker*,
  No. CIV.A. 6:08CV328, 2009 WL 2590093 (E.D. Tex. Aug. 17, 2009),
  *aff'd*, 383 F. App'x 491 (5th Cir. 2010) .......................................................................15

*Los Angeles Cnty. v. Davis*,
  440 U.S. 625 (1979) .........................................................................................................3

*Madison v. Parker*,
  104 F.3d 765 (5th Cir. 1997) .........................................................................................17

*Malchi v. Thaler*,
  211 F.3d 953 (5th Cir. 2000) .........................................................................................17

*Mathews v. Elridge*,
  424 U.S. 319 (1976) .......................................................................................................18

*Moore v. Brown*,
  868 F.3d 398 (5th Cir. 2017) ................................................................................9

*Moreno v. Napolitano*,
  No. 11-C-5452, 2012 WL 5995820 (N.D. Ill. Nov. 30, 2012) ..................................5

*Motley v. Taylor*,
  No. 19-cv-478, 2021 WL 2556152 (M.D. Ala. June 22, 2021)..................................5

*Muttathottil v. Gordon H. Mansfield*,
  381 F. App'x 454 (5th Cir. 2010) ........................................................................31

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002)................................................................26, 27, 28, 29, 30

*Netflix, Inc. v. Babin*,
  88 F.4th 1080 (5th Cir. 2023) ...............................................................................9

*O'Connor v. City of Newark*,
  440 F.3d 125 (3d Cir. 2006)...............................................................................27

*Olson v. Brown*,
  594 F.3d 577 (7th Cir. 2010) ......................................................................4, 5, 6

*Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U, Will Cnty., Ill.*,
  46 F.3d 682 (7th Cir. 1995) ................................................................................30

*Piotrowski v. City of Houston* (*Piotrowski II*),
  237 F.3d 567 (5th Cir. 2001) ...............................................................................29

*Procunier v. Martinez*,
  416 U.S. 396 (1974)............................................................................................24

*Redburn v. City of Victoria*,
  898 F.3d 486 (5th Cir. 2018) ...............................................................................25

*Reed v. Goertz*,
  598 U.S. 230 (2023).............................................................................................29

*Roberts v. Goodwin*,
  No. CV 13-2834, 2017 WL 4365994 (W.D. La. Sept. 29, 2017)...........................17

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)..................................................................................5

*Sandin v. Conner*,
  515 U.S. 472 (1995)............................................................................................13

*Schuff v. Perkins*,
   No. 9:19-CV-146, 2023 WL 7221345 (E.D. Tex. Nov. 1, 2023) ...........................................15

*Schwarzer v. White*,
   No. 6:18-CV-00029, 2023 WL 4151699 (S.D. Tex. Mar. 29, 2023) ......................................23

*Striz v. Collier*,
   No. 3:18-CV-202, 2020 WL 7868102 (S.D. Tex. Nov. 24, 2020),
   *aff'd*, No. 20-40878, 2022 WL 1421834 (5th Cir. May 5, 2022) ...........................................23

*Striz v. Collier*,
   No. CV 3:18-0202, 2019 WL 4103067 (S.D. Tex. Aug. 29, 2019)...........................................23

*Tellis v. LeBlanc*,
   No. 18-CV-0541, 2020 WL 1249378 (W.D. La. Mar. 13, 2020) ......................................5, 11

*Thorpe v. District of Columbia*,
   916 F. Supp. 2d 65 (D.D.C. 2013) .........................................................................................6

*Turner v. Safley*,
   482 U.S. 78 (1987)................................................................................................................24

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980)................................................................................................................7

*United States v. W.T. Grant Co.*
   345 U.S. 629 (1953)................................................................................................................3

*Wallace v. Kato*,
   549 U.S. 384 (2007)..............................................................................................................25

*Ward v. Hellerstedt*,
   753 F. App'x 236 (5th Cir. 2018) .......................................................................................4, 5

*Wilkerson v. Goodwin*,
   774 F.3d 845 (5th Cir. 2014) .............................................................................14, 17, 19, 20, 24

*Wilkinson v. Austin*,
   545 U.S. 209 (2005).............................................................................13, 16, 19, 21, 22, 27

*Wilson v. Gordon*,
   822 F.3d 934 (6th Cir. 2016) .......................................................................................4, 5, 11

*Zeidman v. J. Ray McDermott & Co., Inc.*,
   651 F.2d 1030 (5th Cir. 1981) ......................................................................................10, 11

*Zinermon v. Burch*,
   494 U.S. 113 (1990)..............................................................................................................29

**Statutes**

Tex. Civ. Prac. & Rem. Code § 16.003(a) .......................................................................25

Plaintiffs Curtis Gambill, Jesse Wade Holt, Mark Anthony Reyna, Eddie Ray Fowler Jr., Prescilliano Martinez, Juan Antonio DeLeon, Raymond Wingfield, Britney Gulley, Jerrod Spencer, and Ricky Smith respectfully submit this Response to Defendants' Amended Motion to Dismiss (the "Motion"), Dkt. 142, and would show the Court as follows:

## INTRODUCTION

This is the second time this Court has been asked to rule on a motion to dismiss in this case. This Court previously denied the original Defendants' Motion to Dismiss in March 2023, concluding that Plaintiffs alleged a due process violation. Dkt. 70. At the time, the original Plaintiffs alleged the same violations as the new Plaintiffs do now: that Defendants confined them without due process in severe conditions on the basis of Security Precaution Designators.

Now, after Plaintiffs filed their Amended Complaint, Defendants take another bite at the apple. Dkt. 142. Defendants contend that Plaintiffs' Amended Complaint should be dismissed on the grounds that it either (1) presents claims by Plaintiffs whose claims are moot, (2) fails to plead sufficient facts to state a claim, or (3) alleges claims that are time-barred. All of these arguments fail.

Each Plaintiff has standing to pursue their claims and Defendants' own conduct of removing the SPD codes of several Plaintiffs does not change that result. Plaintiffs' Amended Complaint also plainly satisfies the pleading standards of Federal Rules of Civil Procedure 12(b)(6) and 8. Defendants would have this Court apply a pleading standard that far exceeds those. Finally, Defendants' claim that injunctive relief is time barred is premature at this time. Because Plaintiffs have standing to pursue their sufficiently alleged and timely claims, this Court should again deny Defendants' Motion to Dismiss and allow this case to proceed to the class certification stage.

### RELEVANT BACKGROUND

Plaintiffs Gambill, Holt, Reyna, Fowler, Martinez, and DeLeon (the "original Plaintiffs") filed this lawsuit in 2021. Dkt. 1. At the time, they each had SPD codes that were more than 10 years old. *Id.* ¶ 39. Shortly thereafter, they moved for class certification. Dkt. 6. Judge Vanessa Gilmore denied their motion because they were proceeding *pro se*, but specified that class certification could be "raised again at a later, appropriate procedural juncture." Dkt 32 at 4.

The original Defendants then moved to dismiss the complaint for failure to state a claim. Dkt. 59. On March 31, 2023, this Court denied that Motion to Dismiss. Dkt. 70. In its order, this Court held that Plaintiffs had sufficiently alleged their lengthy confinement in restrictive conditions imposed "atypical and significant hardships. . . giving rise to a liberty interest." *Id.* at 7. After confirming Plaintiffs' liberty interest, this Court also held Plaintiffs had plausibly alleged a due process claim since Defendants imposed SPDs on them without "notice or an opportunity to be heard." *Id.* at 8. This Court then granted Plaintiffs' motion for appointment of counsel, noting "the seriousness of the plaintiffs' claims," and denied their motion for leave to amend their complaint at that time "so that counsel may formulate a strategy for pursuing the plaintiffs' claims." Dkt. 88 at 2.

