United States District Court
Southern District of Texas
**ENTERED**
March 31, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CURTIS ALLEN GAMBILL, JESSE WADE HOLT, MARK ANTHONY REYNA, EDDIE RAY FOWLER, PRESCILLIANO MARTINEZ, JUAN ANTONIO DE LEON, RAYMOND WINGFIELD, BRITNEY GULLEY, JERROD SPENCER, and RICKY SMITH, | § § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:21-CV-01076 |
| BRYAN COLLIER, STEPHEN BRYANT, TARA BURSON, JOHN WERNER, ASHLEY L. HASTINGS, VIRGINIA S. STEVENS, RODGER BOWERS, ROCKY N. MOORE, DANIEL DICKERSON, CAROL MONROE, MARICIA JACKSON, ELBERT HOLMES, LONNIE TOWNSEND, JERRY SANCHEZ, BOBBY LUMPKIN, TIMOTHY FITZPATRICK, MELISSA BENNETT, and ERIC GUERRERO, | § § § § § § § § § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs are inmates in the Texas Department of Criminal Justice ("TDCJ"). On March 30, 2021, they filed suit under 42 U.S.C. § 1983 against Defendants, TDCJ employees and officials. Plaintiffs allege that they have been placed in restrictive-custody classifications without due process and in violation of their equal-protection rights. They seek injunctive and declaratory relief.

Since bringing suit, however, some of the original Plaintiffs have been released from custody, and others have had their restrictive-custody classifications removed. The original Plaintiffs and several newly added Plaintiffs subsequently moved to certify a class, (Dkt. No. 107), and filed an Amended Complaint, (Dkt. No. 116).

Defendants opposed the Class-Certification Motion, (*see* Dkt. No. 107 at 23), and moved to dismiss the Amended Complaint, (Dkt. No. 142). For the reasons below, the Court **GRANTS in part** and **DENIES in part** Defendants' Amended Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) & 12(b)(6), (*id.*), and **GRANTS** Plaintiffs' First Amended Motion to Certify a Class and Appoint Class Counsel, (Dkt. No. 107).

## I.    BACKGROUND

In 2003, the TDCJ adopted a policy authorizing the use of Security Precaution Designators ("SPD Code"). (Dkt. No. 116 at 11). If an inmate receives an SPD Code on their record, they cannot live in minimum-custody housing but must remain in high-security, restrictive housing or solitary confinement. (*Id.* at 2); (Dkt. No. 107-3 at 3–5, 10, 15–16). Receiving an SPD Code therefore means that an inmate is subject to enhanced supervision, restrictive housing, and other constraints. (Dkt. No. 107-3 at 3–5, 10–11, 15–16).

Under the TDCJ policy, (Dkt. No. 107-3), an SPD Code must be placed in an inmate's record if (among other things) the inmate has (1) been sentenced to life without parole; (2) engaged in an escape, hostage taking, or staff assault resulting in serious injury; or (3) defeated a restraining device, (*id.* at 5–7, 15); (*see also* Dkt. No. 116 at 11–12).

The policy includes procedures for an initial review of the SPD Code assignment and an opportunity for annual review. (*See* Dkt. No. 107-3 at 5–11).

Because of their SPD Codes, Plaintiffs are all classified as G-4 inmates. (*See* Dkt. No. 116 at 11, 14–20). A G-4 classification entails much greater restriction than typical TDCJ confinement. G-4 inmates, for example, are confined in their cells for 20 to 24 hours a day and often for 22 to 24 hours each day. (*Id.* at 2). Their housing units have unlivable conditions, including intolerable temperatures, inadequate ventilation, power and water outages, clogged or overflowing toilets, exposure to raw sewage, pest infestations, and other issues. (*Id.* at 2, 41–42). Restrictions on their access to prison jobs, rehabilitation programs, and educational, vocational, and religious activities also eliminate their prospects for parole. (*Id.* at 14, 16, 42–46). And according to Plaintiffs, they have endured these conditions 20 to 40 times longer than other inmates. (*Id.* at 51).

Plaintiffs allege that they were provided no advance notice of the policy and were not informed that SPD Codes had been placed on them until after the fact. (*See id.* at 14, 21–22, 31, 47–48, 52). Plaintiffs contend that they received no hearing and were not given an opportunity to be heard, present evidence, or dispute their SPD Code placement. (*Id.* at 2, 13, 15, 18–21, 24–26, 31–35, 52). Each Plaintiff alleges that they requested a hearing for reconsideration of their SPD Code, but many served between 10 and 15 years of confinement before receiving their first SPD hearing. (*Id.* at 13–16, 23–26, 31).

Because of these conditions, Plaintiffs have sued Defendants for declaratory and injunctive relief, arguing that Defendants violated their rights under the Due Process Clauses of the Fifth and Fourteenth Amendments. (*See id.* at 50–56). Plaintiffs separately

seek to certify a class of "[a]ll individuals incarcerated by the Texas Department of Criminal Justice with Security Precaution Designators ES, HS, or SA for whom 10 or more years have passed since the incident for which the code was placed." (*Id.* at 46).

During this litigation, however, several Plaintiffs have had their SPD Codes removed. For example, Plaintiff Jesse Wade Holt had his SPD Code removed on February 5, 2024. (Dkt. No. 142-1 at 2). Plaintiff Mark Anthony Reyna had his SPD Code removed on March 27, 2024. (*Id.* at 3). And Plaintiff Prescilliano Martinez had his SPD Code removed on June 15, 2023. (*Id.*). Likewise, Plaintiff Juan Antonio De Leon is no longer in TDCJ's custody and thus no longer subject to the SPD Codes at issue. (*Id.*).

Based on these facts, Defendants now move to dismiss this case on mootness and other grounds. (Dkt. No. 142). Plaintiffs oppose the motion. (Dkt. No. 146).

## II.    LEGAL STANDARDS

### A.    MOTION TO DISMISS

#### 1.    Rule 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, defendants may move to dismiss for "lack of subject-matter jurisdiction." When considering a motion to dismiss under Rule 12(b)(1), a court must "accept the complaint's well-pleaded factual allegations as true." *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021). Dismissal for lack of subject-matter jurisdiction is appropriate when the plaintiff does not "plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217, 141 S.Ct. 740, 749, 209 L.Ed.2d 33 (2021); *Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021). "For a 12(b)(1)

motion, the general burden is on the party asserting jurisdiction." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021).

