CURTIS ALLEN GAMBILL, *et al.,*

    *Plaintiffs,*

v.

BRYAN COLLIER, *et al.,*

    *Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 4:21-cv-01076

## DEFENDANTS' MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION

Defendants Bryan Collier, Eric Guerrero, Daniel Dickerson, Bobby Lumpkin, Timothy Fitzpatrick, Elbert Holmes, Lonnie Townsend, Carole Monroe, Maricia Jackson, Melissa Bennett, and Jerry Sanchez, file this motion for reconsideration of class certification.

### I.      Background

The original eight Plaintiffs in this case filed their complaint on March 30, 2021. ECF No. 1. Proceeding *pro se*, Plaintiffs moved for class certification and appointment of counsel, which was denied. ECF Nos. 5, 6, 32, 34. Plaintiffs were ordered to provide more definite statements for each Plaintiff, which they provided. ECF Nos. 46–53. Upon an order to answer by this Court, Defendants filed a motion to dismiss. ECF Nos. 55–59. The Court denied Defendants' motion to dismiss, and appointed counsel to Plaintiffs. ECF Nos. 70, 88. After appointment of counsel, a scheduling order was entered, and Defendants filed a motion to dismiss for lack of jurisdiction. ECF No. 94, 98.

While Defendants' motion to dismiss was pending, Plaintiffs filed a motion for leave to amend their complaint and motion to certify a class and appoint class counsel. ECF Nos. 106, 107. Plaintiffs then responded to Defendants' pending motion to dismiss. ECF No. 108. Defendants moved for a

stay of all pending motions and deadlines until the resolution of their pending motion to dismiss asserting mootness and sovereign immunity. ECF No. 11.

Plaintiffs responded to Defendants' motion to stay pending deadlines, stating "Plaintiffs remain amenable to extending Defendants' deadline to respond to Plaintiffs' Motion for Class Certification until 14 days after this Court rules on Plaintiffs' Motion for Leave and the Motions to Dismiss." ECF No. 112 at 5. Plaintiffs also stated: "Plaintiffs request that this Court continue all deadlines set forth in the scheduling order pending the resolution of both Plaintiffs' Motion for Leave and Defendants' Motions to Dismiss and thereafter, issue a new scheduling order that takes into account the Parties' discovery needs for Class Certification." *Id.*

The Court then issued an order finding that Plaintiffs' Motion for Leave to File First Amended Class Action Complaint was granted, that Plaintiffs' Motion to Certify Class and Appoint Class Counsel remained pending, and that Defendants' pending motion to dismiss was denied as moot. ECF No. 115. The Court ordered that Defendants may file a motion to dismiss directed at Plaintiffs' Amended Complaint by June 11, 2024, and stated "The Court will address any such motion prior to addressing the class-certification motion." *Id.* Defendants interpreted this order to mean that additional time would be given to respond to the request for class certification after the Court ruled upon Defendants' fully dispositive motion to dismiss Plaintiffs' first amended complaint.

Defendants filed a motion for clarification concerning the timeline for their motion to dismiss Plaintiffs' amended complaint, considering the proposed amendment added eight new Defendants that required service. ECF No. 117. Defendants also filed an unopposed motion for extension of time to file their motion dismiss in light of the service requirements for the new defendants, in which Defendants stated, "On May 24, 2024, the Court entered an order denying Defendants' motion to dismiss as moot, granting Plaintiffs' motion to amend their complaint, ordering Defendants to file their motion to dismiss the First Amended Complaint by June 11, 2024, *and staying the ruling on the class*

2

*action until the Court rules on Defendants' motion to dismiss the amended complaint.*" (emphasis added). ECF No. 118. Defendants filed their motion to dismiss and in their reply in support of their motion to dismiss stated: "Should any claims proceed in this case, Defendants respectfully request 30 days to respond to the Plaintiff's motion for class certification." ECF No. 149 at 9.

On March 31, 2025, the Court issued an order on both the motion to dismiss and motion for class certification before Defendants' response to the motion for class certification was on file. ECF No. 151. In contradiction to its order stating it will consider Defendants' motion to dismiss before considering Plaintiffs' motion for class certification, the Court considered Plaintiffs' motion for class certification first, granting Plaintiffs' motion for class certification prior to ruling on the motion to dismiss and thus prior to a response by Defendants on Plaintiffs' motion to certify the class. ECF No. 151 at 10 ("The Court begins with Plaintiffs' class-certification motion."). Defendants now move for reconsideration of the Court's order granting class certification without consideration of a responsive pleading by Defendants.