Doing just that, Plaintiffs sought leave to file an amended complaint with the assistance of counsel, which this Court granted. Dkts. 106, 106-1, 115. In their Amended Complaint, the original Plaintiffs are now joined by Plaintiffs Wingfield, Gulley, Spencer, and Smith ("new Plaintiffs," and together with the original Plaintiffs, the "Plaintiffs"). Dkt. 116. Together, they pursue due process claims against TDCJ's SPD Policy, governed by TDCJ's Administrative Directive 04.11 ("AD 04.11" or the "Policy"). *Id.* ¶¶ 38–48. Plaintiffs have spent years or even decades in G4 or higher custody based on their SPD codes. *Id.* ¶¶ 49–60. Because TDCJ's SPD Policy lacks due process protections at all stages, Plaintiffs have languished indefinitely in severe conditions in

these punitive custody wings without any meaningful opportunities for review. *Id.* ¶¶ 61–152. Plaintiffs have once again sufficiently alleged due process claims, over which this Court retains jurisdiction. This Court should deny Defendants' Motion.

## ARGUMENT AND AUTHORITIES

Defendants raise arguments under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). With regard to Rule 12(b)(1), Defendants argue that mootness and sovereign immunity require the dismissal of claims for four Plaintiffs. With regard to Rule 12(b)(6), Defendants raise issues with the sufficiency of allegations and the statute of limitations for each of the Plaintiffs' due process claims. Defendants also raise Plaintiffs' incorporation by reference and request for injunctive relief as a concern. None of these avenues provides Defendants relief at this stage. Each is discussed in turn.

## I.    This Court Has Jurisdiction Over DeLeon, Holt, Martinez, and Reyna's Claims.

"The burden of demonstrating mootness 'is a heavy one.'" *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W.T. Grant Co*. 345 U.S. 629, 633 (1953)). Defendants have failed to meet this burden.

Defendants argue that the claims of four Plaintiffs are now moot. Dkt. 142 at 17.[1] First, they argue Plaintiff DeLeon's claim is moot because his sentence was discharged. Next, they argue Plaintiffs Holt, Martinez, and Reyna's claims are moot because their SPD codes were removed. Accordingly, Defendants also argue that sovereign immunity serves as yet another reason to dismiss their claims.

---

[1] Plaintiffs cite to the ECF page number of Defendants' Motion.

Notably, Defendants do not contest this Court's jurisdiction over the six remaining Plaintiffs (Gambill, Fowler, Wingfield, Gulley, Spencer, and Smith), *see* Dkt. 142 at 16–21, so the case may proceed regardless of the Court's decision as to mootness. Still, the Court should reject Defendants' jurisdictional arguments.

## A.    The Relation-Back Doctrine Applies to this Inherently Transitory Class.

The claims of Plaintiffs Holt, Reyna, Martinez, and DeLeon relate back to the filing of their original complaint because they seek to represent an inherently transitory class of similarly situated individuals.

Named Plaintiffs can serve as class representatives even after their individual claims may otherwise be moot if: "(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint." *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010); *see also Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016) (applying two-part test and citing *Olson*, 594 F.3d at 582); *Ward v. Hellerstedt*, 753 F. App'x 236, 242–43 (5th Cir. 2018) (similar). Plaintiffs meet both prongs of the so-called "inherently transitory" exception, so their claims "relate back to the time of the filing of the original complaint" when each of them was incarcerated in restrictive housing due to their SPD codes. *Ward*, 753 F. App'x at 242; *see, e.g.*, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991).

**First**, it is uncertain, and within Defendants' control, how long beyond 10 years any person will have their code, and therefore how long a claim will remain live. In *Ward*, the Fifth Circuit provided several factors for determining if a class is inherently transitory, including "the fleeting or temporary nature" of the challenged conduct, uncertainty "at the outset as to the duration of each plaintiff's exposure to the allegedly harmful conduct," and whether "it is unlikely that any given plaintiff could see his claim to fruition prior to the claim becoming moot." 753 F. App'x at

242. Importantly, the analysis "must be made with reference to the claims of the class as a whole as opposed to any one individual claim for relief." *Id.* at 242 n.14 (quoting *Amador v. Andrews*, 655 F.3d 89, 100 (2d Cir. 2011)). Applying this class-wide inquiry, the Fifth Circuit recognized "there [were] potential class members whose claims would not expire within the time it would take to obtain a class certification order," but held the class was inherently transitory because "there is no way for Plaintiffs to ensure that any named plaintiff added to their complaint [would] be that individual." *Id.* at 242–43.

*Ward* is consistent with courts around the country in recognizing that "the crux of the 'inherently transitory' exception is **uncertainty** about the length of time a claim will remain alive." *Olson*, 594 F.3d at 582 (emphasis added). A crucial aspect of uncertainty is "the defendant's ability to quickly render a claim moot." *Wilson*, 822 F.3d at 946 (citing *Robidoux v. Celani*, 987 F.2d 931, 939 (2d Cir. 1993)); *Moreno v. Napolitano*, No. 11-C-5452, 2012 WL 5995820, at *7 (N.D. Ill. Nov. 30, 2012) (applying exception where plaintiffs "were subject to the discretion of ICE officials"). The exception's focus on uncertainty, rather than any bright-line rule about how long an individual claim will last, explains why courts have found inherently transitory classes even though a plaintiff's claim could last years. *See, e.g.*, *Tellis v. LeBlanc*, No. 18-CV-0541, 2020 WL 1249378, at *7 (W.D. La. Mar. 13, 2020) (applying exception to prisoner class where challenged conditions "often last[ed] for years"); *Comer v. Cisneros*, 37 F.3d 775, 783, 799 (2d Cir. 1994) (applying exception to class of public housing applicants who could have live claims for nine years); *Motley v. Taylor*, No. 19-cv-478, 2021 WL 2556152, at *6 (M.D. Ala. June 22, 2021) (applying exception where named plaintiff's claim lasted six years).

Here, Defendants' SPD system ensures no individual class member can predict how long their code will last after the 10-year mark. The crux of Plaintiffs' claims is Defendants' unbridled authority to retain or remove SPD codes on a whim without any clear guidelines or criteria. *See* Dkt. 116 ¶¶ 170–72. As Plaintiffs' circumstances demonstrate, Defendants retain complete authority to quickly remove an SPD code at will, whether motivated by litigation or any other factor. *See, e.g.*, *Olson*, 594 F.3d at 583 (applying exception where "[t]he duration of his claim was at the discretion of the Indiana Department of Correction"); *Thorpe v. District of Columbia*, 916 F. Supp. 2d 65, 67 (D.D.C. 2013) (applying exception because "[t]he length of any individual's stay in a nursing facility is impossible to predict").

It is also possible for an individual to become part of the class by surpassing the 10-year mark with their SPD but getting released from custody before having an opportunity to litigate a complex civil rights class action, as in Plaintiff DeLeon's case. Due to Defendants' unconstrained authority under the Policy to retain and remove codes and the inherent uncertainties in the duration of incarceration, "it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class." *Olson*, 594 F.3d at 582.

**Second**, an endless class of persons will face the same injury. As new people enter TDCJ custody, AD 04.11 will continue to apply to some number of them. As more people with SPDs reach the 10-year milestone, becoming class members, Defendants' continued failure to provide constitutionally required process and exercise of arbitrary control over SPDs will remain a continuous and growing problem. Thus, a revolving door of individuals will suffer the deprivations complained of here. Absent relief from this Court, current and future class members remain at risk of indefinite retention of SPDs, subject only to Defendants' whims.

Because of the inherently transitory nature of the putative class Holt, Reyna, Martinez, and DeLeon seek to represent, their claims are not moot. Instead, their claims relate back to the filing of the original complaint when they were all in TDCJ custody and had SPD codes.