"When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, LLC v. Becerra*, 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)).

## 2.   <u>Rule 12(b)(6)</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than . . . 'labels and conclusions . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965). "The defendant, as the moving party, bears the burden of proving that no legally cognizable claim for relief exists." *Flores v. Morehead Dotts Rybak, Inc.*, No. 2:21-CV-00265, 2022 WL 4740076, at *2 (S.D. Tex. Sept. 29, 2022) (citing 5B Charles Alan Wright et al., Federal Practice and Procedure § 1357 (3d ed.)).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021). The court must evaluate whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim to relief that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. at 1965, 1974).

### B.    MOTION FOR CLASS CERTIFICATION

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979)). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with

Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)).

Rule 23 of the Federal Rules of Civil Procedure provides four threshold requirements for a class action to be certified: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023); Fed. R. Civ. P. 23(a). Numerosity means that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Commonality involves cases where "questions of law or fact [are] common to the class." Fed. R. Civ. P. 23(a)(2). Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). And adequacy of representation means that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Proving these four prerequisites, however, is not enough. A plaintiff must also establish one of three class types. *See* Fed. R. Civ. P. 23(b). The first class type allows certification when there is a risk of "inconsistent or varying adjudications with respect to individual class members" or adjudications that "would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(A)–(B). The second class type permits class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). And the third class type authorizes certification when "the

questions of law or fact common to class members predominate over any questions affecting only individual members" so that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, Plaintiffs seek to establish the second class type. This second type of class certification "requires common behavior by the defendant toward the class." *Yates v. Collier*, 868 F.3d 354, 366 (5th Cir. 2017) (quoting *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012)). It has three requirements: "(1) 'class members must have been harmed in essentially the same way'; (2) 'injunctive relief must predominate over monetary damage claims'; and (3) 'the injunctive relief sought must be specific.'" *Id.* at 366–67 (quoting *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007)). The third element (i.e., the specificity element) for this class type "requires plaintiffs to 'give content' to the injunctive relief they seek 'so that final injunctive relief may be crafted to describe in reasonable detail the acts required.'" *Id.* at 367 (some internal quotations omitted) (quoting *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 848 (5th Cir. 2012)).

Generally, "[i]t is the party seeking certification who bears the burden of establishing that the requirements of Rule 23 have been met." *Elson*, 56 F.4th at 1006 (quoting *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 253 (5th Cir. 2020)). But "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350, 131 S.Ct. at 2551. Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original).

8

As a result, when considering motions for class certification, courts "must rigorously consider both Rule 23(a)'s prerequisites and the Rule 23(b) class type." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 546 (5th Cir. 2020) (footnotes omitted). This rigorous analysis "requires a court to look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law.'" *McWhorter v. Serv. Corp. Int'l*, No. 4:22-CV-02256, 2024 WL 4165074, at *8 (S.D. Tex. Sept. 11, 2024) (quoting *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020)). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S.Ct. 1184, 1195, 185 L.Ed.2d 308 (2013). "[T]he obligation of a district court to conduct a rigorous analysis of Rule 23's requirements . . . is not dispensed with by the parties' stipulation to certification or failure to contest one or more of Rule 23's requirements." *Ward v. Hellerstedt*, 753 F.App'x 236, 244 (5th Cir. 2018) (per curiam). "[T]he court [is] bound to conduct its own thorough [R]ule 23(a) inquiry." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002).

More particularly, as part of this rigorous analysis, a court must (1) "detail with specificity its reasons for certifying"; (2) "explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses, articulating why the issues are fit for classwide resolution"; (3) "respond to the defendants' legitimate protests of individualized issues that could preclude class treatment"; and (4) "stay close to the facts and law of the case, spurning reliance on generalizations about what types of disputes may be fit for a class." *Chavez*, 957 F.3d at 546.

## III.    DISCUSSION

The Court is tasked with addressing two motions: (1) Plaintiffs' Motion to Certify a Class, (Dkt. No. 107); and (2) Defendants' Motion to Dismiss, (Dkt. No. 142).  The Court examines each in turn.

### A.    PLAINTIFFS' MOTION TO CERTIFY A CLASS

The Court begins with Plaintiffs' class-certification motion.  Plaintiffs seek to certify a class comprising "[a]ll individuals incarcerated by the Texas Department of Criminal Justice with Security Precaution Designators ES, HS, or SA for whom 10 or more years have passed since the incident for which the code was placed."  (Dkt. No. 107 at 5).  This class satisfies both the threshold requirements under Rule 23(a) and the class-type requirement of Rule 23(b).

#### 1.    Rule 23 Threshold Requirements

To begin, Rule 23 provides four threshold requirements for a class action to be certified: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation."  *Elson*, 56 F.4th at 1006; Fed. R. Civ. P. 23(a).  All four prerequisites exist here.

##### a.    Numerosity

First, "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  To satisfy this numerosity prerequisite, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members."  *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).  But "the actual number of class members is [not] the determinative question."  *Id.*

Instead, "(t)he proper focus (under Rule 23(a)(1)) is . . . on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Id.* (quoting *Philips v. Joint Legis. Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981)).   As a result, courts consider several other facts when determining numerosity, including: (1) "the geographical dispersion of the class"; (2) "the ease with which class members may be identified"; (3) "the nature of the action"; and (4) "the size of each plaintiff's claim." *Id.* (first citing *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980); and then citing 7 Charles Alan Wright et al., Federal Practice and Procedure § 1762, at 600–03 (1st ed. 1972)).   "[T]he inclusion of future members in the class definition [is also] a factor to consider in determining if joinder is impracticable." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000).

Plaintiffs' Complaint identifies 1,484 inmates who currently have SPD Codes, almost 500 of whom have had these designations for more than 10 years.   (Dkt. No. 116 at 13); (*see also* Dkt. No. 107-4 at 3); (Dkt. No. 107 at 7).   Plaintiffs all seek the same relief— namely, the removal of the SPD Codes and a meaningful review process.   (*See* Dkt. No. 116 at 55–56).   And there is an "indeterminate future stream of class members who will suffer the same injury, absent injunctive relief, given that Defendants will continue enforcing the challenged SPD policies and engaging in the challenged practices."   (Dkt. No. 107 at 14).   Based on these facts, Plaintiffs have satisfied the numerosity requirement.