## II.     Motion for Reconsideration

Our adversarial system of justice requires that we give both sides full and fair opportunity to present their strongest possible arguments to the court. *Ga. Firefighters' Pension Fund v. Anadarko Petro. Corp.*, 99 F.4th 770, 772 (5th Cir. 2024) (citing *Lefebure v. D'Aquilla*, 15 F.4th 670, 674-75 (5th Cir. 2021)). Here, Defendants were unable to present their rebuttal to Plaintiffs' motion for class certification. Defendants' failure to respond was premised on their belief that the Court would be giving time to respond to the motion for class certification based on the remaining Plaintiffs (if any) after a ruling on their motion to dismiss. *See* ECF No. 115 (stating the Court would decide on the motion to dismiss before addressing the class action). Otherwise, Defendants would be subject to the undue burden and expense of undertaking individualized discovery for at least the 10 individual Plaintiffs and gathering facts and data for the nearly 500 inmates with 10-year SPD codes to rebut the

motion for class certification while both standing and sovereign immunity remained at issue. *See e.g., Rosales v. Wormuth*, No. 1:23-CV-440-DAE, 2024 U.S. Dist. LEXIS 55922, 2024 WL 1336464, at *3 (W.D. Tex. Mar. 28, 2024); *Rivera v. United States*, No. EP-15-CV-21-KC, 2015 U.S. Dist. LEXIS 195044, 2015 WL 13650012, at *2-3 (W.D. Tex. May 18, 2015) ("[i]t is well settled that governmental immunity is not only a defense against the burdens of liability, but also a defense to the burdens of litigation."); *Moreno v. United States*, No. 1:24-CV-245-DII, 2024 U.S. Dist. LEXIS 142647, at *6 (W.D. Tex. 2024) (finding that if discovery were to continue while Defendants' motion to dismiss is pending, Defendants would be subject to undue burden and expense undertaking discovery on claims that this Court may dismiss on immunity grounds); *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 73, 217 L. Ed. 2d 12 (2023). Even if Defendants' reliance on this order and law regarding sovereign immunity was in error, not considering Defendants' response to a class certification is substantially prejudicial and Defendants seek the Court's reconsideration of the class certification by allowing Defendants time to respond.

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). Nevertheless, the Fifth Circuit has "consistently recognized that such a motion may challenge a judgment or order under the Federal Rules of Civil Procedure 54(b) [or] 59(e)." *Burkette v. E. Feliciana Par. Sheriff*, No. 18-996, 2022 U.S. Dist. LEXIS 202947, 2022 WL 16758256, at *2 (M.D. La. Nov. 8, 2022) (citations omitted). Where, as here the motion for reconsideration concerns an interlocutory order, the appropriate standard to apply is found in Rule 54(b). *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). A court considering the Rule 54(b) standard "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin*, 864 F.3d at 336.

4

The inability to present a defense with evidence to Plaintiffs' motion for class certification is substantially prejudicial to Defendants as a class certification vastly expands the scope of the case and discovery and resources necessary for the case. Allowing the Defendants to respond to the motion for class action will not substantially prejudice the Plaintiffs because it will preclude the Parties from expending time and resources engaging in months to years of discovery and litigation for a class of nearly 500 inmates with varying circumstances and merits.

Defendants respectfully request the Court vacate the order granting class certification subject to re-entry after consideration of Defendants' evidence. Defendants expect to produce substantial evidence rebutting the claims of Plaintiffs, specifically challenging the commonality prong of class certification. Defendants expect this evidence will show, at a minimum, that: (1) placement and retention of a SPD is reviewed on a case-by-case basis and determinations are made on the severity of the circumstances under which the SPD was placed, (2) G4 and G5 level classification are considered general population, not "solitary confinement," "restrictive housing," or "ad seg," and are given four hours of out-of-cell time for programmatic and non-programmatic activities, (3) inmates are not placed in "ad seg" or "restrictive housing" due to their SPDs, but only due to their disciplinary infractions, (4) an inmate's parole eligibility and review have nothing to do with their custody status, *e.g.*, G4 or G5, but instead has to do with their conviction, the law on the date it was committed, and time-earning status/Line Class, which is not effected by their SPD codes, (5) if a UCC hearing is missed by the computer automated system, TDCJ's grievance process is available to inmates and a grievance investigator will set the hearing, (6) TDCJ's grievance system is available to all inmates for complaints regarding their cell conditions or maintenance needed, but Plaintiffs have not complained to TDCJ regarding these allegations.