**B.    Defendants' Own Actions Do Not Moot Holt, Martinez, and Reyna's Claims.**

With regard to Plaintiffs Holt, Martinez, and Reyna, two additional reasons support a finding that their claims are not moot: (i) Defendants have not met their formidable burden to prove that their voluntary removal of SPD codes moots the claims; and (ii) Defendants' attempt to "pick off" Plaintiffs is ineffective because their claims relate back to the original filing of this putative class action.

**1.    Defendants' Voluntary Cessation Does Not Moot Holt, Martinez, and Reyna's claims.**

Defendants' voluntary removal of Plaintiffs Holt, Reyna, and Martinez's codes after this Court denied Defendants' first Motion to Dismiss does not moot Plaintiffs' claims.

Article III mootness doctrine is "flexible," especially in the context of class actions. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980). As the Supreme Court reiterated this term, a defendant may not "'automatically moot a case' by the simple expedient of suspending its challenged conduct after it is sued." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). A claim will only be mooted by a defendant's voluntary cessation if the defendant demonstrates "it is **absolutely clear** the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (emphasis added). Defendants' burden of demonstrating mootness is "formidable" because the "'Constitution deals with substance,' not strategies." *Fikre*, 601 U.S. at 241 (first quoting *Laidlaw*, 528 U.S. at 190; then quoting *Cummings v. Missouri*, 71 U.S. 277, 325 (1866)).

The Supreme Court's recent decision in *Fikre* demonstrates Plaintiffs' claims are not moot. There, the Plaintiff-Respondent claimed the FBI put him on the No Fly List without due process because the FBI failed "to provide any meaningful notice of his addition to the No Fly List, any information about the factual basis for his listing, and any appropriate way to secure redress." *Fikre*, 601 U.S at 238–39. The government argued that Fikre's removal from the No Fly List in 2016 mooted his claim and offered a declaration from a government official saying Fikre would not be "placed on the No Fly List . . . based on the currently available information." *Id.* at 242. The Court unanimously held that the case was not moot because "the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *Id.*

Applied here, Defendants have not met their burden. The timing of the removal of Holt, Martinez, and Reyna's SPD codes is highly suspicious. Each had codes that were over 17 years old, Dkt. 142-1, which were sparingly reviewed prior to filing this suit, Dkt. 116 ¶¶ 106–08, and were removed only after this Court denied the original Defendants' Motion to Dismiss and, in Reyna and Holt's case, appointed counsel, Dkts. 70, 88, 142-1. Defendant Timothy Fitzpatrick's affidavit attached to Defendants' Motion suggests the codes were removed for "meeting the requirements, to include the incident being over the 10-year threshold." Dkt. 142-1 at 2–3. But "[a] live case or controversy cannot be so easily disguised." *Fikre*, 601 U.S. at 241. Plaintiffs allege that the SPD policy is implemented "indiscriminately and without explanation" leaving Plaintiffs and class members "without any basis to challenge a determination" because the Policy lacks "criteria to govern the review of codes more than 10 years old." Dkt. 116 ¶¶ 91, 93. Read in context then, Defendants' choice to remove certain codes appears to be litigation posturing, rather than Plaintiffs suddenly satisfying some unspecified "requirements." At a minimum, the Court should make its voluntary cessation determination on a full record, not on the basis of a self-serving affidavit from a single Defendant.

Fitzpatrick insists, "an inmate will not have an SPD reinstated for a prior offense," but that a person "will be given a new SPD code for [a] separate incident" in the future. *Id.* at 4. Such a concession is irrelevant. Nothing in the affidavit suggests that TDCJ has changed the way it implements the Policy, which is the basis of Plaintiffs' claims. Indeed, Plaintiffs have alleged numerous examples of violations of, and deviations from, the Policy. *See*, *e.g.*, Dkt. 116 ¶¶ 72, 77–81, 87, 95, 99–106. Fitzpatrick provides no guarantee that Defendants and unit-level staff will cease acting in a similar manner such that Plaintiffs' due process rights will not be infringed in the future. Similarly, Fitzpatrick's claim that SPDs will *only* be assigned in the future if an individual commits an escape, hostage taking, or staff assault with serious injury is equally unavailing. Dkt. 142-1 at 4. While one would hope that this is the case, Plaintiffs' experiences belie Fitzpatrick's assurance that SPD codes will be placed *only* when an incident that meets the definition occurs. As Holt and Martinez allege, the circumstances that led to the placement of their SPDs *did not* meet the Policy's definitions of those codes. Dkt. 116 ¶¶ 66–67.

Defendants have also suggested in previous briefing that a "lighter burden" applies because government actors are "accorded a presumption of good faith because they are public servants." Dkt. 109 at 2 (quoting *Moore v. Brown*, 868 F.3d 398, 406–407 (5th Cir. 2017)). The unanimous court in *Fikre* explicitly rejected this good faith presumption, reasoning that the formidable burden "holds for governmental defendants no less than for private ones." *Fikre*, 601 U.S. at 241. But even where the Fifth Circuit has applied the good faith presumption pre-*Fikre*, it is defeated where the government provides "no controlling statement of future intention, the change in conduct is suspiciously timed, and the defendant continues to defend the challenged behavior." *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1090 (5th Cir. 2023). Again, Defendant Fitzpatrick's revised declaration provides no controlling statement of future intention, Defendants' change in conduct is suspiciously timed, and Defendants continue to defend the practices Plaintiffs challenge. *See* Dkt. 142 at 17–26.

As in *Fikre*, "nothing [Defendants] offer[] here satisfies [the] formidable standard" of proving that there is "no reasonable expectation" that they will not "return to [their] old ways." 601 U.S. at 241, 243. Accordingly, Defendants' voluntary cessation of the challenged conduct does not moot Holt, Reyna, and Martinez's claims.

### 2. Defendants' "Picking Off" of Holt, Martinez, and Reyna Does Not Moot Their Class Action Claims.

Defendants' attempt to pick off Plaintiffs Holt, Reyna, and Martinez as putative class representatives by removing their codes does not moot their claims. Rather, Defendants' conduct underscores that Plaintiffs' claims *must* relate back in the face of litigation tactics intended to sidestep judicial review.

The Fifth Circuit has long recognized that, in class actions, the relation back doctrine prevents Defendants from "picking off" named plaintiffs "to preclude a viable class action from ever reaching the certification stage." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1050 (5th Cir. 1981). In *Zeidman*, the plaintiffs moved for class certification in a securities fraud case, but the district court denied their motion "without prejudice to reassert at such time as additional evidence of numerosity may be filed into the record." *Id.* at 1035. When the plaintiffs later submitted additional evidence of numerosity, the defendants tendered the full amount of damages to the named plaintiffs and moved to dismiss the case as moot. *See id.* at 1036. On appeal, the Fifth Circuit concluded that the class certification motion remained pending at the time of defendants' tender because the district court had not ruled on numerosity and had invited additional evidence on the issue. *See id.* at 1037. Turning to mootness, the court held that while plaintiffs' claims were not transitory, "the result should be no different when the defendants have the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification." *Id.* at 1050.

Here, Defendants were "on notice that the named plaintiff[s] wish[ed] to proceed as a class" and "strategically [sought] to avoid that possibility." *Wilson*, 822 F.3d at 947. While Judge Gilmore declined to consider Plaintiffs' class certification motion "at [that] time" because they did not have counsel, she invited Plaintiffs to raise certification "again at a later, appropriate procedural juncture." Dkt. 32 at 4. Much like the district court's initial refusal to consider all aspects of the class certification motion in *Zeidman*, Judge Gilmore left the door open for Plaintiffs to raise class certification at a later date with counsel. Also mirroring *Zeidman*, Defendants here have complete control over SPD removal, so they can remove Plaintiffs' codes during the pendency of litigation. Thus, Defendants can "prevent[] any plaintiff from presenting claims that avoid[] mootness long enough for a class to be certified," much in the same manner as "a wealthy defendant continually satisfying the monetary claims of individual plaintiffs." *Tellis*, 2020 WL 1249378, at *8; *see also Zeidman*, 651 F.2d at 1051 (collecting cases where a governmental agency's voluntary performance of a specific action demanded in a lawsuit was insufficient to moot the case).