### b.   Commonality

Second, "there are questions of law or fact common to the class."   Fed. R. Civ. P. 23(a)(2).   "Commonality requires the plaintiff to demonstrate that the class members

'have suffered the same injury.'" *Dukes*, 564 U.S. at 349–50, 131 S.Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982)). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* at 350, 131 S.Ct. at 2551. Rather, this means that the legal claims of the class "depend upon a common contention" that is "capable of classwide resolution" so that the answer to the contention "resolve[s] an issue that is central to the validity of each one of the claims in one stroke." *Id.*

All class members here are subject to SPD Codes, and they raise the same or similar contentions. They specifically challenge the same TDCJ policy that lays out the procedures for assigning and maintaining those classifications, (Dkt. No. 107-3), and they raise common questions of fact as to whether their conditions of confinement under SPD Codes impose hardships greater than the normal incidents of prison life and whether they have at stake a constitutionally protected liberty interest, (Dkt. No. 107 at 15–16). Accordingly, the Plaintiffs' putative class satisfies the commonality requirement.

c.   Typicality

Third, "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality generally "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Angell v. GEICO Advantage Ins., Co.*, 67 F.4th 727, 737 (5th Cir. 2023) (quoting *Stirman*, 280 F.3d at 562). For this prerequisite, "the critical inquiry is whether the [named plaintiffs'] claims have the same essential characteristics [as] those of the putative class." *Id.* (quoting *Stirman*, 280 F.3d at 562). And "[i]f the claims

arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (quoting *Stirman*, 280 F.3d at 562).

Here, Plaintiffs and the proposed class members all share the same alleged due-process violations arising from the placement of SPD Codes without notice or a hearing, and they all seek the same relief. (*See* Dkt. No. 116 at 11–56); (Dkt. No. 107 at 16–17). Accordingly, Plaintiffs satisfy the typicality requirement.

d.    <u>Adequacy of representation</u>

Finally, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether this adequacy requirement is met, courts consider three factors: (1) "the zeal and competence of the representative[s'] counsel"; (2) "the willing[]ness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees"; and (3) "the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Slade v. Progressive Sec. Ins., Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)).

In this case, Plaintiffs ask this Court to appoint the law firm Beck Redden and the Texas Civil Rights Project ("TCRP") to represent them. (Dkt. No. 107 at 17). Plaintiffs present evidence that both Beck Redden and TCRP are competent and zealous. (*See* Dkt. Nos. 107-8, 107-9). Plaintiffs show that both have extensive and relevant litigation experience and are willing and able to pursue this lawsuit on behalf of the putative class. (*See id.*). Finally, there are no apparent conflicts between Plaintiffs and the proposed class. Accordingly, Plaintiffs have met the adequacy-of-representation prerequisite.

### 2.    <u>Rule 23 Class Type</u>

Now that Plaintiffs have proved the prerequisites, the Court considers whether Plaintiffs have proved the particular class type.  Plaintiffs seek to establish the second class type, which permits class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

This second type of class certification "requires common behavior by the defendant toward the class." *Yates*, 868 F.3d at 366 (5th Cir. 2017) (quoting *In re Rodriguez*, 695 F.3d at 365).  And it has three requirements: "(1) 'class members must have been harmed in essentially the same way'; (2) 'injunctive relief must predominate over monetary damage claims'; and (3) 'the injunctive relief sought must be specific.'"  *Id.* at 366–67 (quoting *Maldonado*, 493 F.3d at 524).  The third element (i.e., the specificity element) for this class type "requires plaintiffs to 'give content' to the injunctive relief they seek 'so that final injunctive relief may be crafted to describe in reasonable detail the acts required.'"  *Id.* at 367 (some internal quotations omitted) (quoting *Perry*, 675 F.3d at 848).

Generally, however, this class type "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360, 131 S.Ct. at 2557.  "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* (emphasis in original).  The Supreme Court has observed that "'[c]ivil

rights cases against parties charged with unlawful, class-based discrimination are prime examples' of what [this second class type] is meant to capture." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997)).

Plaintiffs seek only injunctive and declaratory relief to remedy the SPD policy's deficiencies in ways applicable to the entire class.  (*See* Dkt. No. 116 at 55–56).  In fact, according to Plaintiff's live complaint, no named plaintiff or class member requires relief that is meaningfully different from any other plaintiff.  (*See generally* Dkt. No. 116); (Dkt. No. 107 at 20–21).  Thus, Plaintiffs' requested relief—(1) prohibiting the Defendants from enforcing their current SPD policy and practices and (2) requiring Defendants universally to implement reasonable procedural safeguards—would apply across the putative class. Accordingly, Plaintiffs have met their burden for class certification under this second class type.

### B.   DEFENDANTS' MOTION TO DISMISS

Next, the Court addresses Defendants' Motion to Dismiss.   (Dkt. No. 142). Defendants seek dismissal based on six arguments:

(1)   Plaintiffs impermissibly incorporate hundreds of pages of irrelevant pleadings by reference, (*id.* at 15–16);

(2)   Four of the 10 named-Plaintiffs' claims are moot, (*id.* at 16–18);

(3)   Defendants are entitled to sovereign immunity, (*id.* at 18–21);

(4)   Plaintiffs' claims are barred by the statute of limitations, (*id.* at 21–25);

(5)   Plaintiffs fail to sufficiently allege a liberty interest for their due-process claim, (*id.* at 25–34); and

(6)   Plaintiffs are not entitled to injunctive relief, (*id.* at 34–37).

15

The Court addresses each argument in turn.

### 1. Plaintiff's Incorporation of Other Filings

Defendants first argue that Plaintiffs' "mere reference to *seven* other separate pleading[s] in which Plaintiffs' additional claims are purportedly described," (*id.* at 15) (emphasis in original), and their "global adoption of over 100 pages of allegations and claims to compliment [*sic*] their already 73-[page] amended complaint is improper," (*id.* at 16).  Rule 10(c) of the Federal Rules of Civil Procedure explains that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  Fed. R. Civ. P. 10(c).  This "incorporation by reference must be 'with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation.'"  *New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1033 (5th Cir. 2023) (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006)).