Further, although inmates with an SPD are G4 "custody" or above, their housing is affected by many things such as their safety, security, and treatment needs.[1] Inmates are housed in different areas on different units due to their disciplinary actions, mental health or medical conditions, or are housed in safekeeping or on death row. Indeed, this individualized assessment of each inmate, which includes, among other things, the conditions of each specific inmate's confinement depending on their unit and housing area, the programs available on the unit and whether they requested to participate, their eligibility for parole and other factors affecting their parole, their crimes in and out of prison, their disciplinary actions, their mental health and medical conditions, and their gang-related status or whether they're "Not for Same Housing" ("NFSH") as another inmate or Security Threat Group due to security reasons, goes to show that a class action in this type of case is inappropriate. Basing a class on a highly individualized assessment of classification and confinement conditions across 100+ TDCJ units does not involve "uniform group remedies," and will certainly require "a specific or time-consuming inquiry into the varying circumstances and merits of each class member's individual case." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 414.

Not only does the inmates' classification and parole eligibility consider these individualized assessments, but also the conditions of confinement are individualized, taking into consideration whether the inmates have cellmates, the hygiene of the inmates and their particular cellmates, whether the pod has an SSI (janitorial inmate), whether the inmates have reported the alleged problems via grievances or an I-60 form such that maintenance is aware of necessary repairs, whether the unit has been treated for pests, the effectiveness of that treatment, and the time at which the treatment was

---

[1] All inmates committed to the Texas Department of Criminal Justice (TDCJ) are received at an intake facility equipped to receive and process inmates. Intake and sociology interviews are conducted in which information is gathered regarding the inmate's (1) criminal history; (2) social history; (3) institutional history; (4) educational history; (5) employment history; (6) family history; (7) military history; (8) drug and/or alcohol histories; and (9) any other pertinent information. This requires a personalized assessment of each inmate. Ex. A.

applied, whether the cell is close to an open door or window, whether the unit has air-conditioning in the housing areas and thus no open windows, the age of the unit, a solid or barred cell door, the weather in that region, etc.

Here, Plaintiffs' mere allegations and self-serving declarations are insufficient to certify a class, especially given the evidence contradicting Plaintiffs' allegations and the individualized assessments necessary to determine whether due process is implicated in this case.

**A. The Court should consider Defendants' protests and defenses.**

"[T]o satisfy the rigor requirement [of class certification], a district court must detail with specificity its reasons for certifying." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 741 (5th Cir. 202) (citing *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 546 (5th Cir. 2020)). "It must explain and apply the substantive law governing the plaintiffs' claims to the relevant facts and defenses, articulating why the issues are fit for classwide resolution." *Id.* "The court should respond to the defendants' legitimate protests of individualized issues that could preclude class treatment." *Id.*

Here, the Court could not consider Defendants' protests and defenses as none were on file, but instead relied solely on the self-serving affidavits of the Plaintiffs and counsel's interpretation of TDCJ records that were obtained by circumventing the discovery process through a PIA request. But this evidence alone, taken as true, only shows the individual nature of each Plaintiff's allegations. To provide a greater deal of context to Plaintiffs' allegations, Defendants have provided evidence for this Court to consider regarding each Plaintiff's parole status, classification and custody information that must be considered in determining whether Plaintiffs' can be considered representatives of this class when each case is so individualized.

### 1. Commonality and Typicality

Plaintiffs have failed to meet their burden to establish commonality. To establish commonality, a plaintiff must prove a contention that is: (1) "common" to all the class members; (2) "central" to the

validity of their claims; and (3) "capable" of class-wide resolution in a single stroke. *In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014). Typicality, "significant[ly] overlap[s]" with commonality. Although it "does not require a complete identity of claims," the "class representative's claims [must] have the same essential characteristics of those of the putative class." *Id.* at 29 (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). Here, for the reasons given below, Plaintiffs cannot purport to have the same essential characteristics of the class and Plaintiffs have failed to demonstrate facts showing commonality in this case.