Defendants' voluntary removal of Plaintiffs Holt, Reyna, and Martinez's SPD codes after Plaintiffs filed for and diligently pursued class certification should not moot their claims. The "picking off" exception to mootness applies and their claims relate back to the filing of the Original Complaint.

**C.    Sovereign Immunity Does Not Bar DeLeon, Holt, Martinez, and Reyna's Claims Against Defendants.**

The Court should deny Defendants' attempt to assert sovereign immunity because it rests on their flawed mootness arguments. Relying on their mootness arguments, Defendants argue that "[b]ecause Plaintiff Martinez, DeLeon, Holt, and Reyna's allegations are moot, the allegations are no longer an ongoing violation of federal law under the *Ex parte Young* doctrine." Dkt. 142 at 13. But DeLeon, Holt, Martinez, and Reyna's claims are not moot, *supra* § I.A–B, so the Court should similarly reject Defendants' assertion of sovereign immunity based entirely on the same arguments.

Ordinarily, "sovereign immunity bars private suits against nonconsenting states in federal court." *Book People, Inc. v. Wong*, 91 F.4th 318, 334 (5th Cir. 2024) (quotation omitted). But under the *Ex parte Young* exception to sovereign immunity, a plaintiff can "seek prospective injunctive relief 'against individual state officials acting in violation of federal law.'" *Id.* (quoting *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019)).

In *K.P. v. LeBlanc*, the Fifth Circuit rejected the state defendants' similar attempt to shoehorn mootness into a sovereign immunity argument. 729 F.3d 427, 439 (5th Cir. 2013). After holding the voluntary cessation exception applied, the Fifth Circuit held sovereign immunity did not bar the suit because that argument "would work an end-run around the voluntary-cessation exception to mootness where a state actor is involved." *Id.* The Fifth Circuit's approach aligns with courts across the country that recognize "a threat of recurrence sufficient to render a claim not moot should also be sufficient for the ongoing-violation requirement." *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1263 n.92 (M.D. Ala. 2017) (collecting cases).

If the Court finds the inherently transitory, voluntary cessation, or picking off exceptions apply, then *K.P.* controls and sovereign immunity does not bar those claims. The Court should therefore deny Defendants' assertion of sovereign immunity.

## II.    Plaintiffs Plausibly State Their Due Process Claims.

Defendants argue that the Amended Complaint fails to allege a due process violation because there is no liberty interest at stake, and even if there is, the due process protections in place are constitutionally adequate. Dkt. 142 at 25–34. Both of these arguments ask the Court to revisit its previous holding, an invitation the Court should deny.

### A.    Plaintiffs Allege a Deprivation of Their Liberty Interests.

Plaintiffs' lengthy confinement in severe conditions plainly gives rise to a liberty interest. In their Motion, Defendants repeat many of the arguments this Court already rejected when it previously concluded that Plaintiffs have alleged a liberty interest. Dkt. 70 at 6–7. Defendants offer no reason for this Court to deviate from this conclusion with respect to Plaintiffs' Amended Complaint.

The "touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is . . . the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "District courts should apply a nuanced analysis looking at the length and conditions of confinement on a case-by-case basis to determine whether they give rise to a liberty interest." *Carmouche v. Hooper*, 77 F.4th 362, 367 (5th Cir. 2023). In other words, Courts employ a "sliding scale" approach, in which "truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). Plaintiffs' allegations regarding the severity and duration of their confinement show that a liberty interest is at stake.

### 1.    Plaintiffs Are Incarcerated in Severe Conditions.

Plaintiffs are incarcerated in severely restrictive, inhumane, and dangerous conditions in punitive custody wings. Due to their SPD codes, Plaintiffs remain incarcerated in cells measuring less than 55 square feet for 20–24 hours a day. Dkt. 116 ¶ 120. They receive significantly less out-of-cell time than do individuals in minimum custody, sometimes leaving their cells for as little as a few hours a week. *Id.* ¶ 167. They have faced restrictions on phone calls and are prohibited from receiving contact visits. *Id.* ¶¶ 121–22. Due to frequent lockdowns, Plaintiffs remain stuck in their

cells for weeks or even months without access to recreation, showers, and their own review hearings. *Id.* ¶¶ 121, 128. Tellingly, Defendants do not even acknowledge the amount of time Plaintiffs are confined in their cells on a daily basis in arguing that Plaintiffs have not pled a liberty interest. *See* Dkt. 142 at 25–29.

Plaintiffs also cannot participate in most educational, rehabilitative, and vocational programming because of their SPD codes. Dkt. 116 ¶¶ 141–42. In *Wilkerson v. Goodwin*, the court considered the fact that the plaintiff was "not afforded the same ability to partake in religious or educational opportunity" as those in general population material to finding a liberty interest. 774 F.3d 845, 855 (5th Cir. 2014); *see also Bailey*, 647 F. App'x at 475 (similar). This lack of access to programming negatively affects Plaintiffs' ability to secure parole both by increasing their risk score and decreasing their ability to complete their Individual Treatment Plans. Dkt. 116 ¶ 144. Defendants suggest that, because Plaintiffs are not precluded from parole entirely, they cannot state a claim for a liberty interest. Dkt. 142 at 30. Yet the Fifth Circuit has made clear that parole ineligibility is not required to establish a liberty interest: "The absence of a negative impact on [the plaintiff's] possible release date is not fatal . . . —the CCR in *Wilkerson* also lacked parole ramifications." *Bailey*, 647 F. App'x at 476 (citing *Wilkerson*, 774 F.3d at 855). And here, Plaintiffs have alleged that their SPD codes directly affect their risk scores thereby decreasing the likelihood they will be granted parole.

The conditions in punitive housing wings are also more dangerous than minimum custody wings because they are in a constant state of disorder and disrepair. Plaintiffs' cells are often flooded with raw sewage and feces, contain moldy walls and standing water, experience frequent power and water outages, undergo pest infestations, have poor ventilation and nauseating odors, and have a dangerous lack of temperature control. Dkt. 116 ¶¶ 133–138. Plaintiffs are regularly

subjected to fire and smoke due to disorder on their units. *Id.* ¶ 130. Plaintiffs in G4 also face the constant threat of violence from other individuals incarcerated during their limited out-of-cell time. *Id.* ¶ 131.

In the face of these graphic allegations, Defendants gallingly claim that "these types of conditions are typical of any prison." Dkt. 142 at 30. One should *hope* that is not the case. Nevertheless, whether TDCJ subjects all incarcerated individuals in its control, including those in minimum custody, to these inhumane conditions is a fact dispute that cannot be resolved at this stage.

Defendants point to other cases in which incarcerated individuals failed to articulate a liberty interest in their SPD placements, arguing that Plaintiffs similarly lack a liberty interest. But the allegations in those cases were not nearly as severe or comprehensive as here. *See Daubitz v. Dir., TDCJ-CID*, No. 6:20CV74, 2020 WL 5225678, at *1 (E.D. Tex. July 1, 2020), *report and recommendation adopted sub nom. Daubitz v. Texas*, No. 6:20-CV-74-JDK-KNM, 2020 WL 5203485 (E.D. Tex. Sept. 1, 2020) (finding no liberty interest where petitioner claimed his placement implicated a liberty interest because "he ha[d] been assaulted several times because of the security precaution designator" and because of the mandatory language of A.D. 04.11); *Krebs v. Davis*, No. CV H-16-521, 2017 WL 914997, at *1, 4 (S.D. Tex. Mar. 8, 2017) (finding no liberty interest where petitioner claimed he had a liberty interest related to his SPD solely because it "disqualified him for trusty camp and certain housing"); *Schuff v. Perkins*, No. 9:19-CV-146, 2023 WL 7221345, at *4–5 (E.D. Tex. Nov. 1, 2023) (finding plaintiff did not have a liberty interest in "not receiving an SPD before a disciplinary conviction"); *Lee v. Karriker*, No. CIV.A. 6:08CV328, 2009 WL 2590093, at *9 (E.D. Tex. Aug. 17, 2009) (finding no liberty interest where plaintiff claimed his code resulted in the denial of "housing in a dormitory and a job as a clerk"), *aff'd*, 383 F. App'x 491 (5th Cir. 2010).