In their Complaint, Plaintiffs attempt to "incorporate by reference the More Definite Statements previously filed by Plaintiffs."  (Dkt. No. 116 at 6) (citing Dkt. Nos. 47–53).  Without more, however, this broad incorporation allegation lacks the "specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation."  *New Orleans Ass'n of Cemetery Tour Guides & Cos.*, 56 F.4th at 1033 (quoting *Carroll*, 470 F.3d at 1176).  Indeed, "a pleading that incorporates allegations from other documents must clarify which statements are being incorporated."  *Thryv, Inc. v. Listing Cent., LLC*, No. 3:20-CV-02756, 2021 WL 2651155, at *2 (N.D. Tex. June 28, 2021) (citing *Muttathottil v. Mansfield*, 381 F.App'x 454, 457 (5th Cir. 2010) (per

curiam)).  Because Plaintiffs' Complaint fails to do so here, their incorporation is improper.  The Court will therefore not consider those documents in its dismissal analysis.

### 2.   Mootness

Defendants next argue that multiple claims are now moot because some Plaintiffs have been discharged and some have had their SPD Codes removed.  (Dkt. No. 142 at 16–18).  Generally, "[a] case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'"  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 726, 184 L.Ed.2d 553 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam)).  Mootness specifically occurs when "events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it."  *FBI v. Fikre*, 601 U.S. 234, 240, 144 S.Ct. 771, 777, 218 L.Ed.2d 162 (2024).

That is not the case here.  Plaintiff Jesse Wade Holt had his SPD Code removed on February 5, 2024.  (Dkt. No. 142-1 at 2).  Plaintiff Mark Anthony Reyna had his SPD Code removed on March 27, 2024.  (*Id.* at 3).  And Plaintiff Prescilliano Martinez had his SPD Code removed on June 15, 2023.  (*Id.*).  But while removing the SPD was part of the relief requested, (*see* Dkt. No. 116 at 55–56), it does not automatically moot these three Plaintiffs' claims.  Indeed, "a defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'"  *Fikre*, 601 U.S. at 241, 144 S.Ct. at 777 (some internal quotations omitted) (quoting

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 708 145 L.Ed.2d 610 (2000)).  So, "[t]o show that a case is truly moot, a defendant must prove 'no reasonable expectation' remains that it will 'return to [its] old ways.'"  *Id.*  (some internal quotations omitted) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)).  This "formidable burden" applies to "governmental defendants no less than for private ones."  *Id.*

In this case, Defendants have not even tried to satisfy the heavy burden of showing that they will not subject these three Plaintiffs to the same challenged conduct in the future.  (*See* Dkt. No. 142 at 18).  Thus, Defendants have not established that they will not "return to [their] old ways."  *Fikre*, 601 U.S. at 241, 144 S.Ct. at 777 (quoting *W. T. Grant Co.*, 345 U.S. at 632–633, 73 S.Ct. at 897).  Accordingly, because Defendants have not made "it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth, Inc.*, 528 U.S. at 189, 120 S.Ct. at 708 (emphasis added), these three Plaintiffs' claims remain live.

That said, Plaintiff Juan Antonio De Leon's claims are moot.  Generally, a prisoner's "requests for injunctive relief regarding prison policies and practices . . . become moot" when the prisoner "is no longer in custody" and when "nothing in the record raises an issue of continuing harm or a real and immediate threat of repeated injury."  *Granville v. Thaler*, No. 4:07-CV-00849, 2012 WL 3779228, at *2 (S.D. Tex. Aug. 30, 2012) (citing *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988)); *see also Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) ("The transfer of a prisoner out of an institution often will render his claims for injunctive relief moot." (first citing *Weinstein v. Bradford*,

423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975) (per curiam); and then citing *Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1081 (5th Cir. 1991) (per curiam))). Here, Plaintiff De Leon is no longer in TDCJ's custody and thus no longer subject—or even potentially subject—to the SPD Codes at issue. (Dkt. No. 142-1 at 3). Therefore, his claims are moot.

Plaintiffs dispute mootness, however, and argue that the class is inherently transitory, suggesting that even Plaintiff De Leon can continue in the litigation as one of the named representatives of the class. (Dkt. No. 146 at 12–15). This inherently transitory exception exists because trial courts sometimes do not have "enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *Ward*, 753 F.App'x at 242 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76, 133 S.Ct. 1523, 1531, 185 L.Ed.2d 636 (2013)). Indeed, "this doctrine has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim, not on the defendant's litigation strategy," and it applies "in cases where the transitory nature of the conduct giving rise to the suit would effectively insulate defendants' conduct from review." *Genesis Healthcare*, 569 U.S. at 76–77, 133 S.Ct. at 1531. Where a class is inherently transitory, courts have explained that a class-certification order will "relate back to the time of the filing of the original complaint." *Ward*, 753 F.App'x at 242 (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 52, 111 S.Ct. 1661, 1667, 114 L.Ed.2d 49 (1991)).

To determine whether a class action is "inherently transitory," courts assess whether (1) "the challenged conduct giving rise to the claim is of a fleeting or temporary

nature"; (2) "uncertainty exists at the outset as to the duration of each plaintiff's exposure to the allegedly harmful conduct"; (3) "it is unlikely any given individual plaintiff could see his claim to fruition prior to the claim becoming moot"; and (4) "there exists a constant group of people suffering the harm alleged by the plaintiffs." *Ward*, 753 F.App'x at 242 (first citing *Genesis Healthcare*, 569 U.S. at 76, 133 S.Ct. at 1531; and then citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11, 95 S.Ct. 854, 861 n.11, 43 L.Ed.2d 54 (1975)).

A review of these factors shows that the inherently transitory exception does not apply here. The challenged conduct (the improper placement or review of SPD codes) is not of a fleeting nature. The SPD Codes have been placed on Plaintiffs' records for 10 years or more, and TDCJ's policy has subjected "hundreds, if not thousands, of individuals to *prolonged* punitive confinement." (Dkt. No. 116 at 2) (emphasis added). This decades-long alleged harm does not qualify as "fleeting" or "transitory." *Contra, e.g.*, *Ward*, 753 F.App'x at 242 (finding that "the putative plaintiffs' allegedly unlawful detention is of a fleeting or temporary nature" because it "last[ed] anywhere from days to months"). Plaintiffs even allege that TDCJ uses SPD Codes to confine Plaintiffs "indefinitely," (Dkt. No. 116 at 3), and that there will be "an endless class of persons [who] will face the same injury" because "SPDs will remain a continuous and growing problem," (Dkt. No. 146 at 14). Thus, it is likely that several Plaintiffs "could see [their] claim[s] to fruition prior to the claim[s] becoming moot." *See Ward*, 753 F.App'x at 242. Accordingly, the putative class here is not inherently transitory, and Plaintiff De Leon's claims remain moot.