In *Dukes*, the Supreme Court observed "[a]ny competently crafted class complaint literally raises 'common questions.'" *Dukes*, 564 U.S. at 349 (citation omitted). Because "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" *id.* at 350 (citation omitted), the movant must do more than identify common legal theories or general questions that are undisputed or peripheral to the determination of liability. *Id.* The Court gave examples of common questions that were insufficient,[2] and focused instead on the "crucial question" of "*why was I disfavored?*" *Id.* at 352. The focus was appropriately on whether *each* class member suffered *a common* injury as a result of the *same* conduct. *Id.* The Court characterized the question as "crucial" because the class claims must depend upon a common contention "of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[3] *Id.* at 350.

Before *Dukes*, the Fifth Circuit treated commonality as met "when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Forbush*

---

[2] Insufficient common questions of fact included: "Do all of us plaintiffs work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?" The Court concluded that "[r]eciting these questions is not sufficient to obtain class certification." 564 U.S. at 349.

[3] The Fifth Circuit in *M.D.* emphasized significant aspects of this holding as follows: "Rather, Rule 23(a)(2) requires that all of the class member's claims depended on a common issue of law or fact whose resolution "will resolve an issue that is central to the validity of the each of the [class member's] claims in one stroke." 675 F.3d at 840 (emphasis in original).

*v. J.C. Penny Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993). Recognizing that "the *Wal- Mart* decision has *heightened* the standards for establishing commonality under Rule 23(a)(2),"[4] however, the Fifth Circuit in *M.D.* expressly repudiated *Forbush* and described at length how *Dukes* establishes a higher legal standard for commonality: "[T]he commonality test is no longer met when the proposed class merely establishes that 'there is at least one issue whose resolution *will affect all or a significant number* of the putative class members." *M.D.*, 675 F.3d at 840 (citing and repudiating *Forbush,* 994 F.2d at 1106 (internal quotation marks omitted)).

Citing *Dukes*, the Fifth Circuit in *M.D.* explained: "Rule 23(a)(2) requires that all of the class members' claims depend on a common issue of law or fact whose resolution 'will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke.'" 675 F.3d at 840 (quoting *Dukes*, 131 S. Ct. at 2551). It is no longer sufficient that the common question merely "affect" a "significant number" of class members. Resolution of the common question must "resolve" an issue that is central to validity of "each class member's" claims.

The Fifth Circuit has made clear that to be common under Rule 23, a question must also be capable of class-wide determination using class-wide proof. *Ahmad v. Old Republic National Title Ins. Co.*, 690 F.3d 698, 701 (5th Cir. 2012); *Benavides v. Chicago Title Ins. Co.*, 636 F.3d 699, 703 (5th Cir. 2011). A common question of fact must be capable of being "definitively answered for all class members using a generalized set of facts and producing one unified conclusion." *Ahmad*, 690 F.3d at 703; *Benavides*, 636 F.3d at 703. The question must "invite a 'yes' or 'no' answer or present a contention whose 'truth or falsity' can be established." *Ahmad*, 690 F.3d at 704.

Plaintiffs' certification motion fails to satisfy their evidentiary burden to prove by a preponderance of the evidence that the differences within the proposed class will not defeat

---

[4] 675 F.3d at 839 (emphasis added); *see also id.* at 837 ("In its recent opinion in Wal-Mart . . . the Supreme Court has further defined the contours of the 'rigorous analysis' required by Rules 23(a) and 23(b)(2).").

commonality because: (1) Plaintiffs fail to meet the "same injury" requirement; and (2) their list of common questions is insufficient to establish commonality.