These cases show only that certain elements of classification do not amount to "atypical and significant hardship[s]" when considered in isolation. *Wilkinson*, 545 U.S. at 223 (citation omitted). However, the Supreme Court has made clear that the analysis requires looking at the alleged conditions, their nature, and their severity as a whole. *See id.* at 224 ("While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context."). Here, Plaintiffs have made detailed allegations as to a host of specific deprivations they have suffered, rendering their conditions meaningfully more restrictive and severe than those in minimum custody units. Taken together, and particularly given their duration and indefiniteness, the conditions Plaintiffs have alleged tip the balance of the sliding scale in favor of finding a liberty interest.

### 2. Plaintiffs' Confinement in Punitive Custody is Lengthy and Indefinite.

The extreme duration and indefinite nature of Plaintiffs' punitive confinement strongly supports the existence of a liberty interest.

Plaintiffs have spent extremely atypical periods of time in these conditions regardless of their behavior. Plaintiffs Wingfield and Smith have spent 20 and 30 years, respectively, in solitary confinement. Dkt. 116 ¶¶ 56, 59. Plaintiff Gambill has spent over 21 years in punitive confinement, including 14 years in ad seg. *Id.* ¶ 50. Plaintiffs Reyna and Martinez spent 19 and 17 years, respectively, in punitive confinement. *Id.* ¶¶ 52, 54.  By comparison, the vast majority of individuals placed in G4 or G5 are there for disciplinary violations, and are generally promoted to less restrictive housing within 6 to 12 months if they maintain good behavior. *Id.* ¶¶ 123–24. Thus, Plaintiffs are subjected to disciplinary confinement for 20 to 40 times longer than individuals who are placed in G4 and G5 for reasons other than SPD codes. *Id.* Once again, Defendants fail to even engage with the lengthy periods of time Plaintiffs spend in these severe conditions. *Cf.* Dkt. 142 at 25–29.

16

The length of time that Plaintiffs remain stuck in these egregious conditions clearly distinguishes their claims from cases involving much shorter periods of cell restriction that Defendants rely on. *Cf. Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (plaintiff's thirty-day commissary and cell restrictions as punishment did not implicate due process concerns); *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (same).

By contrast, Plaintiffs' allegations of lasting severe conditions, in some cases for *decades*, give rise to a liberty interest. *See*, *e.g.*, *Bailey*, 647 F. App'x at 476–77 (more than 5 years in segregation with brief interruption would implicate liberty interest, whereas 18 to 19 months' segregation would not); *Barnes v. Givens*, 746 F. App'x 401, 402 (5th Cir. 2018) (more than 10 years in administrative segregation could state a liberty interest); *Dillard v. Davis*, No. 7:19-CV-00081-M-BP, 2022 WL 3045747, at *11 (N.D. Tex. June 17, 2022), *report and recommendation adopted*, No. 7:19-CV-00081-M-BP, 2022 WL 3042901 (N.D. Tex. Aug. 2, 2022) (3.5 years of segregation sufficient for due process claim). This extreme duration weighs heavily in favor of finding a liberty interest.

Finally, Plaintiffs remain relegated to these conditions for an indefinite period even after the 10-year mark has come and gone.  Dkt. 116 ¶¶ 50, 53, 56, 59, 109, 116. As in *Wilkerson*, the effectively indefinite nature of Plaintiffs' confinement—left completely to the whims of the UCCs, wardens, and SPDRC—is a significant factor in concluding that a liberty interest arises here. *See* 774 F.3d at 856; *see also Roberts v. Goodwin*, No. CV 13-2834, 2017 WL 4365994, at *2 (W.D. La. Sept. 29, 2017) (recognizing liberty interest in avoiding 4 years of "very limited opportunity for out-of-cell exercise, . . . limited access to books and the prison library," telephone privileges restricted to once a month, and "no opportunity to work," for a "potentially indefinite duration").

In its previous order on Defendants' first Motion to Dismiss, this Court properly weighed the totality of the allegations including Plaintiffs' daily cell-restriction, lack of programming, and their confinement in these conditions for years at a time in concluding that Plaintiffs alleged "a liberty interest in avoiding such classification." Dkt. 70 at 6–7. Based on the severity and duration of the conditions of confinement Plaintiffs have alleged, this Court should again conclude Plaintiffs have sufficiently pled a liberty interest.

## III.    Plaintiffs Plausibly State a Deprivation of Due Process.

Plaintiffs have also sufficiently alleged that Defendants deprived them of constitutionally required procedural protections. In determining the process due to protect a given liberty interest, a court must consider three factors: 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used," and any value from "additional or substitute procedural safeguards;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens" from any "additional or substitute procedural requirement." *Mathews v. Elridge*, 424 U.S. 319, 335 (1976).

Each factor weighs in favor of Plaintiffs. **First,** Plaintiffs have a substantial private interest in removal of SPD codes after 10 years, given the prolonged, indefinite nature of their confinement in conditions significantly harsher than minimum custody housing. **Second,** the meager process TDCJ provides offers no real protection against error and Defendants could provide meaningful review with little additional administrative burden. **Finally,** although the government has an interest in maintaining orderly prisons, that interest recedes here given the long-expired security risks and additional costs of maintaining individuals in unnecessarily restrictive conditions.

A.    **Plaintiffs Have a Substantial Interest in the Meaningful Review of their SPD Codes.**

As discussed above, *infra* § II.A, and as this Court has previously held, Dkt. 70 at 6–7, Plaintiffs have a liberty interest in removal of SPDs after 10 years, given the lengthy and harsh nature of their confinement. That interest is "more than minimal," even in the prison context. *Wilkinson*, 545 U.S. at 225. Again, Plaintiffs' confinement is restrictive, dangerous, and inhumane compared to the vast majority of individuals in TDCJ custody. *See*, *e.g.*, Dkt. 116 ¶¶ 120–37, 167; *infra* § II.A.1. In combination with the extreme length and indefinite nature of Plaintiffs' confinement, *infra* § II.A.2, the conditions Plaintiffs have alleged create a significant private interest.

B.    **Defendants' Procedures Create a Significant Risk of Erroneous Deprivations of Plaintiffs' Liberty Interest.**

This Court also previously held that Plaintiffs have alleged serious deficiencies in Defendants' purported review procedures, sufficient to state a due process violation. Dkt. 70 at 8. At a minimum, to reduce the risk of erroneous deprivation, individuals must be given notice and an opportunity to be heard by the reviewing body before a prison administration deprives them of a liberty interest. *See Wilkinson*, 545 U.S. at 228–29 (citing *Hewitt v. Helms*, 459 U.S. 460 (1983) (superseded by statute on other grounds)). In *Wilkinson*, the Supreme Court went further, characterizing this second requirement as "a fair opportunity for rebuttal." *Id.* at 226. Further, in *Wilkerson*, the Fifth Circuit affirmed the district court's findings that, even though the plaintiff was afforded periodic reviews, the reviewers' "rote repetition of the reason for the inmates continued confinement as being the same reason they were initially placed in lockdown effectively eliminates any possibility of release, regardless of their current situation and behavior while in lockdown." 774 F.3d at 856. There, the review provided did not constitute meaningful process, as "[t]he original reason for placement" in heightened-security housing "can never change; thus

plaintiffs' current situation . . . is static, with no hope of release other than by death or release from prison entirely." *Id*.