20

But while his claims are moot, a live controversy remains for the other claims. Indeed, "a purported class action becomes moot" only when "the personal claims of *all* named plaintiffs are satisfied and no class has been certified." *Murray v. Fid. Nat. Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) (emphasis added) (citing *Zeidman*, 651 F.2d at 1045). Mootness for a class action thus requires that there be "*no* plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant." *Id.* (emphasis added) (first citing *Weinstein*, 423 U.S. at 149, 96 S.Ct. at 348–49; then citing *Bd. of Sch. Comm'rs. v. Jacobs*, 420 U.S. 128, 130, 95 S.Ct. 848, 850, 43 L.Ed.2d 74 (1975) (per curiam); and then citing *Sannon v. United States*, 631 F.2d 1247, 1252 (5th Cir. 1980)). Because Defendants have not proved that every Plaintiff's claims are moot, a live controversy still exists.

In summary, the claims of Plaintiffs Holt, Reyna, and Martinez are viable, but those of Plaintiff De Leon are moot. Accordingly, only Plaintiff De Leon's claims are dismissed.

### 3.    **Sovereign Immunity**

Turning to sovereign immunity, Defendants argue that they are entitled to sovereign immunity as to Plaintiffs Holt, Reyna, Martinez, and De Leon because those claims are moot. (*See* Dkt. No. 142 at 18–21). Because Plaintiff De Leon's claims are moot, *see supra* Section III(B)(2), the Court agrees that Defendants' sovereign-immunity remains intact as to him.

As to the other Plaintiffs, however, the Court disagrees. Sovereign immunity finds its basis in the Eleventh Amendment, which states that "[t]he Judicial power" does not

extend to "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment's prohibition on lawsuits against a state covers lawsuits by a citizen against his or her own state. *See Hans v. Louisiana*, 134 U.S. 1, 10–12, 10 S.Ct. 504, 505–06, 33 L.Ed. 842 (1890). "A suit is not 'against' a state, however, when it seeks prospective, injunctive relief from a state actor, in [his or] her official capacity, based on an alleged ongoing violation of the federal constitution." *K.P. v. LeBlanc (K.P. II)*, 729 F.3d 427, 439 (5th Cir. 2013). "That principle, the *Ex Parte Young* rule, 'is based on the legal fiction that a sovereign state cannot [authorize an agent to] act unconstitutionally.'" *Id.* (first quoting *K.P. v. LeBlanc (K.P. I)*, 627 F.3d 115, 124 (5th Cir. 2010); and then citing *Ex Parte Young*, 209 U.S. 123, 159, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908)).

Here, Defendants argue that Plaintiffs cannot satisfy the *Ex Parte Young* exception to sovereign immunity because their alleged constitutional violations are moot and thus no longer ongoing. (*See* Dkt. No. 142 at 18–21). In particular, Defendants argue that there is not an ongoing violation because those three Plaintiffs no longer have SPD Codes. (*Id.* at 20–21).

Defendants are incorrect. First, Plaintiffs *do* allege an ongoing violation of their constitutional rights. They specifically complain that TDCJ uses SPD Codes to confine Plaintiffs "indefinitely," (Dkt. No. 116 at 3), and that there will be "an endless class of persons [who] will face the same injury" because "SPDs will remain a *continuous* and growing problem," (Dkt. No. 146 at 14) (emphasis added). Second, the fact that those

three Plaintiffs no longer have SPD Codes does not mean that they are unlikely to suffer violations in the future.  Indeed, such an argument, "if accepted, would work an end-run around the voluntary-cessation exception to mootness where a state actor is involved." *K.P. II*, 729 F.3d at 439.  And as discussed above, *see supra* Section III(B)(2), the voluntary-cessation exception applies here because Defendants have not made "it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc.*, 528 U.S. at 189, 120 S.Ct. at 708 (emphasis added) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968)).  Defendants' sovereign-immunity arguments therefore fail as to Plaintiffs Holt, Reyna, and Martinez.  Accordingly, those claims will not be dismissed.

### 4.    Statute of Limitations

Apart from mootness and sovereign immunity,[1] Defendants contend that the remaining Plaintiffs' claims are barred by the statute of limitations because "Plaintiffs had knowledge of their injuries far before the filing of this suit or the amended complaint."  (Dkt. No. 142 at 25).

Generally, Section 1983 "does not provide a statute of limitations," so "courts borrow from state law."  *Hearn v. McCraw*, 856 F.App'x 493, 495 (5th Cir. 2021) (per curiam) (citing *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 1094, 166 L.Ed.2d 973 (2007)).  Courts usually "look to a state's statute of limitations for personal-injury torts." *Id.* (citing *Wallace*, 549 U.S. at 387, 127 S.Ct. at 1094).  In Texas, this period is two years.

---

[1]    Because Plaintiffs De Leon's claims are moot, *see supra* Section III(B)(2), the Court does not discuss whether his claims are untimely.

*Id.*; Tex. Civ. Prac. & Rem. Code § 16.003(a).  But while "state law governs the statute of limitations period, federal law determines when the action accrues."  *Hearn*, 856 F.App'x at 495 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)).  "Accrual begins when a plaintiff is aware that he has been injured or has sufficient information to know as much."  *Id.* (first citing *Piotrowski*, 237 F.3d at 576; and then citing *Montgomery v. Louisiana ex rel. La. Dep't of Pub. Safety & Corrs.*, No. 01-31458, 2002 WL 1973820, at *2 (5th Cir. Aug. 2, 2002)).  For a plaintiff to be "aware," a "plaintiff need not know that he has a cause of action; he need only know the facts that would ultimately support the cause of action."  *Montgomery*, 2002 WL 1973820, at *2.  This means that a plaintiff must specifically be aware of (1) "the existence of an injury" and (2) "a causal connection between the injury and the defendant's conduct."  *Id.* (citing *Piotrowski*, 237 F.3d at 576).