### i. Plaintiffs fail to meet the "same injury" requirement

Plaintiffs have failed to show that each member of the proposed classes has suffered from the "same injury," which defeats a finding of commonality. *See M.D.*, 675 F.3d at 840. It is not enough that class members suffer the same *type* of injury or have been subject to a violation of the same law. *Dukes*, 131 S. Ct. at 2551; *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 325 (D.D.C. 2011) (citing *Love v. Johanns*, 439 F.3d 723, 729, 370 U.S. App. D.C. 96 (D.C. Cir. 2006)). Rather, a plaintiff must identify a unified common policy, practice, or course of conduct that is the source of their alleged injury. For example, in *Xuedan Wang*, a class of former unpaid interns working at a number of Hearst's magazines was not certified because the plaintiffs could not identify a uniform policy or set of policies regarding the way interns were treated, their responsibilities, and so on. The policies varied in significant ways among the 20 magazines and sometimes across departments within a single magazine. *Xuedan Wang v. Hearst Corp.*, 293 F.R.D. 489, 2013 U.S. Dist. LEXIS 65869, 2013 WL 1903787 (S.D.N.Y. May 8, 2013); *see also, e.g., DL v. District of Columbia*, 713 F.3d 120, 404 U.S. App. D.C. 316 (D.C. Cir. 2013); *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370 (8th Cir. 2013); *Bolden v. Walsh Constr. Co.*, 688 F.3d 893 (7th Cir. 2012); *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481 (7th Cir. 2012).

Here, Plaintiffs have not shown a common injury, as the very determination as to whether their due process rights have been violated turns on very specific factors. To prove a violation of due process, Plaintiffs must show a liberty interest. Here, Plaintiffs attempt to create a liberty interest for an entire class of inmates with differing custody levels, line classes, unit assignments, housing areas and housing conditions, criteria in parole eligibility and review, program accessibility, unit staffing available for out-of-cell time, and so on. While Plaintiffs allege that every person in the class does not get hearings, is subject to "unlivable conditions," and is unable to parole due to limited programming,

their lack of evidence does not support these claims for even the majority of the class members. A preliminary list[5] of potential class members indicates that while many of the inmates with SPD codes are classified as medium custody General Population ("G4" or "G5"), many have different custody levels because they are death row inmates, in safekeeping or protective custody, in specific treatment programs, or in security detention due to their disciplinary history. Ex. B. The custody levels have varying levels of restrictions, reasons for placement, and reasons for review. Ex. A at 4–10. Plaintiffs' cannot purport to have the same injury as everyone in the class when the conditions of confinement are dependent on their unit of assignment, housing, classification, and other highly individualized factors, explained in more detail below. Likewise, Plaintiffs' specific complaint regarding access to programs for parole is not only rebutted by the record, which shows none of the Plaintiffs to have been harmed by this, but also rebutted by TDCJ policy and practice to give inmates access to the programs they need once they are conditionally approved for parole. See Ex. A at 10. Because Plaintiffs cannot identify a uniform common practice regarding the class members conditions of confinement across all custody levels and units identified in Ex. B, Plaintiffs do not satisfy the same injury requirement.

### ii. Allegations by Plaintiffs will not be resolved in "one stroke."

The Fifth Circuit held that the potential defenses against the plaintiff's claims should be considered as they may undermine the dispositive, "one stroke" nature of the proposed common questions. *M.D.*, 675 F.3d at 843-44; *see also Witt v. Chesapeake Exploration, L.L.C.*, 276 F.R.D. 458, 468-69 (E.D. Tex. 2011); *cf. Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 683-84 (6th Cir. 2013). In order to determine whether there are common questions of law or fact, a court

---

[5] This list was compiled for purposes of giving an overall idea as to the differing custody levels and units at which inmates with SPDs are housed. The list has not yet been verified due to the condensed period of time to file this motion within the appeal window. Defendants will produce a verified list of potential class members with custody, unit, and confirmed gang status, housing assignment, and line class as a more accurate representation of the potential class in 7 days.

must trace the class claims and conclude that the common questions will resolve them without the need for additional extensive individualized inquiry. *M.D. v. Perry*, 294 F.R.D. 7, 28 (S.D. Tex. 2013).

Put a different way, the plaintiffs "must demonstrate that there are common questions of fact or law," and these common questions "must be dispositive of the claims. If they are not—if, for instance, after the common questions are answered one way or another individualized inquiries to determine liability would be needed—then commonality has not been established." *M.D.,* 294 F.R.D. at 26. Here, the common questions presented by Plaintiffs would require extensive individualized inquiries and thus commonality cannot be established.