Under these principles, the SPD process is inadequate at every turn. While A.D. 04.11 purports to offer annual SPD review hearings, these hearings are far from guaranteed. Most Plaintiffs have had SPD reviews only rarely—some only once or twice over many years despite requesting hearings and filing grievances. Dkt. 116 ¶¶ 77–80. As of the Amended Complaint's filing, Plaintiff Spencer has never had an SPD review hearing, despite repeated requests. *Id.* ¶ 80.

When hearings are conducted, they fall well short of the requirements of due process. Defendants frequently fail to provide notice of review hearings or prevent Plaintiffs from even attending, instead conducting rote reviews in absentia. *See, e.g., id.* ¶ 77 (Reyna). Plaintiff Smith was never allowed to attend a UCC SPD review hearing, and, the few times his SPD was reviewed in absentia, he only learned of the review after it was completed. *Id.* ¶ 80.

Even when one is lucky enough to get an SPD review, Defendants almost never provide Plaintiffs the "opportunity to present [their] views to the prison official" who is the relevant decisionmaker. *Hewitt*, 459 U.S. at 476. Plaintiff Gulley was only allowed to attend his single SPD review telephonically, and was prohibited from offering any statement. Dkt. 116 ¶ 79. Statements of reviewers confirm the meaninglessness of the reviews. The Chairperson of Plaintiff Reyna's first UCC hearing told him, "I don't care how long you do, we'll never forget an assault on one of our own." *Id.* ¶ 100. Similarly, a UCC member told Plaintiff Gambill, "We most likely will never vote to remove an SPD code." *Id.* ¶ 112.

That the review hearings are meaningless is evident from the written justifications provided. Defendants continue to recycle the original incident to rationalize the maintenance of SPD codes regardless of a person's rehabilitation efforts over the 10-plus years. This is despite TDCJ's own

policy, which states that it may only retain codes for more than ten years based on an "immediate security risk" or "extraordinary circumstances." Dkt. 116 ¶¶ 66, 67, Ex. 1. Nevertheless, Defendants often *only* use the underlying incident as justification: noting for example the "nature of the incident," "seriousness of the incident and poor institutional adjustment," "seriousness of the offense," or "seriousness and severity of the incident as well as totality of the subject's history." *Id.* ¶ 105. Plaintiffs are never told how the underlying incident constitutes "extraordinary circumstances" despite being decades old, or whether any criteria exist to make the UCC change its assessment. *Id.* ¶ 98. Without any objective guidelines and criteria for UCC members to follow, the reviews fail to take into account dynamic factors impacting a person's security risk such as Plaintiffs' rehabilitation efforts and good behavior over the years. Accordingly, these denials are arbitrary and unprincipled. *See Dillard*, 2022 WL 3045747, at *12–13 (N.D. Tex. June 17, 2022) (finding housing review that "each time document[ed] the same two-word justification: 'Staff Assaultive'" and "never provided any additional findings or explanation" was a "'sham,' 'meaningless review,' with 'stale justification'" amounting to "effectively indefinite" confinement" sufficient to allow a jury to decide).

Finally, when UCC members *do* recommend removing an SPD code, Plaintiffs repeatedly face reversal by a warden or SPDRC with no semblance of a "fair opportunity for rebuttal." *Wilkinson*, 545 U.S. at 226. Former Director Bryant made clear in multiple cases that he would never approve an SPD code removal. Dkt. 116 ¶¶ 101–02. After the UCC chair endorsed removing Plaintiff Martinez's code, Warden Moore (an SPDRC member) reversed the recommendation, stating, "No. Hell no." *Id.* ¶ 103. When Plaintiff Reyna's SPD removal was approved for a second time, the SPDRC reversed the decision without notice. *Id.* ¶ 106. The SPDRC also reversed Plaintiffs Martinez, Holt, and Gambill's code removals without notice. *Id.* ¶¶ 107, 108, 114; *Cf.*

*Wilkinson*, 545 U.S. at 226 ("Although a subsequent reviewer may overturn an affirmative recommendation for OSP placement, the reverse is not true.").

Taken together, these deficiencies make the risk of erroneous deprivation extremely high because Defendants have no criteria for making SPD decisions and Plaintiffs are left in punitive detention indefinitely as Defendants continually shift the goalposts on when and how they can have their SPDs removed. Plaintiffs have therefore stated a deprivation of due process under *Mathews*, *Wilkinson*, and *Wilkerson*.

Defendants insist that the TDCJ grievance process "decreases the likelihood of erroneous deprivation," Dkt. 142 at 33, but TDCJ's grievance process provides far less protection than Defendants suggest. The *Wilkinson* Court stated that "invit[ing] the inmate to submit objections prior to the final level of review" supports the adequacy of the process surrounding a prison's deprivation of a liberty interest because such a "rebuttal opportunity safeguards against the inmate's being . . . singled out for insufficient reason." 545 U.S. at 226.

Here, TDCJ's ordinary grievance process is in no way integrated into the opaque SPD review before the SPD review reaches its final level, nor is a prisoner ever "invited" to voice objections. *Cf. id.* Grievances regularly go unanswered or ignored, and if reviewed, are overseen by officials with a vested interest in upholding their own prior SPD decisions. Indeed, the Regional Director Defendants, who are members of the SPDRC, are responsible for reviewing all Step Two grievances in their regions, and wardens of each prison both approve SPD removals and review Step One grievances. Dkt. 116 ¶ 63. Moreover, Plaintiffs regularly receive no notice of their final SPD review decision, even when the SPDRC reverses a UCC decision to remove their codes. *Id.* ¶¶ 106–08. Without notice of such an adverse decision which Defendants themselves identify as key to due process, Dkt. 142 at 31–32, Plaintiffs have no way to meaningfully object. This is

critical because individuals must file a Step 1 grievance within 15 days of an incident. Without notice of a decision, Plaintiffs lack access to the very process Defendants argue serves as a procedural safeguard. The grievance process provides no necessary procedural protections and is no more than a rubber stamp on a sham procedure.

Defendants' reliance on *Schwarzer v. White* in support of this argument is also misplaced. There, this Court found TDCJ's grievance process was an "adequate post-deprivation opportunity to challenge the *confiscation of property*." *Schwarzer v. White*, No. 6:18-CV-00029, 2023 WL 4151699, at *7 (S.D. Tex. Mar. 29, 2023) (emphasis added). That case has no bearing on what process is adequate when it comes to a *deprivation of liberty*, as is at issue here.

Defendants also repeatedly cite the opinion in *Striz v. Collier*, No. 3:18-CV-202, 2020 WL 7868102, at *1 (S.D. Tex. Nov. 24, 2020), *aff'd*, No. 20-40878, 2022 WL 1421834 (5th Cir. May 5, 2022). But that case was at the summary judgment stage, where the plaintiff's burden is higher than the instant motion to dismiss. Indeed, at the motion to dismiss stage in that case, the court noted that Defendants failed to "comprehensively engage the facts alleged by Plaintiff, including his allegation that he has been confined in administrative segregation for 17 years with perfunctory hearings that offer no realistic possibility of release to general population," nor "whether extraordinary circumstances [were] present." *Striz v. Collier*, No. CV 3:18-0202, 2019 WL 4103067, at *2 (S.D. Tex. Aug. 29, 2019). Similarly, here, Plaintiffs have sufficiently alleged deprivations of their liberty interest with insufficient procedural protections at each step in the process, requiring additional record development to resolve the fact issues at hand.