Plaintiffs Curtis Allen Gambill, Eddie Ray Fowler, Holt, Reyna, and Martinez originally sued Defendants on March 30, 2021.  (Dkt. No. 1).  Plaintiff Gambill learned that his constitutional rights might have been violated sometime before 2012.[2]  (*See* Dkt. No. 48 at 2–3);[3] (Dkt. No. 116 at 34–36).  Plaintiff Holt learned about his SPD Code "over

---

[2]    Plaintiff Gambill explained that he wanted to enroll in the Gang Renouncement and Disassociation Process ("GRAD") program "[s]everal years" after an SPD was placed on his records in 2003.  (Dkt. No. 48 at 2).  When he was denied, he learned that the SPD code made him ineligible.  (*Id.*).  Until "that point, [Plaintiff Gambill] was unaware of [SPD Codes] and didn't know what they were."  (*Id.*).  This initiated a two-year "fight to remove" his SPD Code, which appears to have begun in January 2012, when Plaintiff Gambill's first SPD hearing took place.  (*See id.* at 3); (Dkt. No. 116 at 34–36).

[3]    As stated above, *see supra* Section III(B)(1), this Court explained that it would not consider Plaintiffs' More Definite Statements, (Dkt. Nos. 47–53), in its dismissal analysis because they were improperly incorporated.  But because Defendants themselves rely on these filings in their statute-of-limitations argument to show when Plaintiffs likely became aware of their

(continue)

time" but received his SPD Code in 2004. (Dkt. No. 49 at 2). Plaintiff Fowler likely learned of his SPD Code around 2008. (Dkt. No. 50 at 2). Plaintiff Reyna arguably learned about his SPD Code in 2005 or 2006. (Dkt. No. 47 at 1–2). And Plaintiff Martinez received his SPD Code in 2006, though he "was never told he had an SPD [code] placed," he "knew it was something" in 2010 "because [prison staff] kept him separated from other inmates. (Dkt. No. 52 at 3). These dates suggest that Plaintiffs' claims likely accrued more than two years before they sued, which would ordinarily put them outside the limitations period. *See Lee v. Karriker*, 383 F.App'x 491, 492 (5th Cir. 2010) (per curiam) (finding that a prisoner's claim accrued on the date he "first learned of the existence of the escape notation in his record" and thus "became aware of the facts that might ultimately support a claim").

Plaintiffs filed their First Amended Class Action Complaint on May 24, 2024, to add Plaintiffs Raymond Wingfield, Britney Gulley, Jerrod Spencer, and Ricky Smith. (Dkt. No. 116). But Plaintiff Raymond Wingfield received an SPD Code in 2004. (*Id.* at 5, 17–18). Plaintiff Britney Gulley received an SPD Code in 2012. (*Id.* at 5–6, 18). Plaintiff Jerrod Spencer received an SPD Code around 2015.[4] (*See id.* at 6, 19). And Plaintiff Ricky Smith received his SPD in 2003. (*See id.* at 19–20). Even assuming that the amended

---

underlying causes of action, (*see* Dkt. No. 142 at 21–25) (relying on Dkt. Nos. 47, 48, 49, 50, 52), the Court considers these filings for that limited purpose only.

[4]    The SPD Code was assigned to Plaintiff Spencer for conduct that occurred around 2013 when he was only 15-years old. (*Id.* at 6). Plaintiff Spencer was transferred to TDCJ after turning seventeen-years old, and it was TDCJ that assigned the SPD Code. (*See id.* at 6, 19). Thus, because Plaintiff Spencer was transferred to TDCJ around 2015, the Court understands that the SPD Code was assigned around this time.

complaint and the addition of four new Plaintiffs "relates back" to the original complaint on March 30, 2021, for limitations purposes,[5] the dates that these four new Plaintiffs became aware of the allegedly unconstitutional conduct would have occurred outside the two-year limitations period. *See Lee*, 383 F.App'x at 492.

But while Plaintiffs' claims seem to be outside the limitations period, Plaintiffs invoke the continuing-violation doctrine. (Dkt. No. 146 at 12–15). This "doctrine is a federal common law doctrine governing accrual." *Heath v. Bd. of Supervisors for the S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017). "It is 'equitable in nature and extends the limitations period on otherwise time-barred claims.'" *Jones v. Lumpkin*, No. 21-20106, 2023 WL 3075063, at *3 (5th Cir. Apr. 25, 2023) (per curiam) (quoting *Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018)). It specifically "extends the limitations period when a violation manifests itself over time, rather than as discrete acts." *Hearn*, 856 F.App'x at 495 (quoting *Doe v. United States*, 197 F.Supp.3d 933, 939 (S.D. Tex. 2016), *aff'd*, 853 F.3d 792 (5th Cir. 2017), *as revised* (Apr. 12, 2017)). To prove a continuing

---

[5]    The Defendants suggest that the appropriate limitations for Plaintiffs Raymond Wingfield, Britney Gulley, Jerrod Spencer, and Ricky Smith is May 24, 2024, (*see* Dkt. No. 142 at 21, 24–25)—the date these individuals were joined as Plaintiffs. (Dkt. No. 116). But under the relation-back doctrine found in Federal Rule of Civil Procedure 15(c), "a plaintiff may amend his complaint 'to add a new party, claim or defense that arises out of the conduct, occurrence or transaction alleged in [the] original pleading and that would otherwise be time-barred.'" *Salazar v. Texas*, No. 5:16-CV-00292, 2020 WL 13609390, at *6 (S.D. Tex. Apr. 23, 2020) (quoting *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 926 F.Supp.2d 935, 945–46 (S.D. Tex. 2013)); Fed. R. Civ. P. 15(c). While the relation-back doctrine may help determine whether May 24, 2024, or March 30, 2021, is the proper date for limitations purposes, the Court need not address the relation-back doctrine at this stage because, even if the amended complaint did relate back, these four Plaintiffs' claims would still be outside the two-year limitations period of the date of the original complaint. *See Salazar*, 2020 WL 13609390, at *6 ("If an amended pleading relates back, it is 'treated, for purposes of the statute of limitations, as having been filed on the date of the original complaint.'" (quoting *Ultraflo Corp.*, 926 F.Supp.2d at 946)).

violation, a plaintiff must show two things: (1) there are separate-but-related acts at issue and (2) the violation is continuing. *Id.* (citing *Heath*, 850 F.3d at 738).