Plaintiffs' common questions of law and fact would take a highly individualized assessment of each class member. This is because the classification process for inmates in TDCJ is run on a case-by-case basis with custody and housing decisions made by different personnel, committees, and factors. *See* Ex. A. For infractions and crimes committed within TDCJ, inmates receive full disciplinary hearing before placement of the SPDs. *Id.* Thus, an inmate who commits escape, holds hostage, or assaults staff will be given a hearing before they are given their disciplinary and subsequent consequences to include housing and classification changes. *See* Ex. A at 3–4 (Plaintiffs Reyna, Gulley, and Wingfield all received full disciplinary hearings prior to their SPD placements).

Any inmates with SPDs may be classified and housed depending on a number of factors, including their known gang-relations, disciplinary history, known enemies, gender, criminal record, current offense, sentence length, prior institutional adjustment, vulnerability, death sentence, etc. Ex. A. This means that an inmate may have an SPD but be housed in restrictive housing due to their disciplinary history or an inmate may have an SPD but be housed in a medical facility for a specific medical or mental health condition. The reverse is also true: an inmate without an SPD code may be housed in restrictive housing or have a G4 or G5 custody level based on other factors.

Indeed, many of the class members with SPD codes would be housed in restrictive housing regardless of their SPD code because many inmates with SPD codes have a lengthy disciplinary history. Likewise, an inmate may have an SPD but be assigned a custody class of G2 to complete a required program. *See, e.g.,* Ex. A, "SCC-52: Classification and Records Procedures" (stating that a G3 or G4 inmate with an SPD who receives a particular type of parole approval vote will receive a special review, and their custody may be overridden to G2 custody to allow participation in a program). This is why prison officials are afforded wide-ranging deference in managing prison operations—many of which include functions that are necessarily discretionary, such as classifying and housing prisoners. *See Butler v. Southern Porter*, 999 F.3d 287, 296 (5th Cir. 2021) ("Great deference is accorded to prison officials in their determination of custodial status." (citation omitted). For example, despite their contentions otherwise, Plaintiffs Wingfield, Gully, and Smith are currently in restrictive housing due to their histories of criminal convictions, high security risks, and recent assaultive behaviors. *See* Ex. A at 5–6. Plaintiffs Holt, Martinez, and Spencer are currently G2 inmates with no SPD codes, and thus not currently representative of the class in any way. *See* Ex. A at 9–10. Gambill and Reyna are currently G3 inmates with no SPD codes and thus not currently representative of the class. Ex. A at 8–9.

Nevertheless, the factual inconsistencies in Plaintiffs' declarations (created for the purpose of class certification) and the evidence (or lack thereof) should not be relied on when certifying a class. Although Plaintiffs declare they are or were housed in "restrictive housing" due solely to their SPD codes, the record proves otherwise. *See* Ex. A at 4 (inmates are housed in restrictive housing due to their disciplinary infractions, not their SPDs). Likewise, although Plaintiffs state they are not able to parole due to their SPD, the policies and evidence show otherwise. At least four of the Plaintiffs are not yet eligible for parole due to their convictions. *See* Ex A at 10 (Gambill, Holt, Wingfield and Gulley are not yet eligible for parole). The other Plaintiffs were denied parole most recently due to reasons

not related to their SPDs or available programming. Ex. A at 10–11. Plaintiffs' complaints regarding lack of availability or accessibility to programming necessary for parole are also belied by the evidence. Ex. A at 10 (explaining that an Individual Treatment Plan ("ITP") may require programs *after* the inmate receives a conditional approval by the parole board, and the availability of the program is subject to an individualized assessment of the inmate to determine whether his custody status can be overridden to allow for him to attend the program).[6] There are <u>no</u> Plaintiffs who have received an approval of parole and were denied access to a required program. To determine the reasons for the Plaintiffs' parole review denials would require an individualized assessment of each class member.