**C.   Any Government Interest in Decades-Long Punitive Confinement Does Not Outweigh Plaintiffs' Liberty Interest.**

Although courts grant prison administrators a degree of latitude in the day-to-day management of prisons, "federal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). Indeed, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution" and "'[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.'" *Id.* (quoting *Procunier*, 416 U.S. at 405–06). Therefore, "the recognized need to afford prison officials wide latitude to maintain safety and order in the prisons they manage must coexist with constitutional dictates." *Wilkerson*, 774 F.3d at 852.

Here, the government interest in maintaining safe prisons has little to do with Defendants' decisions to maintain SPD codes for more than a decade. By definition, it has been at least 10 years since the incidents underlying Plaintiffs' SPD placements. In the intervening years, Plaintiffs have largely been model prisoners. Plaintiff Gambill has not had any major disciplinary cases in 21 years, and serves as a Life Coach for others in TDCJ. Dkt. 116 ¶ 50. Plaintiff Wingfield has had no major disciplinary cases in 20 years, and only a single verbal reprimand in 2011. *Id*. ¶ 56. Plaintiff Gulley had only one major disciplinary case since receiving his code, and the case was subsequently overturned by TDCJ. *Id.* ¶ 57. Plaintiff Smith has had no major disciplinary cases since 2002. *Id.* ¶ 59. Other Plaintiffs have similar exemplary records. These histories belie any claim that keeping these individuals in punitive housing more than a decade after their underlying incidents is necessary for institutional security. If anything, Plaintiffs' classification decisions only divert scarce resources away from more pressing security needs.

In considering Defendants' broad assertions in their previous Motion to Dismiss that they provided due process protections, this Court found that "Plaintiffs specifically allege that some or

all of them did not receive notice or an opportunity to be heard." Dkt. 70, at 7–8. That conclusion remains true with respect to Plaintiffs' Amended Complaint. Plaintiffs' extensive allegations regarding their significant liberty interest and the inadequacies of Defendants' SPD Policy are more than sufficient to meet the standards of Rule 8 and 12(b)(6). Plaintiffs have therefore stated a due process violation.

## IV.    Plaintiffs' Claims Are Timely.

The statute of limitations in § 1983 cases is derived from the "law of the State in which the cause of action arose" as provided by the statute of limitations for "personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). For § 1983 cases arising in Texas, "the applicable limitations period is two years." *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018) (citing Tex. Civ. Prac. & Rem. Code § 16.003(a)). While state law supplies the relevant limitations period, federal common law governs when a § 1983 claim accrues. *See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017), *as revised* (Mar. 13, 2017).

The original Plaintiffs filed their claims on March 31, 2021. The new Plaintiffs filed their claims on May 6, 2024. Both sets of claims are timely. Defendants contend that Plaintiffs' claims accrued when they first "had knowledge of their injuries." Dkt. 142 at 25. In Defendants' view, Plaintiffs' injuries accrued one time and one time only: the first moment they knew of their SPD codes and the associated consequences, and had an inadequate review. *Id.* at 22–25. Defendants are mistaken.

**First**, a due process claim alleging atypical prison conditions is a continuing violation which cannot accrue after a single discrete act, but rather continues to accrue until the harm expires. **Second**, even if Plaintiffs' claims are not continuing violations, Plaintiffs' claims for injunctive relief are timely because they have been denied due process within two years of filing their claims and seek forward looking relief.

### A.    Plaintiffs' Claims Are Timely Because Defendants' Unconstitutional Actions Inflict a Continuing Violation.

Plaintiffs plausibly alleged a continuing violation with some of the challenged conduct occurring during the limitations period, making their claims timely. "The continuing violation doctrine is a federal common law doctrine governing accrual[,]" which applies to "claims brought under section 1983." *Heath*, 850 F.3d at 739–40. The doctrine distinguishes between discrete acts, which accrue at a fixed moment in time, and continuing violations, which continue to accrue for as long as the related acts continue. *Id.* at 740. In cases of continuing violations, a claim is timely so long as "some of the continuous conduct occurred during [the limitations period]." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117–18 (2002)).

In *Morgan*, the Supreme Court described a continuing violation in the hostile work environment context under Title VII. 536 U.S. at 115–21. There, the Court distinguished discrete acts, such as "termination, failure to promote, [or] denial of transfer," from hostile environment claims where "[t]heir very nature involves repeated conduct" and "cannot be said to occur on any particular day." *Id.* at 114–15. Hostile environment claims require courts to look to "all the circumstances," including, among others, "the frequency of the discriminatory conduct [and] its severity . . . ." *Id.* at 116 (quotation omitted). Given the nature of the claim, the Court held a defendant is liable for actions that occur outside the limitations period so long as "an act contributing to the claim occurs within the filing period." *Id.* at 117.

Plaintiffs are akin to the Respondent in *Morgan* whose hostile environment claim was "based on the cumulative effect of individual acts" that "cannot be said to occur on any particular day." *Id.* at 115. As discussed above, determining when and whether a liberty interest has arisen, and the weight of such interest, requires "a nuanced analysis looking at the length and conditions of confinement on a case-by-case basis." *Carmouche*, 77 F.4th at 366–67. Further, just as "a single act of harassment may not be actionable on its own," *Morgan*, 536 U.S. at 115, neither is any one prison condition, *Wilkinson*, 545 U.S. at 224 ("While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context.").

Defendants would have the Court freeze the accrual period at a fixed moment in time, when Plaintiffs first learned of the SPD code, knew generally about the conditions in punitive custody, and did not receive a hearing. Dkt. 142 at 22–25. But treating accrual as a single discrete act misrepresents Plaintiffs' validated theory based on the "cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant." *Heath*, 850 F.3d at 737 (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)). Therefore, "the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a claim expire as to that first act[.]" *Id.* (quotation omitted). Defendants' theory of accrual would force Plaintiffs to sue before they even have a claim, a result the Fifth Circuit expressly rejected in *Heath*. 850 F.3d at 737; *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (Posner, J.) ("[W]e don't *want* the plaintiff to sue before the violation is complete.").

Defendants' comments on the individual Plaintiffs exposes the flaws in their theory of accrual. For example Defendants state that Plaintiff Reyna "had knowledge of the claims in the lawsuit, the conditions of confinement of a 'G4' inmate, and the denial of hearings since at least

27

2006, then every year until 2016, five to fifteen years before the filing of this lawsuit." Dkt. 142 at 23. But given the "nuanced analysis" required of prisoner due process claims, taking into account both the "length and conditions of confinement," *Carmouche*, 77 F.4th at 366–67, Defendants' view would force Reyna to sue immediately after the denial of each hearing, likely before a liberty interest even attached—the exact result the Supreme Court in *Morgan* and the Fifth Circuit in *Heath* sought to avoid.

Defendants next cite *Lee v. Karriker*, 383 F. App'x 491, 492 n.3 (5th Cir. 2010), but that unreported one-page opinion deals with an entirely separate issue—when a claim accrues where the plaintiff challenges the mere *imposition* of the SPD code itself. *Id.* at 492. Here, Plaintiffs challenge their "lengthy and effectively indefinite confinement" in punitive conditions due to continual deprivations of due process at each stage. Dkt. 116 ¶¶ 167, 170–72.