This doctrine "should be invoked 'sparingly,' only when the situation calls for it." *Jones*, 2023 WL 3075063, at *3 (quoting *Texas*, 891 F.3d at 562). In fact, "even if a plaintiff can show [both elements], this doctrine can be tempered by the court's equitable powers." *Hearn*, 856 F.App'x at 495 (first citing *Heath*, 850 F.3d at 738; and then citing *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009)). For instance, this doctrine "should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." *Jones*, 2023 WL 3075063, at *3 (quoting *Cowell v. Palmer Tp.*, 263 F.3d 286, 295 (3rd Cir. 2001)). That is because "allow[ing] prisoners to sit on alleged violations of their rights would be 'contrary to the policy rationale of the statute of limitations.'" *Id.* (quoting *Cowell*, 263 F.3d at 295).

Here, Plaintiffs detail the allegedly unconstitutional conduct for each of the Plaintiffs. (Dkt. No. 116 at 14–20). Plaintiffs also allege that the TDCJ policy "subject[s] hundreds, if not thousands, of individuals to prolonged punitive confinement." (*Id.* at 2). And though Plaintiffs have requested reconsiderations of their SPD Codes, many served between 10 and 15 years of confinement before receiving their first SPD hearing. (*Id.* at 14–16, 23–26, 31). Plaintiffs later assert that their "rights have been, and continue to be, violated" based on the fact that an SPD Code "remains on a person's record for decades with no meaningful review, resulting in prolonged and indefinite confinement in utterly inhumane conditions." (*Id.* at 11). Plaintiffs state that Defendants "have

violated, *and will continue to violate*, the due process rights of numerous individuals with SPDs." (*Id.* at 13) (emphasis added).

These allegations show that Plaintiffs are challenging separate-but-related acts, and they detail a continuous pattern of alleged constitutional violations—namely, the ongoing application of SPD Codes without due process. Thus, these allegations satisfy the two elements under the continuing-violation doctrine. *See Hearn*, 856 F.App'x at 495. And because these alleged violations continue to "manifest[] . . . over time," *id.*, and Defendants do not show that Plaintiffs have "s[at] on alleged violations of their rights," *Jones*, 2023 WL 3075063, at *3, the Court finds that the Plaintiffs' claims are timely under the continuing-violation doctrine.

### 5.    Due Process

Moving to Defendants' due-process argument, Defendants argue that Plaintiffs have not sufficiently alleged a liberty interest and thus cannot show a due-process violation. (Dkt. No. 142 at 25–34). Under the Due Process Clause of the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, cl. 2. From the plain text, it is apparent that the procedural protections of the Due Process Clause are triggered only where there has been a deprivation of life, liberty, or property. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393, 162 L.Ed.2d 174 (2005). "[T]he threshold question necessary for any finding of a violation of a prisoner's right to procedural due process" is "whether he had a 'liberty interest' that the prison action implicated or infringed." *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007) (some internal quotations omitted) (quoting *Meachum v. Fano*,

427 U.S. 215, 223–24, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)).  After all, a State cannot deprive someone of an interest they don't have.  So, if a prisoner has no liberty interest, then there is no deprivation, and no process is due.  The Court thus begins by determining whether Plaintiffs have a liberty interest in avoiding the placement of SPD Codes and more restrictive conditions of confinement indefinitely.

a.   <u>Plaintiffs' liberty interest</u>

Starting with Plaintiffs' liberty interest, the Supreme Court has found that "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations."  *Wilkinson*, 545 U.S. at 222, 125 S.Ct. at 2393.  "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"  *Id.* at 223, 125 S.Ct. at 2394 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)).  Indeed, a prisoner's liberty interests "will be generally limited to freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300.  So, while "[p]lacement in restrictive housing is generally viewed as an ordinary, expected, and permissible incident of prison life," *Wheeler v. Collier*, No. 4:22-CV-01705, 2024 WL 3572955, at *6 (S.D. Tex. July 29, 2024) (citing *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996)), such "restrictive housing can implicate a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,'" *id.* at *7 (first citing *Wilkerson*

29

*v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014); and then quoting *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (per curiam)).

To determine whether a prisoner has experienced atypical or significant hardship, the Supreme Court has relied on three factors: (1) "the severity of the confinement restrictions in restrictive housing"; (2) "the duration of the confinement in restrictive housing"; and (3) the consequences of the confinement—i.e., "whether assignment to restrictive housing has any collateral consequences on the inmate's sentence, such as whether that placement disqualifies an otherwise eligible inmate for parole." *Id.* at *6 (citing *Wilkinson*, 545 U.S. at 223–24, 125 S.Ct. at 2394–95).

Consider, for example, how the Supreme Court addressed a class action by inmates assigned to Ohio's highest-security prison, commonly referred to as a "Supermax" facility. *Wilkinson*, 545 U.S. at 213, 125 S.Ct. at 2388. Regarding the severity of the confinement, the Supreme Court explained that (1) almost all human contact was prohibited, so that conversation was not even permitted from cell to cell, *id.* at 223–24, 125 S.Ct. at 2394; (2) the light was kept on for 24 hours, *id.* at 224, 125 S.Ct. at 2394; (3) prisoners were confined to their cells for 23 hours a day, spending their only other hour outside of their cells in a small indoor exercise room, *id.* at 214, 224, 125 S.Ct. at 2389, 2394; and (4) visitation was rare and always conducted through a glass partition, *id.* at 214, 125 S.Ct. at 2389. As to the duration of confinement, the Court in *Wilkinson* emphasized that placement at the prison facility was "indefinite" and a prisoner's assignment to the facility was reviewed after thirty days, with subsequent reviews occurring only annually. *Id.* at 224, 125 S.Ct. at 2394–95. Finally, as to the consequences

of confinement, the Court determined that the "placement disqualifie[d] an otherwise eligible inmate for parole consideration." *Id.* at 224, 125 S.Ct. at 2395. Taking these factors together, the Court concluded that the inmates had a liberty interest in avoiding those restrictive conditions of confinement because those restrictions "impose[d] an atypical and significant hardship within the correctional context." *Id.*