Regarding their conditions of confinement at varying custody levels and units, there is no evidence that every custody level of an inmate given an SPD in 100 facilities across the state of Texas suffers from those same alleged conditions enough to implicate a liberty interest for every potential class member with an SPD code. Plaintiffs provide no proof of their conditions of confinement, beyond their own conclusory and general allegations, that these conditions apply to all class members at all units. Essentially, Plaintiffs ask this Court to find that every single G4, G5, and restrictive housing inmate, along with the additional inmates with SPD codes in other housing areas and classifications, are subject to these same conditions. Plaintiffs' generalized allegations, taken at face value, would encompass far more inmates than the proposed class, as Plaintiffs generalize that at least three entire custody levels of inmates, SPD codes or not, are experiencing the same conditions, *i.e.*, all the cells are covered in feces, toilets are overflowing, cats and bats and other pest infestations, no human contact

---

[6] See also "Parole/Mandatory Supervision Information Approval/Denial Reasons; No. 6: Participation in TDCJ-CID Proposed or Specialized Programs" (**Approval:** "The record indicates participation in and completion of TDCJ-CID programs and activities in the individual treatment plan that should enhance chances to obtain and maintain full-time stable employment." **Denial:** "The record indicates that the offender *refused to participate* or *intentionally failed* to complete TDCJ-CID programs and activities in the individual treatment plan.") (emphasis added), at https://www.tdcj.texas.gov/bpp/what_is_parole/reasons.htm

and constant lockdowns.[7] The determination of whether all 500 inmates with SPDs across the state are subject to conditions of confinement giving rise to a liberty interest would require the an individualized assessment of each cell in G4, G5, restrictive housing, safekeeping, protective custody, medical and mental health housing, and more, at every one of the 100 TDCJ units across Texas. This level of individualized assessment is not contemplated by the "one stroke" resolution requirement. As such, Plaintiffs have failed to demonstrate commonality.

### 2. Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") imposes a strict exhaustion requirement: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language leaves "no question that exhaustion is mandatory . . . and that unexhausted claims cannot be brought into court." *Jones v. Brock*, 549 U.S. 199, 199-200 (2007). The Supreme Court has held that the PLRA's exhaustion requirement applies to all suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In class actions, at least one named plaintiff must have exhausted administrative remedies in order for the case to proceed. *See Gates v. Cook*, 376 F.3d 323, 330 (5th Cir. 2004). The fact that one or more unnamed class members may have exhausted remedies with respect to other conditions is insufficient. *See Sain v. Collier*, No. CV H-18-4412, 2019 WL 4144321, at *13 (S.D. Tex. Aug. 30, 2019) ("[T]he Fifth Circuit has held that the exhaustion requirement is satisfied for a class of plaintiffs if at least one *named* plaintiff has completed the grievance process.") (emphasis added) (citing *Gates*, 376 F.3d at 330).

---

[7] Spencer, Gulley, and Wingfield conceded in their declarations that they were not given adequate out of cell time due to staff shortages, not their SPD codes.

For TDCJ inmates to exhaust administrative remedies, they must file two sets of grievances meet strict deadlines for doing so. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Defendants have ordered Plaintiffs' grievance records from TDCJ and anticipate being able to review them within the next week and report back to the Court. If it turns out that none of the Plaintiffs exhausted administrative remedies with respect to the alleged conditions of confinement giving rise to their claims, the appropriate result is dismissal. Defendants could move for summary judgment on exhaustion grounds separately, but it would be far more efficient to determine the question in conjunction with a final ruling on class certification. Thus, even if the Court rejects the other bases for reconsideration asserted herein, Defendants respectfully request that the Court allow Defendants the opportunity to present the exhaustion defense, if applicable, within one week of this filing.

### III. Relief Requested

Defendants respectfully request the Court allow an additional seven (7) days for Defendants to supplement this motion with verified evidence of class members and grievances, and then reconsider Plaintiffs' Motion for Class Certification with Defendants' response before it.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

*/s/ Briana M. Webb*
**BRIANA M. WEBB**
Assistant Attorney General

Texas State Bar No. 24077883
Briana.Webb@oag.texas.gov

Law Enforcement Defense Division
Office of the Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 / Fax No. (512) 370-9814

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I, **BRIANA M. WEBB**, Assistant Attorney General of Texas, do hereby certify that a true

and correct copy of the above has been served via electronic mail to all counsel of record on July 10,

2024.

*/s/ Briana M. Webb*
**BRIANA M. WEBB**
Assistant Attorney General

## CERTIFICATE OF CONFERENCE

I, Briana M. Webb, conferred with Plaintiffs' counsel, Maryam Ghaffar, who indicated

Plaintiffs are opposed to the relief requested herein.

*/s/ Briana M. Webb*
**BRIANA M. WEBB**
Assistant Attorney General