Because Plaintiffs' liberty interest manifests over time, rather than at a single moment, Plaintiffs' claims are timely so long as "some of the continuous conduct occurred during [the limitations period]." *Id.* (citing *Morgan*, 536 U.S. at 117–18). Here, Plaintiffs plausibly allege that Defendants continued to violate their due process rights in the tolling period. The original Plaintiffs, who filed suit on March 31, 2021, allege that Defendants continued the challenged conduct within two years before that filing. For example, in May 2019, Plaintiff Gambill had a UCC review he could not attend and for which he could not submit any evidence. Dkt. 116 ¶ 113. Similarly, in 2020, Plaintiff Gambill had a UCC review after which an assistant warden told him that Defendant Bryant "isn't approving *any* SPD codes" for removal. *Id.* Defendants also retained Plaintiff Reyna's SPD code without process in July of 2020. *Id.* ¶ 106. And in 2021, just before filing this lawsuit, Plaintiff DeLeon had a UCC review which recommended removal, only to have

that decision reversed, without him present, because Defendant Bryant "wasn't removing any SPD Codes." *Id.* ¶ 102; *see also id.* ¶ 103 (Martinez); Dkt. 49 ¶ 18 (Holt).

Defendants' challenged conduct continued to occur within the limitations period for the new Plaintiffs, who filed suit on May 24, 2024. Plaintiff Gulley had his first and only SPD "review" in 2023. Dkt. 116 ¶ 57. At the review, Gulley was not allowed to speak and was told he "wasn't deemed worthy of being removed from restrictive housing." *Id.* Similarly, Plaintiff Spencer retained his code after his release, only to be placed back in punitive housing because of his SPD code in July 2022, with no SPD review despite the underlying incident being more than a decade old. *Id.* ¶¶ 58, 80. Plaintiffs Wingfield and Smith have been in restrictive housing for decades without review and continue to face these severe conditions because of their SPD codes. *Id.* ¶¶ 56 (Wingfield), 59 (Smith).

Because Plaintiffs allege continuing violations wherein the challenged conduct continued to occur within two years of filing suit, their claims are timely.

### B. Plaintiffs' Claims for Injunctive Relief Are Timely Even Under Defendants' Erroneous Theory of Accrual.

Even accepting Defendants' incorrect theory of accrual—that it occurs after a single discrete act—Plaintiffs' claims are timely. A procedural due process claim "consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). And "the claim is 'complete,'" meaning it cannot accrue until, "the State fails to provide due process.'" *Id.* (quoting *Zinermon*, 494 U.S. at 126). As Defendants point out, a § 1983 cause of action may accrue "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski v. City of Houston* (*Piotrowski II*), 237 F.3d 567, 576 (5th Cir. 2001). However, "each [allegedly unlawful] act starts a new clock." *Morgan*, 536 U.S. at 113.

Plaintiffs' claims for prospective injunctive relief are timely because a procedural due process violation occurred within the limitations period. The original Plaintiffs plausibly allege Defendants provided constitutionally inadequate reviews, or no reviews at all, within the limitations period prior to filing in March of 2021. *See, e.g.*, Dkt. 116 ¶¶ 113 (Gambill), 106 (Reyna), 102 (DeLeon), 103 (Martinez); *see also* Dkt. 142 at 23 (listing reviews within limitations period). The same is true for the new Plaintiffs, who filed suit on May 24, 2024. *See, e.g.*, Dkt. 116 ¶¶ 57 (Gulley), 58 & 80 (Spencer), 56 (Wingfield), 59 (Smith).

Defendants argue that "Plaintiffs had knowledge of their injuries far before the filing of this suit." Dkt. 142 at 25. Even if the due process violations here are discrete acts rather than continuing violations, Defendants improperly cherry-picked an inaccurate accrual date. Defendants "treat[] accrual of a claim as a once-and-for-all proposition," but "[a] series of wrongful acts [] creates a series of claims." *Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U, Will Cnty., Ill.*, 46 F.3d 682, 685–86 (7th Cir. 1995) (Easterbrook, J.); *see generally Flynt v. Shimazu*, 940 F.3d 457, 462–63 (9th Cir. 2019) (O'Scannlain, J.) (collecting cases from Supreme Court, Sixth Circuit, and Seventh Circuit). Each time Defendants enforce the SPD Policy against Plaintiffs, they inflict a new injury, and the statute of limitations starts again. *See Morgan*, 536 U.S. at 113. Therefore, even if *a* claim accrued when Defendants say it did, *a new claim* accrued within the limitations period, making Plaintiffs' claims timely. Because Plaintiffs allege Defendants deprived them of a liberty interest without constitutional due process within the limitations period, Plaintiffs' claims for prospective injunctive relief are timely.

## V.    Plaintiffs Properly Incorporated Their More Definite Statements By Reference.

Plaintiffs properly incorporated their more definite statements by reference. "The Federal Rules of Civil Procedure specifically allow for incorporation by reference in supplemental pleadings." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006).  As in *Carroll*,

incorporation is proper here because this case has a simple pleading history, and there is no indication here that Defendants are "confused about the nature and extent of the incorporation." *Id.* To the contrary, after objecting to their inclusion, Defendants repeatedly *rely* on Plaintiffs' more definite statements in their own Motion. *See* Dkt. 142 at 22–23, 32. Additionally, Defendants' reliance on *Muttathottil v. Gordon H. Mansfield*, 381 F. App'x 454 (5th Cir. 2010) is misplaced. In that case, the plaintiff attempted to incorporate by reference an administrative decision from "a separate action heard before a different court" without even attaching it to the complaint. *Id.* at 457. Here, Plaintiffs merely incorporate their prior more definite statements from *this* case. Therefore, Plaintiffs properly incorporated their more definite statements.

## VI.    Defendants' Motion to Dismiss Plaintiffs' Claims for Injunctive Relief is Premature.

Finally, Defendants reprise their argument that Plaintiffs' request for injunctive relief should be dismissed because Plaintiffs "are unlikely to prevail on the merits." Dkt. 142 at 36. As this Court previously recognized, "[t]he relief, if any, that Plaintiffs obtain will be determined when, and if, they ultimately prevail on the merits of their claims. As such, Defendants' request to dismiss Plaintiffs claim for injunctive relief is premature." Dkt. 70 at 5 n.2.

The same holds true today. Should this Court conclude TDCJ's SPD Policy inflicts an ongoing violation of Plaintiffs' due process rights, it retains the power to craft injunctive relief consistent with the PLRA to remedy the constitutional violation.

CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to deny Defendants' Amended Motion to Dismiss and allow this case to proceed to the class certification stage.

Dated: July 31, 2024

Respectfully submitted,

**BECK REDDEN LLP**

By: /s/ *Alex B. Roberts*
    Alex B. Roberts
    State Bar No. 24056216
    Federal Bar No. 865757
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile:  (713) 951-3720

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

**OF COUNSEL:**

    Maryam Ghaffar
    Southern District No: 3710605
    State Bar No: 24120847
    mghaffar@beckredden.com
BECK REDDEN LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile:  (713) 951-3720

    **TEXAS CIVIL RIGHTS PROJECT**
    Dustin Rynders
    Texas State Bar No. 24048005
    Southern District No. 685541
    dustin@texascivilrightsproject.org
    Christina Beeler
    Texas State Bar No. 24096124
    Southern District No. 3695627
    christinab@texascivilrightsproject.org
    Randall Hiroshige
    Texas Bar No. 24124299
    Southern District No. 3708688
    randy@texascivilrightsproject.org
    Molly Petchenik
    Texas Bar No. 24134321
    molly@texascivilrightsproject.org
    Travis Fife
    Texas Bar No. 24126956
    Southern District No. 3734502
    travis@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis
Austin, Texas 78741
Telephone: 512-474-5073

**ATTORNEYS FOR PLAINTIFFS**

32

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served in accordance with the Federal Rules of Civil Procedure on the 31st day of July 2024, via CM-ECF to all attorneys of record.

*/s/ Maryam Ghaffar*
Maryam Ghaffar

**CERTIFICATE OF WORD COUNT**

I hereby certify that this Response complies with Court Procedure 16(c) and the Court's extension of the word limit to 10,000 words for purposes of this Response. The total word count, not including those parts exempted under Rule 16(c), is 9,959.

*/s/ Maryam Ghaffar*
Maryam Ghaffar