Here, Plaintiffs allege conditions and hardships similar to those in *Wilkinson*. First, regarding the severity of the conditions, Plaintiffs state that they are confined in their cells for 20 to 24 hours a day and often for 22 to 24 hours each day. (Dkt. No. 116 at 2). They contend that their housing units have unlivable conditions, including intolerable temperatures, poor ventilation, water and power outages, clogged or overflowing toilets, exposure to raw sewage, pest infestations, and more. (*Id.* at 2, 41–42, 51). And they allege that they are also severely limited in their access to jobs, rehabilitation, and educational, vocational, and religious programming. (*Id.* at 42–46). Second, as to the duration of confinement, Plaintiffs claim that they have faced these conditions 20 to 40 times longer than other inmates, and that their confinement under these conditions is "lengthy and effectively indefinite." (*Id.* at 51). Finally, regarding the consequences of confinement, Plaintiffs argue that their severely limited access to jobs and other programs negatively impacts their prospects for parole release. (*See id.* at 42–46). Accepting these allegations as true, *see White*, 996 F.3d at 306–07, Plaintiffs identify atypical and significant hardships associated with their SPD Codes and allege facts that give rise to a liberty interest in avoiding such classification.

b.      The process due to Plaintiffs

Since Plaintiffs have sufficiently alleged a liberty interest, the Court now addresses what process is due. "[T]he requirements of due process are 'flexible and cal[l] for such procedural protections as the particular situation demands.'" *Wilkinson*, 545 U.S. at 224, 125 S.Ct. at 2395 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). The Supreme Court has generally "declined to establish rigid rules and instead ha[s] embraced a framework to evaluate the sufficiency of particular procedures." *Id.* In particular, the Supreme Court considers three factors in evaluating how much process is due: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 224–25, 125 S. Ct. at 2395 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

Based on these three factors, the Court finds that Plaintiffs have adequately alleged a due-process violation. First, Plaintiffs have private interests that the SPD Codes affect. In general, because "[p]risoners held in lawful confinement have their liberty curtailed by definition," the Supreme Court has stated that "the procedural protections to which [prisoners] are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Id.* at 225, 125 S.Ct. at 2395. So, while a prisoner's private interests must be considered "within the context of the prison system and its

attendant curtailment of liberties," those interests are still "more than minimal."  *Id.*  Put simply, courts "look to how much liberty [the prisoner] is deprived of over and above what would normally be incident to prison life."  *See Hope v. Harris*, 861 F.App'x 571, 580 (5th Cir. 2021) (per curiam).

Applying the first factor here, the Plaintiffs' private interest deserves some weight. After all, they are allegedly confined in their cells for at least 20 to 22 hours a day and purportedly experience unlivable conditions for indefinite periods of time, including intolerable temperatures, poor ventilation, water and power outages, clogged or overflowing toilets, exposure to raw sewage, restricted access to various types of programming that other prisoners receive, and more.  (Dkt. No. 116 at 2, 41–46, 51). Accepting these allegations as true, *see White*, 996 F.3d at 306–07, the Court finds that the private interest here is enough at this stage.

Second, Plaintiffs allege that there is a substantial risk of the erroneous placement of SPD Codes, which deprive inmates of their liberty.  In evaluating the second factor, courts consider "whether [a prisoner] has 'notice of the factual basis leading to consideration for [solitary] placement' and 'a fair opportunity for rebuttal.'"  *Hope*, 861 F.App'x at 580 (quoting *Wilkinson*, 545 U.S. at 225–26, 125 S.Ct. at 2395–96).  Here, Plaintiffs allege that they were provided no advance notice of the policy and were never informed of their SPD Codes until after the fact.  (Dkt. No. 116 at 14, 21–22, 31, 47–48, 52). They allege that they received no hearing and were not given an opportunity to be heard, present evidence, or dispute their SPD Code placement until it was too late.  (*Id.* at 13, 21, 33, 52).  And even though they requested a hearing for reconsideration of their SPD Code,

many of them served between 10 and 15 years of confinement before receiving their first SPD hearing.  (*Id.* at 15–16, 23–26, 31–32).  These allegations show that the Plaintiffs have sufficiently alleged a substantial risk of erroneous placement of SPD Codes that deprives them of their liberty.

Finally, the Court acknowledges that Texas's "first obligation must be to ensure the safety of guards and prison personnel, the public, and the prisoners themselves." *Wilkinson*, 545 U.S. at 227, 125 S.Ct. at 2396.  And "given the scarce resources of prison systems, [it] must 'give substantial deference to prison management decisions before mandating additional expenditures for elaborate procedural safeguards.'"  *Hope*, 861 F.App'x at 580 (quoting *Wilkinson*, 545 U.S. at 228, 125 S.Ct. at 2397).  At this dismissal stage, the Court assumes (without deciding) that this factor favors Defendants.

Taken together, however, these factors show that Plaintiffs have alleged a plausible claim that they were denied due process.  As such, Defendants' Motion to Dismiss is denied as to Plaintiffs' due-process claims.

### 6.    <u>Scope of Injunctive Relief</u>

Defendants also argue that Plaintiffs are not entitled to injunctive relief.  (Dkt. No. 142 at 34–37).  But as discussed in the Court's previous Order, the relief (if any) that Plaintiffs obtain will be determined when, and if, they ultimately prevail on the merits of their claims.  (Dkt. No. 70 at 5 n.2).  Defendants' request to dismiss Plaintiffs claim for injunctive relief is premature.

## IV.    CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' Amended Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) & 12(b)(6), (Dkt. No. 142), and **GRANTS** Plaintiffs' First Amended Motion to Certify a Class and Appoint Class Counsel, (Dkt. No. 107).  Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) & 12(b)(6), (Dkt. No. 137), and Defendants' Request for Clarification, (Dkt. No. 117), are therefore **DENIED**.

The Court **CERTIFIES** a class consisting of all individuals incarcerated by the Texas Department of Criminal Justice with Security Precaution Designators ES, HS, or SA for whom 10 or more years have passed since the incident for which the code was placed.  The Court **APPOINTS** the law firm of Beck Redden, LLP and the Texas Civil Rights Project as counsel for Plaintiffs' class.

The Parties will **CONFER** and **SUBMIT** a Joint Status Report regarding proposed next steps and a proposed schedule no later than April 14, 2025.

It is SO ORDERED.

Signed on March 30, 2025.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

35